## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC DAIMLER, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 2:18-cv-00165-NBF |
| | ) |
| v. | ) JURY TRIAL DEMANDED |
| | ) |
| CHRIS MOEHLE, ROBOTICS HUB | ) ELECTRONICALLY FILED |
| FUND 1, LLC, and COAL HILL | ) |
| VENTURES LLC, | ) |
| | ) **MEMORANDUM OF LAW IN** |
| | ) **OPPOSITION TO DEFENDANTS'** |
| | ) **MOTION TO DISMISS THE FIRST** |
| Defendants. | ) **AMENDED COMPLAINT** |
| | ) |
| | ) |
| | ) Filed on behalf of Plaintiff ERIC |
| | ) DAIMLER |
| | ) |
| | ) |
| | ) Counsel for this party: |
| | ) |
| | ) BUCHANAN INGERSOLL & |
| | ) ROONEY PC |
| | ) Christopher P. Schueller, Esq. |
| | ) Pa. I.D. No. 92746 |
| | ) One Oxford Centre |
| | ) 301 Grant Street, 20th Floor |
| | ) Pittsburgh, PA 15219 |
| | ) (412) 562-8432 |
| | ) christopher.schueller@bipc.com |
| | ) |
| | ) -and- |
| | ) |
| | ) THOMPSON & KNIGHT LLP |
| | ) Mitchell G. Mandell, Esq. |
| | ) Admitted *pro hac vice* |
| | ) 900 Third Avenue, 20th Floor |
| | ) New York, New York 10022 |
| | ) (212) 751-3411 |
| | ) mitchell.mandell@tklaw.com |

## <u>TABLE OF CONTENTS</u>

I.   PRELIMINARY STATEMENT ................................................................................. 1

II.  STATEMENT OF FACTS .................................................................................... 2

III. ARGUMENT ........................................................................................................ 8

    A. DAIMLER'S BREACH OF CONTRACT CLAIMS ARE WELL PLED ............ 9

       1. Breach of the Daimler Awards is Sufficiently Pled .......................................... 9

       2. Breach of the Operating Agreements is Sufficiently Pled ............................. 12

    B. DAIMLER'S BREACH OF THE COVENANT OF GOOD FAITH
       CLAIM IS WELL PLED UNDER DELAWARE LAW ..................................... 15

    C. THE TORTIOUS INTERFERENCE CLAIMS ARE WELL PLED ................. 16

    D. THE UNJUST ENRICHMENT CLAIMS ARE WELL PLED .......................... 19

    E. THE FRAUD CLAIMS ARE WELL PLED ...................................................... 21

IV. CONCLUSION ................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## Cases

*Aetna Life Ins. Co. v. Huntingdon Valley Surgery Ctr.*,
C.A. No. 13-03101, 2015 WL 1954287 (E.D. Pa. Apr. 30, 2015) ...................... 20

*Albert v. Alex. Brown Mgmt. Servs.*, Inc.,
No. CIV.A. 762-N, 2005 WL 2130607 (Del. Ch. Aug. 26, 2005) ...................... 14

*Alexander v. Pennsylvania Dep't of Banking*,
No. CIV. 93-5510, 1994 WL 144305 (E.D. Pa. Apr. 21, 1994) .......................... 18

*Alpha Capital Anstalt v. Menaged*,
No. 15CV987, 2015 WL 7271069 (S.D.N.Y. Nov. 12, 2015) ............................ 25

*Am. Trade Partners, L.P. v. A-1 Int'l Importing Enterprises, Ltd.*,
757 F. Supp. 545 (E.D. Pa. 1991) ......................................................................... 18

*Amirsaleh v. Bd. of Trade of City of New York, Inc.*,
C.A. No. 2822-CC, 2008 WL 4182998 (Del. Ch. Sept. 11, 2008) ...................... 13

*Anderson v. Wachovia Mortg. Corp.*,
497 F. Supp. 2d 572 (D. Del. 2007) ................................................................ 15, 16

*Arlotte v. Nat'l Liberty Ins. Co.*,
312 Pa. 442 (1933) ................................................................................................ 10

*Assurity Life Ins. Co. v. Nicholas*,
No. CV 14-6522, 2015 WL 5737397 (E.D. Pa. Oct. 1, 2015) ............................ 10

*ATF Trucking, L.L.C. v. Quick Freight, Inc.*,
C.A. No. 06-4627, 2008 WL 2940795 (E.D. Pa. July 29, 2008) ......................... 11

*Avins v. Moll*,
610 F. Supp. 308 (E.D. Pa. 1984), *aff'd*, 774 F.2d 1150 (3d Cir. 1985) ............... 19

*Axalta Coating Sys., LLC v. Midwest II, Inc.*,
217 F. Supp. 3d 813 (E.D. Pa. 2016) ................................................................... 23

*B.A.S.S. Grp., LLC v. Coastal Supply Co.*,
C.A. No. 3743-VCP, 2009 WL 1743730 (Del. Ch. June 19, 2009) ..................... 20

*Batoff v. Charbonneau*,
  130 F. Supp. 3d 957 (E.D. Pa. 2015) ............................................................ 23, 24

*Benchmark Grp., Inc. v. Penn Tank Lines, Inc.*,
  612 F. Supp. 2d 562 (E.D. Pa. 2009) ................................................................. 15

*Canavan v. Beneficial Fin. Corp.*,
  553 F.2d 860 (3d Cir. 1977).............................................................................. 19

*Charlotte Broad., LLC v. Davis Broad. of Atlanta, L.L.C.*,
  No. 13C-04-143-WCC CCLD, 2015 WL 3863245
  (Del. Super. Ct. June 10, 2015), *aff'd*, 134 A.3d 759 (Del. 2016)................. 13, 16

*Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc.*,
  94 F. Supp. 2d 589 (E.D. Pa. 1999) .................................................................. 21

*CoreStates Bank, N.A. v. Cutillo*,
  723 A.2d 1053 (Pa. Super. Ct. 1999) .................................................................. 9

*Dilworth v. Brown & Bigelow*,
  128 Pa. Super. 124 (1937)................................................................................. 11

*Duran v. Cty. of Clinton*,
  No. 4:14-CV-2047, 2015 WL 5675580 (M.D. Pa. Sept. 25, 2015)..................... 19

*Gabriel v. Giant Eagle, Inc.*,
  124 F. Supp. 3d 550 (W.D. Pa. 2015)................................................................. 20

*Gilbert v. El Paso Co.*,
  490 A.2d 1050 (Del. Ch. 1984), *aff'd*, 575 A.2d 1131 (Del. 1990)..................... 16

*Hershey Entm't & Resorts Co. v. Interactive Rides, Inc.*,
  No. 1:04 CV 2641, 2005 WL 3320843 (M.D. Pa. Dec. 7, 2005) ........................ 21

*In re FAH Liquidating Corp.*,
  572 B.R. 117 (Bankr. D. Del. 2017) ................................................................... 21

*In re Gen. Datacomm Indus., Inc.*,
  309 B.R. 848 (D. Del. 2004), *aff'd*, 407 F.3d 616 (3d Cir. 2005) ................. 10, 11

*In re Zaffron*,
  303 B.R. 563 (Bankr. E.D. N.Y. 2004)................................................................ 25

*Interim Healthcare, Inc. v. Spherion Corp.*,
    884 A.2d 513 (Del. Super. Ct.), *aff'd*, 886 A.2d 1278 (Del. 2005) ........................ 9

*Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers Local Union 42*
    *v. Absolute Envtl. Servs., Inc.*,
    814 F. Supp. 392 (D. Del. 1993) .......................................................................... 19

*Irwin & Leighton, Inc. v. W.M. Anderson Co.*,
    532 A.2d 983 (Del. Ch. 1987) ............................................................................. 17

*Kelly v. Blum*,
    C.A. No. 4516-VCP, 2010 WL 629850 (Del. Ch. Feb. 24, 2010) ....................... 13

*Kuhn Const. Co. v. Ocean and Coastal Consultants, Inc.*,
    844 F. Supp. 2d 519 (D. Del. 2012) .................................................................... 19

*Lubold v. Univ. Veterinary Specialists, LLC*,
    No. 17CV0507, 2017 WL 2834668 (W.D. Pa. June 30, 2017) ........................... 17

*Lum v. Bank of Am.*,
    361 F.3d 217 (3d Cir. 2004) ................................................................................ 24

*Lyon Fin. Servs., Inc. v. Woodlake Imaging, LLC*,
    No. CIV.A. 04-CV-3334, 2005 WL 331695 (E.D. Pa. Feb. 9, 2005) ................. 15

*Masciantonio v. SWEPI LP*,
    No. 4:13-cv-0797, 2014 WL 4441214 (M.D. Pa. Sept. 9, 2014) ......................... 14

*McWreath v. Range Res.--Appalachia, LLC*,
    81 F. Supp. 3d 448 (W.D. Pa. 2015), *aff'd*, 645 F. App'x 190 (3d Cir. 2016) ..... 14

*Miles v. Metzger*,
    316 Pa. 211 (1934) ............................................................................................... 9

*Nemec v. Shrader*,
    991 A.2d 1120 (Del. 2010) .................................................................................. 15

*O'Kinsky v. Perone*,
    C.A. No. 10-6075, 2012 WL 1392367 (E.D. Pa. Apr. 20, 2012) .................. 23, 24

*Philadelphia Plaza-Phase II v. Bank of Am. Nat. Tr. & Sav. Ass'n*,
    No. 3745 APRIL TERM 2002, 2002 WL 1472337
    (Pa. Com. Pl. June 21, 2002) .............................................................................. 13

*Phillips v. Cty. of Allegheny*,
  515 F.3d 224 (3d Cir. 2008)..................................................................................... 8, 9

*Rainier v. Champion Container Co.*,
  294 F.2d 96 (3d Cir. 1961)........................................................................................ 10

*Restituto and Carmen Estacio h/w v. Trauma Serv. Grp.*,
  No. 1004, 1995 WL 1315961 (Pa. Com. Pl. Apr. 24, 1995),
  *aff'd sub nom. Estacio v. Trauma Serv.*, 449 Pa. Super. 730 (1995).................... 10

*Schirmer v. Principal Life Ins. Co.*,
  No. 08-cv-2406, 2008 WL 4787568 (E.D. Pa. Oct. 29, 2008) ............................. 21

*Schmidt v. Skolas*,
  770 F.3d 241 (3d Cir. 2014)...................................................................................... 24

*Sensus USA, Inc. v. Elliott Bay Eng'g, Inc.*,
  C.A. No. 10-1363, 2011 WL 2650028 (W.D. Pa. July 6, 2011)........................... 21

*Vanesko v. Marina Dist. Dev. Co., LLC*,
  38 F. Supp. 3d 535 (E.D. Pa. 2014). ....................................................................... 22

*WaveDivision Holdings, LLC v. Millennium Digital Media Sys., L.L.C.*,
  C.A. No. 2993-VCS, 2010 WL 3706624 (Del. Ch. Sept. 17, 2010) ................... 10

*William M. Hendrickson, Inc. v. Nat'l R.R. Passenger Corp.*,
  No. 00-CV-3711, 2002 WL 398641 (E.D. Pa. Mar. 13, 2002),
  *aff'd*, 63 F. App'x 61 (3d Cir. 2003)....................................................................... 11

*Wilmington Leasing, Inc. v. Parrish Leasing Co., L.P.*,
  No. 15202, 1996 WL 560190 (Del. Ch. Sept. 25, 1996) ...................................... 15

**Statutes**

6 Del. C. § 18-1101(c) .................................................................................................. 14

Fed. R. Civ. P. 8(d) ....................................................................................................... 20

Fed. R. Civ. P. 9(b) ....................................................................................................... 25

Fed. R. Civ. P. 12(b)(6).............................................................................................. 1, 8

Plaintiff Eric Daimler respectfully submits this memorandum of law in opposition to the motion of Defendants, Chris Moehle ("Moehle"), Robotics Hub Fund 1 LLC ("Robotics Hub"), and Coal Hill Ventures LLC ("Coal Hill"), to dismiss his First Amended Complaint ("FAC").

## I.      PRELIMINARY STATEMENT

This lawsuit arises from Defendants' misrepresentations that induced Daimler to enter into a business partnership with Moehle and related common unit award agreements with Robotics Hub and Coal Hill (collectively, the "Companies").  Despite the underlying premise of their equal partnership, and in the face of Moehle's repeated representations of identical award agreements, Daimler's agreements contained onerous vesting and forfeiture provisions not contained in Moehle's purportedly identical award agreements.  Defendants wrongfully prevented Daimler from satisfying the condition imposed on his vesting schedules, and thereafter deemed all of his equity in the Companies to be forfeited.  Defendants then removed Daimler from the Boards of the Companies so that Moehle could obtain majority ownership and take complete control over them, leaving Daimler with nothing in return for his significant contributions to the Companies, including as a co-founder of Robotics Hub.

In their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), Defendants raise a series of arguments in attempting to escape liability for their unlawful behavior.  None have merit, as Daimler has sufficiently pled his claims under the federal pleading standards.

Defendants argue that the breach of contract claims are inadequately pled because Daimler fails to identify a contract provision that was breached, but the FAC specifically alleges that the Companies wrongfully prevented Daimler from satisfying the vesting condition in his award agreements.  Under well-settled law, the Companies cannot escape liability by preventing performance in this manner.  The FAC also sufficiently alleges breaches of the Companies'

operating agreements, which required the issuance of equity in exchange for Daimler's capital contributions, and required the Companies to act in good faith in exercising their discretion.

As alleged in the FAC, Moehle failed to act in good faith and tortiously interfered with the award agreements between Daimler and the Companies by voting against Daimler's return to his full-time position and rejecting Daimler's proposal to have his compensation deferred, as had been done in the past.  Defendants' claim that no breach is identified for the tortious interference claims is meritless because Moehle caused the Companies to breach the award agreements by preventing Daimler's fulfillment of his vesting condition.  Defendants' attempt to hide behind an agency defense also fails, because there are sufficient allegations that Moehle was acting in a personal capacity and against the best interests of the Companies.

The fraud claims are also sufficiently pled, as the FAC identifies with particularity the material misrepresentations of present fact that were made to induce Daimler to enter into the contracts with the Companies, and their attendant circumstances.  Defendants' argument that there are no damages is faulty, since Daimler has adequately alleged that, as a result of Defendants' misrepresentations, he has suffered harm through the forfeiture of his equity in the Companies, including the equity he should have been awarded due to his additional capital contributions that were induced by the fraud.  Finally, Daimler has sufficiently pled claims for unjust enrichment against all Defendants (which are stated in the alternative against the Companies), based on their inequitable retention of benefits provided by Daimler.

## II.    STATEMENT OF FACTS

In 2015, Daimler and Moehle agreed to enter into an equal partnership to invest in early-stage robotics companies.  To that end, they combined their companies and co-founded two new entities:  Robotics Hub Fund 1, LP (the "Fund"), and Robotics Hub (the Fund's General Partner).

The Fund's Investment Manager, Coal Hill, amended and restated its operating agreement to reflect the equal partnership between Daimler and Moehle.  (FAC ¶¶ 10-14.)

Before their partnership began, Moehle represented to Daimler that General Electric ("GE") would be investing in the Fund.  Throughout 2015 and early 2016, Moehle repeatedly represented to Daimler that GE had committed to investing $20 million in the Fund, which was seeking to raise $50 million.  Moehle also represented to Daimler that he had strong relationships with the National Robotics Engineering Center ("NREC") and the Robotics Institute ("RI"), which would lead to potential investment opportunities.  Daimler relied on these representations when he decided to pursue an equal partnership with Moehle in 2015, but later learned they were not true.  (FAC ¶¶ 15-19.)

In January 2016, Daimler was appointed as a Presidential Innovation Fellow for the Barack Obama White House (the "Fellowship").  Moehle encouraged Daimler to accept the 12-month Fellowship because of the value that the Companies and the Fund would derive from it.  Daimler served as a Presidential Innovation Fellow from January 2016 to early 2017, during which time Daimler advised the White House on, among other things, issues relating to robotics and artificial intelligence.  Daimler and Robotics Hub received positive press coverage with respect to the Fellowship, and Defendants promoted Daimler's White House position in their marketing and fundraising efforts.  (FAC ¶¶ 29-33.)

On or about March 10, 2016, shortly after Daimler's Fellowship began, the Companies and the Fund engaged Reed Smith LLP to, among other things, prepare various corporate formation and governance documents, including certain Common Unit Award Agreements and the Companies' Amended and Restated Operating Agreements.  Reed Smith interacted almost exclusively with Moehle in connection with this engagement.  (FAC ¶¶ 36-37.)

Pursuant to the Companies' respective Amended and Restated Operating Agreements, both dated March 23, 2016 (the "Operating Agreements"), Daimler and Moehle were the only Board Members; a third person (Jamie Fee) was identified as a member along with Moehle and Daimler, but Fee was to receive approximately 2% of the equity in each Company and Moehle and Daimler were to split equally the remaining 98%. Further, both Daimler and Moehle were named "Key Persons" in the Fund's Limited Partnership Agreement. The Companies and the Fund promoted Daimler and Moehle as equal partners, including in private placement materials provided to potential investors. Despite being equal partners, Daimler loaned or advanced to Coal Hill a total of $160,000 for corporate expenses[1], whereas Moehle made an initial capital contribution of only $1,000. (FAC ¶¶ 20-28.)

Daimler and Moehle entered into Common Unit Award Agreements, all dated March 23, 2016, with each of the Companies. (FAC ¶ 22.) Moehle was awarded 42 common units in both Robotics Hub and Coal Hill (collectively the "Moehle Awards"), which vest as follows:

> 20% vests on the first anniversary of Date of Award [March 23, 2017];
> 1.6666% vests ratably on the last day of each month thereafter until the
> fifth anniversary of the Date of Award [March 23, 2021] (*Id.* ¶ 38.)

Daimler was also awarded 42 common units in both Robotics Hub (the "Robotics Hub Daimler Award") and Coal Hill (the Coal "Hill Hub Daimler Award", collectively, the "Daimler Awards"). Unlike Moehle's common units, however, Daimler's units vest as follows:

> 20% vests on the date when [Daimler] has provided 12 consecutive
> and uninterrupted months of Full Time Services to the Company
> Group, provided that [Daimler] must begin providing such Full Time
> Services to the Company Group no later than the first anniversary of
> the Date of Award [March 23, 2017]; and

---

[1]  Upon further review, it has been determined that the total sum is far greater than $160,000, including expenditures on behalf of the company that Daimler expected to be reimbursed, for instance payments for flights and other travel expenses to meet with investors.

Provided the above conditions are met, the remaining 80% vests on a
pro-rata basis on the last day of each month thereafter until the fifth
anniversary of the Date of Award [March 23, 2021]  (FAC ¶¶ 39-40.)[2]

The disparate vesting schedules were contrary to representations Moehle repeatedly made

to Daimler.  In multiple conversations during 2015 and 2016, Moehle misrepresented to Daimler

that:  (i) Moehle and Daimler would be treated as equals; (ii) the terms of the Daimler Awards

were identical to those of the Moehle Awards; and (iii) the Daimler Awards and Moehle Awards

both contained vesting schedules pursuant to which a portion of the common units would vest

automatically while the remaining units would vest over time.  Reed Smith made the same

misrepresentations to Daimler during conversations in early 2016.  At no time did Defendants or

Reed Smith inform Daimler that *only* the Daimler Awards, not the Moehle Awards, contained

vesting schedules requiring 12 consecutive and uninterrupted months of Full-Time Services to

the Company Group, which services were required to start by March 23, 2017, before any

common units would vest.  Thus, it was never Daimler's understanding that there could be any

circumstance under which his equity in the Companies would be forfeited.  (FAC ¶¶ 43-48.)

When Daimler and Moehle began their partnership as equal partners, each initially

devoted equal time to the Companies.  Although Daimler worked for the Companies only part-

time during the Fellowship, both Moehle and Daimler understood that Daimler would return to

his full-time position with the Companies when his 12-month Fellowship ended in early 2017.

Indeed, as of January 2016 when Daimler began the Fellowship, the partnership had budgeted

matching salaries for Moehle and Daimler.  (FAC ¶¶ 55-58.)

---

[2]  Pursuant to Section 2(a) of the Daimler Awards, Daimler provides Full Time Services if he is
employed by or otherwise provides greater than 95% of his professional activities, as determined
in the sole discretion of the respective Boards, to the Company Group, which is defined as a
combination of Robotics Hub or Coal Hill, respectively, the Fund, and the Fund's portfolio
companies.  (FAC ¶¶ 41-42.)

In early-to-mid 2016, the relationship between Daimler and Moehle began to deteriorate. The attention and publicity Daimler received in connection with the Fellowship became a point of contention, and Moehle became highly critical of Daimler.  Moehle prevented Daimler from accessing company information, and unilaterally assigned "deliverables" to Daimler without first consulting him.  Despite these tensions, Moehle needed Daimler to remain engaged in the Companies and the Fund so that Daimler would continue to make financial contributions to them, and Daimler remained engaged throughout the Fellowship.  (FAC ¶¶ 59-64.)

Daimler continued to make financial contributions to the Companies in 2016.  Although intended to cover corporate expenses, Moehle use some of these funds to pay for personal expenses.  Daimler made these additional contributions with the expectation that they would be treated as capital contributions, and Moehle agreed that they would be treated as such.  Although Daimler made such contributions at Moehle's request, he did not receive common units in exchange for them, as required by Section 7.2 of the Operating Agreements.  (FAC ¶¶ 65-69.)

During the second half of 2016, Moehle began taking steps to gain sole control of the Companies.  Moehle refused Daimler's requests to meet in Pittsburgh, where the Companies and the Fund are based, and on several occasions in mid-to-late 2016, Moehle obstructed Daimler's efforts to communicate with the Fund's investors and portfolio companies.  At the same time, Moehle continued telling investors that Daimler was his equal partner.  (FAC ¶¶ 70-75, 77.)

Daimler continued providing part-time services to the Companies in 2016 during the term of the Fellowship, for which he was not compensated.  Instead, Daimler and Moehle agreed that compensation for Daimler's services would accrue and be paid at a later date.  (FAC ¶ 34.)  In late 2016, Moehle began discouraging Daimler from ending the Fellowship, claiming the Companies had no funds with which to pay him.  In response, Daimler suggested that his salary

could continue to accrue and be paid to him at a later date.  Moehle opposed this idea, despite having previously agreed to it.  (*Id*. ¶ 76.)

The parties met in person on January 5-6, 2017, to discuss whether Daimler would return to his full-time role with the Companies.  On or about January 5, 2017, just before Daimler's Fellowship ended, Moehle recommended to the Companies' Boards (which constituted only Daimler and Moehle) that Daimler *not* be permitted to return to a full-time role with the Companies.  Although Moehle and the Companies had contemplated Daimler's return to full-time employment from the outset and budgeted a full-time salary for him, Moehle purportedly made his recommendation to the Boards because the Companies allegedly lacked sufficient funds to pay Daimler a full-time salary.  Moehle also refused to allow Daimler's salary to continue to accrue and be paid at a later date, as it had in the past.  (FAC ¶¶ 78-80.)

At the Companies' respective Board meetings on or about January 5, 2017, Moehle voted against, and Daimler voted in favor of, Daimler returning to a full-time role with the Companies. Because the Boards were deadlocked, the matter was referred to the Deadlock Advisor, David Mawhinney, in accordance with Section 5.5(c) of the Operating Agreements.  On or about March 22, 2017, just before the first anniversary of the date of the Daimler Awards, Mawhinney broke the deadlock by voting against Daimler returning to a full-time, fully compensated role with the Companies at that time due to their financial status.  However, Mawhinney did not foreclose the possibility that Daimler could, if he so elected, return to work on a full-time basis with some portion of his compensation accrued, but not paid, as had occurred in the past.  (FAC ¶¶ 81-84.)

Despite Daimler's desire and attempts to return to his full-time role with the Companies, Defendants took additional steps to ensure that Daimler had no role whatsoever.  Because Defendants wrongfully prevented Daimler from returning to his full-time role within a year after

executing the Daimler Awards (*i.e.*, by March 23, 2017), the Companies deemed all of his common units to be forfeited.  As a result of the purported forfeiture, Defendants took the position that Daimler has no membership or ownership interest in the Companies, thereby making Moehle the majority member of both Companies.  After obtaining a majority membership interest, to further cut out Daimler, Moehle purportedly directed the Companies to remove Daimler from their respective Boards and to amend and restate the Fund's Limited Partnership Agreement to remove Daimler as a "Key Person."  (FAC ¶¶ 85-88.)

Daimler asserts the following causes of action in the FAC:

- Breach of contract against Robotics Hub with respect to the Robotics Hub Daimler Award (Count Six) and with respect to the Robotics Hub Operating Agreement (Count Seven);

- Breach of contract against Coal Hill with respect to the Coal Hill Daimler Award (Count Twelve) and with respect to the Coal Hill Operating Agreement (Count Thirteen);

- Breach of the implied covenant of good faith against Robotics Hub (Count Eight);

- Tortious interference with contract against Moehle with respect to the Robotics Hub Daimler Award (Count Three) and with respect to the Coal Hill Daimler Award (Count Four);

- Unjust enrichment against all Defendants (Counts Five, Eleven and Sixteen);

- Fraud in the inducement against all Defendants (Count One, Nine and Fourteen); and

- Fraud in the execution against all Defendants (Counts Two, Ten and Fifteen).

### III.   **ARGUMENT**

In deciding a motion to dismiss under Fed. R. Civ. P. 12 (b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).  Thus, "stating a claim requires a complaint with enough factual matter (taken as true) to suggest the required element[;] [t]his does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the

necessary element." *Id*. at 234.  Here, the FAC certainly makes a "showing sufficient to justify

moving the case beyond the pleadings to the next stage of litigation." *Id*. at 234-35.

### A.  DAIMLER'S BREACH OF CONTRACT CLAIMS ARE WELL PLED

### 1.  <u>Breach of the Daimler Awards Is Sufficiently Pled</u>

To state a claim for breach of contract, a plaintiff must plead (1) the existence of a

contract, (2) breach of a duty imposed by the contract, and (3) damages.  *See CoreStates Bank,*

*N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999); *Interim Healthcare, Inc. v. Spherion*

*Corp.*, 884 A.2d 513, 548 (Del. Super. Ct.), *aff'd*, 886 A.2d 1278 (Del. 2005).[3]

Defendants argue that the breach of contract claims based on the Daimler Awards

(Counts Six and Twelve) are not adequately pled because Daimler fails to specify any contract

term that was breached.  (Defendant's Brief [ECF Doc. No. 17], "Def. Bf.", at 15-17.)  However,

the FAC specifically alleges as follows:

> Pursuant to Section 2 of the Daimler[] Award, Robotics Hub [and Coal
> Hill] agreed to award Daimler forty-two common units, which units
> were to begin vesting upon Daimler starting to provide Full-Time
> Services to the Company Group by March 23, 2017.

> Robotics Hub [and Coal Hill] intentionally and wrongfully prevented
> Daimler from beginning to provide such services by March 23, 2017.

(FAC ¶¶ 127-28, 166-67.)

The Companies breached the Daimler Awards because "[i]t is well settled, as a principle

of fundamental justice, that, where one party to a contract is himself the cause of a failure of

performance by the other party, he cannot take advantage of his own breach of the contract in so

doing, to prevent a recovery by the other party."  *Miles v. Metzger*, 316 Pa. 211, 217 (1934);

---

[3]  Pennsylvania law governs the Coal Hill Daimler Award and Coal Hill Operating Agreement,
and Delaware law governs the Robotics Hub Daimler Award and Robotics Hub Operating
Agreement.

*Arlotte v. Nat'l Liberty Ins. Co.*, 312 Pa. 442, 445 (1933) ("It is a well-settled rule of law that a party to a contract cannot escape liability under his obligation on the ground that the other party has failed to perform a condition precedent to the establishment of such liability …, where he himself has caused that failure.").  *See also Rainier v. Champion Container Co.*, 294 F.2d 96, 103 (3d Cir. 1961) ("it is well settled that where one party to a contract is himself the cause of a failure of performance by the other party, he cannot advantageously utilize his own fault as an exit of escape from the performance of his contractual obligations"); *Assurity Life Ins. Co. v. Nicholas*, No. CV 14-6522, 2015 WL 5737397, at *3 (E.D. Pa. Oct. 1, 2015) ("where a party to a contract prevents the other contracting party from performing its obligations under the contract, it has breached the contract"; breach of contract adequately alleged where insurer prevented insured from performing obligations under policy by refusing to accept premiums); *Restituto and Carmen Estacio h/w v. Trauma Serv. Grp.*, No. 1004, 1995 WL 1315961 (Pa. Com. Pl. Apr. 24, 1995), *aff'd sub nom. Estacio v. Trauma Serv.*, 449 Pa. Super. 730 (1995) ("Dr. Estacio upheld her end of the bargain by being available to work on July 1, 1990.  TSG breached the contract by preventing her performance and not scheduling her until October 17, 1990.  TSG cannot now argue that it did not have a duty to pay Dr. Estacio until she actually worked.").

This well-settled principle is also recognized in Delaware.  *See In re Gen. Datacomm Indus., Inc.*, 309 B.R. 848, 853 (D. Del. 2004), *aff'd*, 407 F.3d 616 (3d Cir. 2005) ("The 'prevention doctrine' provides that a party may not escape contractual liability by reliance upon the failure of a condition precedent where the party wrongfully prevented performance of that condition precedent."); *WaveDivision Holdings, LLC v. Millennium Digital Media Sys., L.L.C.*, C.A. No. 2993-VCS, 2010 WL 3706624, at *14 (Del. Ch. Sept. 17, 2010) ("Millennium cannot rely on the failure of a condition to excuse its performance when its own conduct materially

10

caused the condition's failure.  It is an established principle of contract law that where a

party[]… contributes materially to the non-occurrence of a condition of one of his duties, the

non-occurrence is excused.") (citing Restatement (Second) of Contracts § 245).

Here, the Companies prevented Daimler from returning to his full-time role within a year

after executing the Daimler Awards (*i.e.*, by March 23, 2017), which was a condition of his

common units vesting.  Defendants' argument that Daimler had no contractual right to

employment misses the point entirely.  (Def. Bf. at 15-16.)  The Daimler Awards expressly

contemplated that Daimler would return to full-time employment within one year of their

execution, and made that a condition of the vesting of his equity.[4]  By preventing Daimler from

fulfilling that condition, the Companies breached the contracts.  *See William M. Hendrickson,*

*Inc. v. Nat'l R.R. Passenger Corp.*, No. 00-CV-3711, 2002 WL 398641, at *14 (E.D. Pa. Mar.

13, 2002), *aff'd*, 63 F. App'x 61 (3d Cir. 2003) ("the prevention or hindrance of another party's

performance of a contract constitutes a material breach of the contract and excuses the

nonperformance of the non-breaching party"); *ATF Trucking, L.L.C. v. Quick Freight, Inc.*, C.A.

No. 06-4627, 2008 WL 2940795, at *3 (E.D. Pa. July 29, 2008) ("where a party to the contract

prevents the other party from performing its part, the contract is breached"); *Dilworth v. Brown*

*& Bigelow*, 128 Pa. Super. 124, 126 (1937) ("Where a party to a contract prevents performance

by the other, it amounts to a breach thereof."); *In re Gen. Datacomm Indus., Inc.*, 309 B.R. 848

---

[4]  Contrary to Defendants' position, this was not Daimler's "subjective understanding" – it was
written into the agreements.  (Def. Bf. at 17.)  Thus, it is highly doubtful that the intent of the
parties was that the Companies would be allowed to prevent Daimler from fulfilling his vesting
condition of full-time service.  Indeed, it was quite the opposite:  the timing and forfeiture
provisions of the Daimler Awards indicate that the Companies wanted to *ensure* that Daimler
returned to his full-time role shortly after his Fellowship ended.  Daimler was ready, willing and
able to do so – and was even willing to defer compensation – but was prevented solely because
of the wrongful conduct of the Defendants.

at 853 (party may not escape contractual liability by reliance upon failure of a condition

precedent where it wrongfully prevented performance).

Finally, contrary to Defendants' focus on this issue (Def. Bf. at 16), the Deadlock

Advisor's vote against Daimler is a red herring: it was only because Moehle wrongfully and

unreasonably opposed Daimler's efforts to return to his full-time role that the matter was

submitted to the Deadlock Advisor in the first place. Moreover, the Deadlock Advisor's vote

was not dispositive, since it did not foreclose the possibility that Daimler could work on a full-

time basis and be paid at a later date, as was agreed in the past. (FAC ¶¶ 34, 80, 84.) Instead of

pursuing that solution, the Companies deemed all of Daimler's equity to be forfeited and took

additional steps to ensure that Daimler had no role whatsoever in the Companies. (*Id*. ¶¶ 85-88.)

### 2.  **Breach of the Operating Agreements Is Sufficiently Pled**

Defendants also incorrectly argue that Daimler does not adequately allege any breach of

the Operating Agreements. Daimler alleges two separate breaches of the Robotics Hub

Operating Agreement (Count Seven) and the Coal Hill Operating Agreement (Count Thirteen).

First, the Companies breached Section 12.3(b) of the respective Operating Agreements,

which provides in part:

> Whenever in this Operating Agreement a Covered Person is permitted
> or required to make a decision (including a decision that is in such
> Covered Person's "discretion" or under a grant of similar authority or
> latitude), the Covered Person shall be entitled to consider only such
> interests and factors as such Covered Person desires, including its own
> interests, and shall have no duty or obligation to give any consideration
> to any interest of or factors affecting the Company or any other Person.

Defendants argue that pursuant to this section, the Companies, acting through Moehle as

a "Covered Person," had no obligation to act in good faith where decisions could be made in

Moehle's "discretion", including "the decision of whom should be offered full-time

employment." (Def. Bf. at 18.) However, Section 12.3(b) applies only to "Covered Persons" (such as Moehle); it does not apply to the Companies, which actually have the power to make employment decisions, *not* individual Board members or Managers. (*Id.* at 15 ("the Daimler Awards, along with the Operating Agreements which are incorporated into the Daimler Awards, *expressly provide the Companies with sole discretion to make employment decisions* for the Companies") (emphasis added).) The Companies are bound by an obligation of good faith when making such decisions because, where, as here, discretion is conferred on a contracting party, that party must exercise its discretion reasonably and in good faith. *See Charlotte Broad., LLC v. Davis Broad. of Atlanta, L.L.C.*, No. 13C-04-143-WCC CCLD, 2015 WL 3863245, at *7 (Del. Super. Ct. June 10, 2015), *aff'd*, 134 A.3d 759 (Del. 2016) ("The implied covenant particularly applies where the contract permits a party to exercise sole discretion. Delaware case law requires a party to exercise such discretion reasonably and in good faith."); *Amirsaleh v. Bd. of Trade of City of New York, Inc.*, C.A. No. 2822-CC, 2008 WL 4182998, at *8 (Del. Ch. Sept. 11, 2008) ("The implied covenant is particularly important in contracts that endow one party with discretion …. [and] requires that the 'discretion-exercising party' make that decision in good faith."); *Philadelphia Plaza-Phase II v. Bank of Am. Nat. Tr. & Sav. Ass'n*, No. 3745 APRIL TERM 2002, 2002 WL 1472337, at *6 (Pa. Com. Pl. June 21, 2002) (covenant of good faith breached "when a party exercises discretion authorized in a contract in an unreasonable way").

Defendants further argue that Section 12.3(b) "does not create any amorphous 'good faith' obligation but provides an express standard of conduct that [they] indisputably met" (Def. Br. at 17), suggesting that Daimler somehow waived the implied duty of good faith. However, "contracting parties to an LLC [operating] agreement may not waive the implied covenant of good faith and fair dealing." *Kelly v. Blum*, C.A. No. 4516-VCP, 2010 WL 629850, at *13 (Del.

Ch. Feb. 24, 2010) (citing 6 Del. C. § 18-1101(c) ("the limited liability company agreement may

not eliminate the implied contractual covenant of good faith and fair dealing")).  *See also*

*Masciantonio v. SWEPI LP*, No. 4:13-cv-0797, 2014 WL 4441214, at *14 (M.D. Pa. Sept. 9,

2014) (reasonable to infer that, under Pennsylvania law, "the general obligation of good faith and

fair dealing in the performance of a contract may not be disclaimed by agreement").

Here, Daimler has sufficiently alleged that the Companies failed to exercise their

discretion in good faith by, *inter alia*, wrongfully preventing Daimler from satisfying his vesting

condition, resulting in the Companies treating Daimler as having no membership or ownership

interests and then removing Daimler from the Boards of the Companies.  (FAC ¶¶ 133, 172.)

Daimler has also sufficiently alleged a breach of Section 7.2 of the Operating

Agreements, which requires the issuance of common units in connection with members'

additional capital contributions.  (FAC ¶¶ 52, 134, 173.)  Defendants argue that this claim fails

because Daimler has not alleged that any of his capital contributions were made "with the

consent of the Board" as stated in Section 7.2.  (Def. Bf. at 18-19.)  However, Defendants ignore

the specific allegations in the FAC that Daimler's financial contributions were made *at the

request of Moehle*, who was the only other Board member, and that Moehle agreed to treat

Daimler's infusions as capital contributions.  (FAC ¶¶ 21, 67-68, 79, 121.)  Because Daimler

alleges that the Companies failed to issue him units in connection with additional capital

contributions that were specifically requested by Moehle, a breach of Section 7.2 of the

Operating Agreements is sufficiently alleged.  (*Id*. ¶¶ 135, 174.)[5]

---

[5]  Daimler is entitled to an accounting if he proves his breach of contract claims.  *See McWreath
v. Range Res.--Appalachia, LLC*, 81 F. Supp. 3d 448, 467-68 (W.D. Pa. 2015), *aff'd*, 645 F.
App'x 190 (3d Cir. 2016); *Albert v. Alex. Brown Mgmt. Servs.*, Inc., No. CIV.A. 762-N, 2005
WL 2130607, at *11 (Del. Ch. Aug. 26, 2005).

**B. DAIMLER'S BREACH OF THE COVENANT OF GOOD FAITH CLAIM IS WELL PLED UNDER DELAWARE LAW**

To state a claim for breach of the implied covenant of good faith and fair dealing under Delaware law, "the plaintiff must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." *Anderson v. Wachovia Mortg. Corp.*, 497 F. Supp. 2d 572, 581-82 (D. Del. 2007).[6]  This implied covenant "requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain. Thus, parties are liable for breaching the covenant when their conduct frustrates the 'overarching purpose' of the contract by taking advantage of their position to control implementation of the agreement's terms." *Id.* at 582.

Although "one generally cannot base a claim for breach of the implied covenant on conduct authorized by the agreement" (Def. Bf. at 25), courts will apply the implied covenant where a contracting party "has acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the [other] party reasonably expected." *Nemec v. Shrader*, 991 A.2d 1120, 1125-26 (Del. 2010).  For instance, in *Wilmington Leasing, Inc. v. Parrish Leasing Co., L.P.*, No. 15202, 1996 WL 560190, at *2 (Del. Ch. Sept. 25, 1996), the Chancery Court rejected an argument that, because the contract addressed the removal of the general partner, the implied covenant of good faith should not be implied.  The Court held that the implied covenant still applied to the scope of discretion allowed to the limited partners in removing the general partner,

---

[6]  A claim for breach of the implied covenant of good faith and fair dealing is asserted only against Robotics Hub under Delaware law (Count Eight), because Pennsylvania law does not recognize this as an independent claim.  *Lyon Fin. Servs., Inc. v. Woodlake Imaging, LLC*, No. CIV.A. 04-CV-3334, 2005 WL 331695, at *8 (E.D. Pa. Feb. 9, 2005).  Instead, the good faith duty is used by Pennsylvania courts as "an interpretive tool to determine the parties' justifiable expectations in the context of a breach of contract action."  *Benchmark Grp., Inc. v. Penn Tank Lines, Inc.*, 612 F. Supp. 2d 562, 583 (E.D. Pa. 2009).  *See supra*, Point I.B.

explaining that "[w]here either the definition or the declaration of occurrence of the condition is left to the sole discretion of the invoking party, the application of a good faith standard to the enforcement of conditions is appropriate." *Id.* (citing *Gilbert v. El Paso Co.*, 490 A.2d 1050, 1054-55 (Del. Ch. 1984), *aff'd*, 575 A.2d 1131 (Del. 1990) ("An implied covenant of good faith … extends to the enforcement of conditions and may preclude a party from avoidance of a contractual undertaking through invoking a condition which occurred by reason of his own actions.")). *See also Charlotte Broad.*, 2015 WL 3863245, at *7 ("even though Plaintiffs had the right to terminate the Agreement, Plaintiffs still had an overarching obligation to comply with the implied covenant to terminate in good faith"), and additional cases cited in Point I.B., *supra*.

Here, the FAC alleges that Robotics Hub had an implied contractual obligation to act in good faith and to refrain from arbitrary or unreasonable conduct that would prevent Daimler from receiving the fruits of the bargain, and that Robotics Hub breached this obligation by wrongfully preventing Daimler from returning to a full-time position as was required for his common units to begin vesting, and then treating all of Daimler's equity as forfeited.  (FAC ¶¶ 138-40.)  These allegations are sufficient to defeat a motion to dismiss.  *See Anderson*, 497 F. Supp. 2d at 582-83 (holding that "[u]nder the forgiving standard of review set forth in Fed. R. Civ. P. 12(b)(6)," plaintiffs sufficiently stated a claim for breach of the covenant of good faith and fair dealing where it was alleged that defendants "erected unreasonable hurdles that plaintiffs were forced to clear before they could receive the mortgages for which they had contracted").

### C.  THE TORTIOUS INTERFERENCE CLAIMS ARE WELL PLED

Daimler has also sufficiently alleged claims against Moehle for tortious interference with the Daimler Awards (Counts Three and Four).  "In order to prove tortious interference under Pennsylvania law, Plaintiff must establish:  (1) the existence of a contractual … relationship between the complainant and a third party; (2) purposeful action on the part of the defendant,

16

specifically intended to harm the existing relation … ; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct."  *Lubold v. Univ. Veterinary Specialists, LLC*, No. 17CV0507, 2017 WL 2834668, at *2 (W.D. Pa. June 30, 2017).  Delaware law has similar requirements:  "There must be (1) a contract, (2) about which defendant knew and (3) an intentional act that is a significant factor in causing the breach of such contract (4) without justification (5) which causes injury."  *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 992 (Del. Ch. 1987).

Daimler alleges that Moehle was aware of the Daimler Awards and, without justification or privilege, caused the Companies to breach their contractual obligations by wrongfully preventing Daimler from providing full-time services as required for his common units to vest, resulting in the Companies treating Daimler's equity as having been forfeited and Daimler being removed from the Boards of the Companies.  (FAC ¶¶ 107-17.)

Defendants argue that Daimler has failed to allege any breach of contract, as required for a tortious interference claim.  (Def. Bf. at 21.)  As explained above, however, the Companies breached the Daimler Awards by preventing Daimler from fulfilling the condition of receiving his common units, namely returning to full-time work by March 23, 2017.  (*See* Point I.A., *supra*.)  Moehle's actions directly caused this breach, by creating a "deadlock" by voting to not allow Daimler to return to his full-time role and rejecting Daimler's offer to work full-time but receive compensation at a later time.  (FAC ¶¶ 78-82.)  Thus, Defendants' claim that no breach of contract has been identified is simply wrong.

Defendants also incorrectly argue that Daimler has not alleged damages, claiming that "Daimler's common units could not have vested even under the terms of the Moehle Awards." (Def. Bf. at 22.)  This is a *non-sequitur*.  The FAC specifically alleges that Daimler suffered

17

damages as a result of Moehle's conduct because the Companies deemed his common units as forfeited after Daimler was wrongfully prevented from returning to work full-time and fulfilling that condition to vesting.  (FAC ¶¶ 109, 111, 115, 117.)  This breach resulted in harm to Daimler regardless of the contents of the Moehle Awards.

Also without merit is Defendants' argument that the tortious interference claims rely on conduct that Moehle "undertook as an agent of the Companies."  (Def. Bf. at 20.)  Defendants cite portions of the FAC that Moehle acted "as an officer and/or member of Robotics Hub [and Coal Hill]," but those allegations relate to Moehle's misrepresentations about the Daimler Awards.  (FAC ¶¶ 151, 187.)  In contrast, when Moehle acted to prevent Daimler from returning to full-time employment, Moehle was acting in a personal capacity, since he was the only one who benefitted from the forfeiture of Daimler's equity and subsequent removal from the Board. Indeed, the Companies would have greatly benefited from the full-time employment of Daimler, who was coming off a highly prestigious Presidential fellowship, particularly since Daimler offered to have his compensation accrue and be paid at a later time.  (*Id*. ¶¶ 29-34, 78-80, 85-88.)

Thus, Daimler's allegations make clear that, when Moehle caused the Companies to breach their obligations under the Daimler Awards, Moehle was acting in his personal capacity and against the best interests of the Companies.  A tortious interference claim lies in such circumstances.  *See Alexander v. Pennsylvania Dep't of Banking*, No. CIV. 93-5510, 1994 WL 144305, at *5 (E.D. Pa. Apr. 21, 1994) ("where a plaintiff alleges that the corporate officers or directors either acted in their personal capacity or outside the scope of their authority and the acts … were … against the corporation's best interest, an intentional interference claim may be asserted against the individuals"); *Am. Trade Partners, L.P. v. A-1 Int'l Importing Enterprises, Ltd*., 757 F. Supp. 545, 555 (E.D. Pa. 1991) ("Where it is alleged … that the corporate officer …

was acting in a personal capacity or outside the scope of his authority, an intentional interference claim may be asserted against him."); *Avins v. Moll*, 610 F. Supp. 308, 318 (E.D. Pa. 1984), *aff'd*, 774 F.2d 1150 (3d Cir. 1985) (corporate officer, director, or other management level agent can be "personally liable for inducing breach of contract … [if] the individual's conduct is against the interest of the corporation").  *Accord Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers Local Union 42 v. Absolute Envtl. Servs., Inc.*, 814 F. Supp. 392, 400 (D. Del. 1993) ("an officer or director may be held personally liable for tortious interference with a contract of the corporation if, and only if, said officer or director exceeds the scope of his agency in so doing"); *Duran v. Cty. of Clinton*, No. 4:14-CV-2047, 2015 WL 5675580, at *11 (M.D. Pa. Sept. 25, 2015) ("an agent acts outside the scope of employment [for purposes of tortious interference] if the officer's conduct is against the corporation's interest.").

Finally, as courts have noted, an "agency" defense to a tortious interference claim is not properly resolved on a motion to dismiss.  *See Kuhn Const. Co. v. Ocean and Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 531 (D. Del. 2012) (in addressing defendant's argument that it could not have tortiously interfered as an agent of contracting party, holding that "an agency relationship is determinable only after appropriate discovery and, thus, is not appropriate for a motion to dismiss"); *see also Canavan v. Beneficial Fin. Corp.*, 553 F.2d 860, 865 (3d Cir. 1977) ("Because the existence of an agency relationship hinges largely on the particular facts of each case, discovery was essential to the preparation of an agency theory argument").

### D.  THE UNJUST ENRICHMENT CLAIMS ARE WELL PLED

Daimler has properly alleged an unjust enrichment claim against Moehle (Count Five) and the Companies (Counts Eleven and Sixteen).  "The elements of unjust enrichment under Pennsylvania law have been defined as follows: (1) benefits conferred on defendant by Plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits

under such circumstances that it would be inequitable for defendant to retain the benefit without

payment of value." *Gabriel v. Giant Eagle, Inc.*, 124 F. Supp. 3d 550, 568 (W.D. Pa. 2015).

Delaware law is in accord. *See B.A.S.S. Grp., LLC v. Coastal Supply Co.*, C.A. No. 3743-VCP,

2009 WL 1743730, at *6 (Del. Ch. June 19, 2009) ("The elements of unjust enrichment are:  the

unjust retention of a benefit to the loss of another, or the retention of money or property of

another against the fundamental principles of justice or equity and good conscience.").

Defendants erroneously argue that "Daimler has failed to allege any facts that establish

that he provided a benefit to Moehle *personally* or that Moehle 'unjustly' retained any such

benefit."  (Def. Bf. at 23.)  This ignores the FAC's specific allegations that (a) Moehle

wrongfully used some of Daimler's capital contributions to pay for his personal expenses, and

(b) as a result of Moehle preventing Daimler from satisfying the vesting conditions in the

Daimler Awards, Daimler's common units were treated as forfeited, resulting in Moehle

becoming the majority member and removing Daimler from the Boards.  (FAC ¶¶ 123-24.)[7]

Thus, Moehle took complete control over the Companies and left Daimler with nothing.

In regards to the unjust enrichment claims against the Companies, Defendants argue that

they are foreclosed by the contractual relationships between Daimler and the Companies, and

Daimler's assertion of breach of contract claims.  (Def. Bf. at 22-23.)  However, Defendants

overlook the fact that the unjust enrichment claims against the Companies are expressly pled in

the alternative to the contract claims, as allowed under Fed. R. Civ. P. 8(d).  *See Aetna Life Ins.*

---

[7]  The FAC sufficiently pleads that the Companies were unjustly enriched, in particular with
respect to Daimler's capital contributions and uncompensated services.  (FAC ¶¶ 34, 162, 198.)
The Companies' retention of these benefits is particularly unjust because Daimler's contributions
and services were provided on the assumption that he, like Moehle, would own approximately
half of each Company's equity (Moehle and Daimler were each to receive 42 common units in
each Company, and Jamie Fee was to receive 2 units in each Company).

*Co. v. Huntingdon Valley Surgery Ctr.*, C.A. No. 13-03101, 2015 WL 1954287, at *10 n.11 (E.D. Pa. Apr. 30, 2015) ("Fed. Rule Civ. P. 8(d)(3) permits inconsistent claims at the pleading stage, [ ] so courts have permitted plaintiffs to pursue alternative theories of recovery based both on breach of contract and unjust enrichment, even when the existence of a contract would preclude recovery under unjust enrichment."); *Sensus USA, Inc. v. Elliott Bay Eng'g, Inc.*, C.A. No. 10-1363, 2011 WL 2650028, at *5 (W.D. Pa. July 6, 2011); *Schirmer v. Principal Life Ins. Co.*, No. 08-cv-2406, 2008 WL 4787568, at *5 (E.D. Pa. Oct. 29, 2008); *In re FAH Liquidating Corp.*, 572 B.R. 117, 131 (Bankr. D. Del. 2017).

### E.  THE FRAUD CLAIMS ARE WELL PLED

Daimler has properly alleged two fraud claims against each Defendant:  fraud in the inducement (Counts One, Nine and Fourteen) and fraud in the execution (Counts Two, Ten and Fifteen).  Under Pennsylvania law, the elements of fraudulent inducement are:  "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance."  *Hershey Entm't & Resorts Co. v. Interactive Rides, Inc.*, No. 1:04 CV 2641, 2005 WL 3320843, at *7 (M.D. Pa. Dec. 7, 2005).[8]

All the fraud claims are based on false representations that the Daimler Awards were identical to the Moehle Awards, and that *both* contained vesting schedules pursuant to which a

---

[8]  Pennsylvania law should apply to the fraud claims because Moehle is a Pennsylvania resident, the Companies maintain their principal places of business there, and the relevant events took place in Pennsylvania; the only connection to Delaware is that one of the Companies was formed there.  (FAC ¶ 5-7, 9.)  *See, e.g., Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc.*, 94 F. Supp. 2d 589, 594 (E.D. Pa. 1999) (applying Pennsylvania law to fraudulent inducement claim where defendant was a Pennsylvania corporation with its principal place of business in Pennsylvania, the alleged wrong occurred in Pennsylvania, and plaintiff chose to do business with defendant in Pennsylvania, even though plaintiff was incorporated in Delaware).

portion of common units would vest automatically while the remaining units would vest over time.  As alleged in the FAC, Daimler would not have entered into the Daimler Awards if he had known that the Daimler Awards and Moehle Awards had disparate vesting schedules that favored Moehle, and there could be any circumstance under which his common units in the Companies could be forfeited.  (FAC ¶¶ 98-102, 142-45, 177-80.)  The fraudulent inducement claim against Moehle is based on Moehle's additional misrepresentations that GE had committed to invest in the Fund and that he had a strong relationships with the NREC and the RI, which would lead to potential investment opportunities.  (*Id.* ¶¶ 15-19, 90.)

Defendants argue that Daimler fails to allege damage as the "proximate result" of the misrepresentations, claiming that the differences between the Daimler Awards and Moehle Awards are not material since both Awards required full-time service prior to vesting, and Daimler never fulfilled that condition.  (Def. Bf. at 8-9.)  As an initial matter, it should be recognized that "questions of proximate cause are typically reserved for the jury."  *Vanesko v. Marina Dist. Dev. Co., LLC*, 38 F. Supp. 3d 535, 543 (E.D. Pa. 2014).

Moreover, Defendants' causation argument misses the key fact that there was no forfeiture provision in the Moehle Awards, as there was in the Daimler Awards.  Daimler alleges that he would never have entered into the Daimler Awards if he had been aware of any circumstance under which his common units could be forfeited.  (FAC ¶¶ 93, 102, 144, 152, 179, 188.)  He also alleges that Defendants made their false representations to induce Daimler to fund the Companies, with the intent of later using the disparate vesting schedules to force Daimler out of the Companies so that Moehle could take full control over them.  (*Id.* ¶ 94, 100, 145, 150, 180, 186.)  Thus, Daimler has adequately alleged that he suffered damages as a result of Defendants' misrepresentations, through the forfeiture of his equity in the Companies, including

the equity he should have been awarded due to his additional capital contributions that were induced by the fraud.  (*Id.* ¶¶ 65-69, 89, 94, 96, 97, 105, 141, 147, 148, 155, 176, 182, 183, 191.)

Defendants also incorrectly argue that the fraud in the execution claims are insufficiently pled because Daimler "does not plausibly allege excusable ignorance of the actual terms of the Daimler Awards."  (Def. Bf. at 10-12.)  Fraud in the execution occurs where "a party alleges that he was mistaken as to the terms and the actual contents of the agreement he executed due to the other's fraud."  *Batoff v. Charbonneau*, 130 F. Supp. 3d 957, 970 (E.D. Pa. 2015).  As Defendants note, "[a] plaintiff seeking to prove fraud in the execution must also show 'excusable ignorance' of the difference between the actual agreement and what he was led to believe."  *O'Kinsky v. Perone*, C.A. No. 10-6075, 2012 WL 1392367, at *4 (E.D. Pa. Apr. 20, 2012).

Contrary to Defendant's argument, however, "[e]xcusable ignorance does not necessarily require a party to have read or insisted on reviewing a copy of the written contract before signing."  *O'Kinsky*, 2012 WL 1392367, at *4.  Instead, a defrauded party is under "no duty to investigate" an allegedly fraudulent statement or omission in order to justifiably rely on it, which means that "a party claiming fraud in the execution is under 'no duty to read' a contract allegedly procured by fraud to confirm its contents unless the fraud is known or obvious."  *Axalta Coating Sys., LLC v. Midwest II, Inc.*, 217 F. Supp. 3d 813, 823 (E.D. Pa. 2016).

Here, the FAC alleges that "[t]he fact that Daimler was unaware of the contents of the Daimler Awards and the disparity between the Daimler Awards and the Moehle Awards is excusable because Daimler reasonably believed representations repeatedly made to him by his equal business partner Moehle, who was the Companies' counsel's primary point of contact with respect to, among other things, drafting the award agreements."  (FAC ¶103.)  Reed Smith, the law firm that prepared the Awards, repeated Moehle's representations that the Awards were

identical.  (*Id*. ¶¶ 44, 47).  Thus, "Daimler justifiably relied upon Moehle's misrepresentations as being true when he executed the signature pages to the Daimler Awards."  (*Id*. ¶ 104.)  These allegations are sufficient to plead the "excusable ignorance" requirement for fraud in the execution.  *See O'Kinsky*, 2012 WL 1392367, at *4 (prima facie showing of excusable ignorance where, *inter alia*, plaintiff alleged he relied on the representations of an attorney and thus, "relied on someone in a position of authority and expertise to explain the contract to him"); *Batoff*, 130 F. Supp. 3d at 971 (plaintiff reasonably relied upon fraudulent omission where defendant failed to disclose that certain material terms were omitted from settlement agreement).

Arguing that Daimler was in fact aware of the disparate vesting conditions, Defendants improperly submit and rely on a form that Daimler sent to the IRS (ECF Doc. No. 17-1), which stated that the 42 common units were "subject to vesting requirements based on the performance of services."  (Def. Bf. at 11-12.)  This document should not be considered by the Court, since it is not "integral to or explicitly relied upon in the complaint."  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).  The FAC makes no mention of the IRS form (nor does not it rely on it in any way), and there is no basis for arguing that it "must have [been] used in framing [the] complaint."  *Id*. at 250.  *See Lum v. Bank of Am.*, 361 F.3d 217, 222 (3d Cir. 2004) ("In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").  However, even if the IRS form could be considered, it does not contradict Daimler's allegation that he was not aware of any circumstance under which his equity could be forfeited, since the document says nothing about the possibility of forfeiture.

Finally, there is no merit to Defendants' argument that the claim against Moehle for fraud in the inducement (Count One) is not pled with sufficient particularity.  (Def. Bf. at 13-14.)

Notably, Defendants do not direct this argument to Moehle's misrepresentations about the Daimler Awards, thereby conceding that those are pled with adequate particularity. (*See* FAC ¶¶ 91, 98.) Instead, they address only Moehle's misrepresentations that GE had committed to invest in the Fund and that he had a strong relationship with the NREC and the RI. (Def. Bf. at 13-14.) Defendants' claim of insufficient particularity relating to "reckless or conscious misbehavior" by Moehle is a non-starter, because Fed. R. Civ. P. 9(b) provides that "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Here, the FAC alleges that "Moehle made such misrepresentations knowing they were false or with a reckless disregard as to whether they were true or false." (FAC ¶ 92.) This suffices under Rule 9(b).

Defendants' argument that the alleged statements by Moehle are not actionable also fails, especially with respect to Moehle's representations that GE had committed to investing $20 million in the Fund. (FAC ¶¶ 16, 19.) These were not "statements of expectation" or "predictions about the future" as Defendants characterize them. (Def. Bf. at 14.) Instead, the representation that GE had made a commitment to provide funding is a statement of present fact, and thus actionable as fraud. *See, e.g., Alpha Capital Anstalt v. Menaged*, No. 15CV987, 2015 WL 7271069, at *2 (S.D.N.Y. Nov. 12, 2015) (defendant's statement that he had a "commitment from another investor for half the funds required" was a misrepresentation of present fact that supported a claim for fraudulent inducement); *In re Zaffron*, 303 B.R. 563, 570 (Bankr. E.D.N.Y. 2004) (representations that party "had obtained a financing commitment" from a bank and "had groups of private investors willing to invest" were actionable as fraud).

## IV.   <u>CONCLUSION</u>

For the reasons presented herein, Plaintiff Eric Daimler respectfully requests that the Court deny Defendants' motion to dismiss his First Amended Complaint.

Dated:  April 20, 2018    Respectfully submitted,

          BUCHANAN INGERSOLL & ROONEY PC

          By:  /s/ Christopher P. Schueller
             Christopher P. Schueller, Esq.
             Pa. I.D. No. 92746
             One Oxford Centre
             301 Grant Street, 20th Floor
             Pittsburgh, PA 15219
             (412) 562-8432
             christopher.schueller@bipc.com

          -and-

          THOMPSON & KNIGHT LLP

          Mitchell G. Mandell, Esq.
          Admitted *pro hac vice*
          900 Third Avenue, 20th Floor
          New York, New York 10022
          (212) 751-3411
          mitchell.mandell@tklaw.com

          *Attorneys for Plaintiff Eric Daimler*