# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC DAIMLER, | ) |
|               Plaintiff, | ) Civil Action No. 18-165 ) ) Judge Marilyn J. Horan |
| v. | ) |
| CHRIS MOEHLE, ROBOTICS HUB FUND 1, LLC, and COAL HILL VENTURES LLC, | ) ) ) ) |
|               Defendants. | ) ) |

## OPINION AND ORDER

Plaintiff Eric Daimler initially filed suited on February 5, 2018 against Defendants Chris Moehle, Robotics Hub Fund 1, LLC, and Coal Hill Ventures LLC. (ECF No. 1). The Court, on its own motion, dismissed the Complaint for lack of subject matter jurisdiction on February 7, 2018. (ECF No. 3). On February 14, 2018, Plaintiff Daimler filed his First Amended Complaint, which alleged eighteen counts arising out of the formation and operation of a business partnership between Plaintiff Daimler and Defendant Moehle. (ECF No. 4). The claims included: fraud in the inducement, in Counts One, Nine, and Fourteen; fraud in the execution, in Counts Two, Ten, and Fifteen; tortious interference with contract, in Counts Three and Four; unjust enrichment, in Counts Five, Eleven, and Sixteen; breach of contract, in Counts Six, Seven, Twelve, and Thirteen; breach of the implied covenant of good faith and fair dealing, in Count Eight; and accounting and legal accounting, in Counts Seventeen and Eighteen, respectively. (ECF No. 4).

On March 30, 2018, Defendants moved to dismissed the First Amended Complaint. (ECF No. 16). On July 30, 2018, the Court dismissed all Counts except the breach of contract

1

claims in Counts Seven and Thirteen, as to which the Court granted the Motion to Dismiss in part and denied it in part. (ECF Nos. 22, 23). The Court also allowed Plaintiff Daimler leave to re-plead certain factual allegations related to the fraud-in-the-inducement claims in Counts One, Nine, and Fourteen. (ECF Nos. 22, 23).

Subsequently, on August 24, 2018, Plaintiff Daimler filed a Second Amended Complaint. (ECF No. 24). Defendants again moved to dismiss for failure to state a claim, and moved for a more definite statement. (ECF No. 26). The Court denied the Motion without prejudice, ordering that the parties meet and confer in an effort to resolve their disputes as to deficiencies in the Second Amended Complaint. (ECF No. 28). Plaintiff Daimler then filed his Third Amended Complaint on October 16, 2018, alleging fraud in the inducement against each Defendant, in Counts One, Two, and Five, and alleging breach of contract against Defendant Coal Hill, in Counts Three and Four. (ECF No. 33). On October 30, 2018, Defendants filed the present Motion to Dismiss. (ECF No. 34). The parties briefed the issues, (ECF Nos. 35, 40, 41), and on February 20, 2018, the Court heard oral argument on the Motion, (ECF No. 46).

For the following reasons, Defendants' Motion to Dismiss will be denied in part and granted in part.

**I. Factual background**

In 2015, Plaintiff Eric Daimler operated Skilled Science, a company engaged in robotics and venture finance. (ECF No. 33, at ¶ 11). In April 2015, Defendant Chris Moehle formed Coal Hill Ventures, LLC (hereinafter "Coal Hill" or "Defendant Coal Hill"), also a robotics and venture finance company, under the laws of the Commonwealth of Pennsylvania. *Id.* at ¶¶ 7, 11 and n.2. Sometime in 2015, Plaintiff Daimler and Defendant Moehle "decided to move forward with an equal partnership by combining Skilled Science and Coal Hill through a de-facto

2

merger." *Id.* at ¶ 12. Plaintiff Daimler and Defendant Moehle ultimately co-founded two new entities, Robotics Hub Fund 1, LLC (hereinafter "Robotics Hub" or "Defendant Robotics Hub") and Robotics Hub Fund 1, LP (hereinafter "the Fund") in March 2016, under the laws of the State of Delaware. *Id.* at ¶¶ 12, 36–37.

In the lead up to forming the partnership, starting in the very first phone call between Defendant Moehle and Plaintiff Daimler on or around August 18, 2015, Defendant Moehle "stated that GE had already invested in Coal Hill, and had committed to invest another $20,000,000.00 in the Fund." *Id.* at ¶ 20. Defendant Moehle subsequently repeated his claim regarding GE's commitment to invest $20,000,000.00 in the Fund on numerous occasions in the latter half of 2015: during phone calls with Plaintiff Daimler on August 19, September 15, September 24, November 3, and December 8, *id.* at ¶ 21, and during in-person meetings with Plaintiff Daimler and potential investors on October 16, November 1, November 3, November 10, November 18, and December 15, *id.* at ¶¶ 23–26. Defendant Moehle told Plaintiff Daimler that he expected to have the GE funds in hand in early or mid-2016, following the completion "of a particular regulatory process" related to "the spin out of GE's financial arm." *Id.* at ¶ 22. Defendant Moehle further explained to Plaintiff Daimler that the completion of the regulatory process "was *not* a condition of GE's funding of its committed investment, but merely something that affected the timing of funding." *Id.* Plaintiff Daimler ultimately never spoke with GE regarding the investment, at least in part because Defendant Moehle "specifically directed Daimler to not discuss the investment" during a meeting with a GE contact. *Id.* at ¶ 27. Plaintiff Daimler states that he "did not view this as unusual, but rather consistent with Moehle's personality and oft-expressed desire to maintain control of the relationships he cultivated." *Id.*

3

While Plaintiff Daimler and Defendant Moehle were planning their partnership, Plaintiff Daimler continued operating Skilled Science "and was planning to close on investments from two investors, totaling $10,000,000.00." *Id.* at ¶ 17. Skilled Science's structure, however, was different from the structure that Plaintiff Daimler and Defendant Moehle contemplated for Defendant Robotics Hub and the Fund. *Id.* at ¶ 19. Plaintiff Daimler and Defendant Moehle thus "could not simply 'shift' their investments to the new, joint venture." *Id.* Consequently, Plaintiff Daimler decided to walk away from Skilled Science in late 2015 because of Defendant Moehle's assurances regarding GE's commitment to invest in the Fund. *Id.* at ¶ 17.

In early 2016, Defendant Moehle continued to represent, on numerous occasions, to Plaintiff Daimler that GE had committed to invest $20,000,000.00 in the Fund: during phone calls with Plaintiff Daimler and investors on January 20 and February 12, and in meetings with Plaintiff Daimler and investors on January 5, January 6, January 14, February 15, February 17, February 23, and March 23. *Id.* at ¶¶ 25, 32. As of March 23, 2016, Plaintiff Daimler and Defendant Moehle had co-founded the two new entities, Defendant Robotics Hub and the Fund. *Id.* at ¶ 12. The parties structured the venture such that Defendant Robotics Hub is the General Partner, and Defendant Coal Hill is the Investment Manager, of the Fund. *Id.* at ¶ 12. As a part of the new entities' formation, Defendant Robotics Hub and Defendant Coal Hill each entered into Amended and Restated Operating Agreements, under which Plaintiff Daimler and Defendant Moehle were both made members of each Defendant Robotics Hub and Defendant Coal Hill, and both were the only members of the entities' initial Board of Managers. *Id.* at ¶¶ 36–37, 66.

Additionally, relevant to Plaintiff Daimler's claims, Section 7.2 of the Operating Agreements required that all additional capital contributions beyond members' initial

4

contributions "be made in connection with the issuance of units." *Id.* at ¶ 68. Additionally, Defendant Robotics Hub and Defendant Coal Hill entered into Common Unit Award Agreements with each Plaintiff Daimler and Defendant Moehle. *Id.* at ¶ 54. Pursuant to Defendant Moehle's Award Agreements, Defendant Moehle was awarded forty-two common units in each Robotics Hub and Defendant Coal Hill. *Id.* Twenty percent of Defendant Moehle's units were to vest on March 23, 2017, and 1.6666% of the units were to vest "ratably on the last day of each month thereafter until" March 23, 2021. *Id.* Plaintiff Daimler was similarly awarded forty-two units in each Defendant Robotics Hub and Defendant Coal Hill, though his vesting scheduled differed. *Id.* at ¶¶ 55–56. Twenty percent of Plaintiff Daimler's units were to vest on the date on which he "has provided 12 consecutive and uninterrupted months of Full Time Services to the Company Group, provided that [Daimler] must begin providing such Full Time Services to the Company Group no later than" March 23, 2017. *Id.* at ¶ 56. The remaining eighty percent of the units would vest "on a pro-rata basis on the last day of each month thereafter until" March 23, 2021. *Id.*

While Plaintiff Daimler and Defendant Moehle were in the process of forming Defendant Robotics Hub and the Fund, the White House appointed Plaintiff Daimler as a Presidential Innovation Fellow. *Id.* at ¶ 45. The twelve-month fellowship program ran from January 2016 to the end of President Obama's term in January 2017. *Id.* at ¶ 46. The fellowship pulled Plaintiff Daimler away from Defendant Robotics Hub and Defendant Coal Hill, such that Plaintiff Daimler only worked for the companies part-time during the fellowship. *Id.* at ¶ 74. Defendant Moehle "encouraged Daimler to accept the fellowship because of the value that the Companies and the Fund would derive from it" through positive press coverage and Defendants' promotion of Plaintiff Daimler's fellowship "in connection with their marketing and fundraising efforts."

5

*Id.* at ¶¶ 47, 49. Plaintiff Daimler and Defendant Moehle agreed that compensation for Plaintiff Daimler's part-time work in 2016 "would accrue and be paid to Daimler at a later date," *id.* at ¶ 50, and they both "understood that Daimler would return to his full-time position with the Companies when his fellowship ended," *id.* at ¶ 74.

"In early-mid 2016," however, Plaintiff Daimler's and Defendant Moehle's business relationship began to erode. *Id.* at ¶ 77. Defendant Moehle "began criticizing Daimler as a business partner," *id.* at ¶ 78, and "became increasingly controlling over access to information about the Fund's investors and portfolio companies," *id.* at ¶ 79. Defendant Moehle also assigned "deliverables" to Plaintiff Daimler, such as asking Plaintiff Daimler to make introductions to other companies, without consulting Plaintiff Daimler beforehand. *Id.* at ¶¶ 81, 98. Plaintiff Daimler hoped that, because the business relationship was new, these issues were just "growing pains" and would resolve with time. *Id.* at ¶ 83. Accordingly, Plaintiff Daimler remained engaged in the businesses and the Fund, and made several financial contributions to them. *Id.* at ¶¶ 82, 84, 86–89. Some contributions were treated as loans, which were repaid by Defendant Coal Hill with interest. *Id.* at ¶¶ 43–44, 84, 87. Other contributions, totaling more than $200,000.00, were made to Defendant Coal Hill "with the expectation that they would be treated as capital contributions." *Id.* at ¶¶ 89–90. Plaintiff Daimler made the contributions "with Moehle's knowledge and approval" and "in late 2016, Moehle agreed that they would be treated as" capital contributions. *Id.* at ¶¶ 89, 91. In spite of Section 7.2 of the Operating Agreement, however, Plaintiff Daimler "did not receive additional common units in Coal Hill in connection with his additional financial contributions." *Id.* at ¶ 94.

The relationship between Defendant Moehle and Plaintiff Daimler continued to deteriorate during the second half of 2016. *See id.* at ¶¶ 95, 98. On January 5, 2017, Defendant

6

Moehle recommended to the Boards of Defendant Robotics Hub and Defendant Coal Hill—each of which was made up only of Plaintiff Daimler and Defendant Moehle—that Plaintiff Daimler not be allowed to return to a full-time position because (according to Defendant Moehle) the companies lacked sufficient funds to pay him. *Id.* at ¶¶ 104–05. Due to Plaintiff Daimler's vote for, and Defendant Moehle vote against, Plaintiff Daimler's return to a full-time position, the Boards were deadlocked. *Id.* at ¶¶ 106–07. In accordance with Defendant Robotics Hub's and Defendant Coal Hill's Operating Agreements, the matter was then referred to the deadlock advisor, who "broke the deadlock by voting against Daimler returning to a full-time, fully compensated role" on March 22, 2017. *Id.* at ¶¶ 107, 109. This decision resulted in Plaintiff Daimler not returning to a full-time position by the date stated in the vesting clause in each of his Award Agreements, which in turn resulted in Plaintiff Daimler's forfeiture of all his common units. *Id.* at ¶ 111. The Defendants, therefore, "believe that Daimler has no membership or ownership interest in the Companies, thereby making Moehle the Companies' majority member." *Id.* at ¶ 112. As the majority member of both Defendant Robotics Hub and Defendant Coal Hill, Defendant Moehle "purportedly directed the Companies to remove Daimler from their respective Boards and amend and restate the Fund's Limited Partnership Agreement to remove Daimler from the 'Key Person' provision." *Id.* at ¶ 113.

After Plaintiff Daimler was ousted from Defendant Robotics Hub and Defendant Coal Hill, he learned that Defendant Moehle "had lied about GE's commitment to invest $20,000,000.00 in the Fund." *Id.* at ¶ 114. Plaintiff Daimler subsequently filed his initial Complaint in February 2018. (ECF No. 1). Presently, in his Third Amended Complaint, filed in October 2018, Plaintiff Daimler alleges a claim of fraud in the inducement against each Defendant, and two claims of breach of contract against Defendant Coal Hill. Defendants seek

dismissal of all claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (ECF No. 34).

**II. Legal standard**

In deciding a motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6), a court must first "accept all factual allegations as true" and "construe the complaint in the light most favorable to the plaintiff." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (internal quotations omitted). The court then must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Id.* A complaint is sufficient only when it is facially plausible, meaning that the court is able "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). To be plausible on its face, the complaint must contain more than "[t]hreadbare recitals of the elements of a cause of action" and "mere conclusory statements." *Id.* The court need not "accept unsupported conclusions and unwarranted inferences." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013).

**III. Discussion**

A. Fraud in the inducement

Defendants move to dismiss, under Rule 12(b)(6), Counts One, Two, and Five of the Third Amended Complaint, in which Plaintiff Daimler alleges claims of fraud in the inducement against Defendants Moehle, Robotics Hub, and Coal Hill, respectively. (ECF Nos. 33, 34). Defendants seek dismissal with prejudice, arguing that Plaintiff Daimler has now made multiple attempts to sufficiently plead his claims and has failed to do so. (ECF No. 34, at 4).

To state a claim for fraud in the inducement under Pennsylvania law,[1] "a plaintiff must plead, with particularity, '(1) [a] representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.'" *Chmil v. Arthrex, Inc.*, 2019 U.S. Dist. LEXIS 31024, at *13 (M.D. Pa. Feb. 27, 2019) (quoting *Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999)).

Additionally, under Federal Rule of Civil Procedure 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Rule 9(b) goes on to provide, however, that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* To satisfy the heightened pleading standard, and thus survive a motion to dismiss, the plaintiff must "'state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged.'" *Citizens United Reciprocal Exch. v. Meer*, 321 F. Supp. 3d 479, 486 (D.N.J. 2018) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). Generally, this means that the plaintiff must "allege the 'essential factual background that would accompany the first paragraph of any newspaper story—that is, the "who, what, when, where and how" of the events at issue,'" *Kayal v. Signal Hill Realty Corp.*, 2018 U.S. Dist. LEXIS 146719, at *7 (D.N.J. Aug. 29, 2018) (quoting *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276–

---

[1] Plaintiff Daimler argues in his Brief that Pennsylvania law should apply to all three of his fraud-in-the-inducement claims. (ECF No. 40, at 19 n.5). Defendants do not dispute this or otherwise offer a response to this argument. Based on this Court's reading of the law of both Pennsylvania and Delaware as to fraud-in-the-inducement claims, it appears that choosing one over the other will not change the outcome of this Motion. Therefore, for simplicity's sake, this Court will apply Pennsylvania law here.

77 (3d Cir. 2006)), or otherwise use an "alternative means of injecting precision and some measure of substantiation into their allegations of fraud," *Northeast Revenue Servs., LLC v. Maps Indeed, Inc.*, 685 Fed. App'x. 96, 102 (3d Cir. 2017) (internal quotations omitted).

Of the above six required elements, Defendants only challenge three: Defendants contend that Plaintiff Daimler failed to plead with particularity a representation, Defendants' knowledge of or recklessness as to the falsity of the representation, and justifiable reliance. (ECF No. 34; ECF No. 35, at 10–14). As such, this Court will only address those three elements at this time.

*i. Representation*

First, Defendants argue that Plaintiff Daimler's fraud claims are not based on an actionable representation. (ECF No. 34, at 2; ECF No. 35, at 16). In order to establish a fraud claim, the representation on which the claim is based must be about a past or existing fact. *SSC Manager, LLC v. Venezia FC 1907 LP*, 2017 U.S. Dist. LEXIS 118294, at *16 (E.D. Pa. July 27, 2017). Opinions or predictions generally are not sufficient, nor are promises to do or refrain from future acts. *Eisen v. Horn*, 2009 U.S. Dist. LEXIS 86598, at *43–44 (W.D. Pa. Sept. 2, 2009); *Bennett v. Itochu Int'l, Inc.*, 682 F. Supp. 2d 469, 479 (E.D. Pa. 2010). Nevertheless, "statements about optimistic future predictions may be actionable if the prediction strays from a general expression of hope and 'fosters a belief in a specific and definite outcome.'" *Coleman v. Sears, Roebuck & Co.*, 319 F. Supp. 2d 544, 551 (W.D. Pa. 2003) (quoting *In re Crown American Realty Trust*, 197 U.S. Dist. LEXIS 14609, at *23 (W.D. Pa. Sept. 15, 1997)). Likewise, a statement of intention, such as a promise to do a certain act, "may constitute a fraudulent misrepresentation of fact" if the statement was false at the time it was uttered. *Bennett*, 682 F. Supp. 2d at 479. At bottom, it is well-established that "'[f]raud consists of anything calculated to deceive, whether by single act or combination, or by suppression of truth,

or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture.'" *Boardakan Rest. LLC v. Gordon Grp. Holdings, LLC*, 2016 U.S. Dist. LEXIS 147298, at *40–41 (E.D. Pa. Oct. 21, 2016) (quoting *Delahanty v. First Pennsylvania Bank, N.A.*, 464 A.2d 1243, 1252 (Pa. Super. Ct. 1983)).

Here, Plaintiff Daimler's fraud claims are based on Defendant Moehle's statement that GE had committed to invest $20,000,000.00 in the Fund. (ECF No. 33, at ¶¶ 116, 122, 140). Defendants argue that Defendant Moehle's statements about GE's commitment are promissory and relate to a future, contingent event, and are therefore not actionable as fraud. (ECF No. 35, at 12–13). However, to focus solely on the nature of GE's purported intentions is too narrow a view. The issue is not whether GE's commitment constituted a promise to engage in a future act, because GE is not the speaker alleged to have made a fraudulent misrepresentation; the issue is the nature of Defendant Moehle's statements regarding the *existence* of GE's commitment. Additionally, to the extent that Defendant Moehle's statements about what a third party will do constitute a prediction, Plaintiff Daimler's allegations surrounding the timing and manner of Defendant Moehle's statements take Defendant Moehle's statements from a "general expression of hope" to a prediction that "fosters a belief in a specific and definite outcome." *See Coleman*, 319 F. Supp. 2d at 551. Plaintiff Daimler alleges that Defendant Moehle stated GE's commitment on at least twenty-one occasions, often in the presence of investors or potential investors, and that Defendant Moehle readily explained away apparent conditions precedent as "merely something that affected the timing of funding," not the eventuality or likelihood of fund. (ECF No. 33, at ¶¶ 20–26, 32). Accordingly, Plaintiff Daimler sufficiently pleads a statement about a past or existing fact, that is, an actionable representation.

*ii. Knowledge of or recklessness as to falsity*

The next element that Defendants challenge is whether Plaintiff Daimler pleads facts sufficient to show that the representation was "made falsely, with knowledge of its falsity or recklessness as to whether it is true or false." (ECF No. 34, at 2; ECF No. 35, at 14); *Chmil*, 2019 U.S. Dist. LEXIS 31024, at *13. In interpreting Rule 9(b)'s requirements for pleading fraud claims, the Third Circuit has held, "It is not enough for plaintiffs to allege generally that defendants 'knew or recklessly disregarded each of the false and misleading statements for which [they were] sued,'" but rather, "plaintiffs must allege facts that could give rise to a 'strong' inference of scienter." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1422 (3d Cir. 1997). After all, Rule 9(b) "is based on a need to provide a defendant with fair notice of the basis of a plaintiff's claim so as to protect a defendant's reputation from groundless accusations of fraud and to prevent strike suits brought for settlement value." *N. Am. Communs., Inc. v. InfoPrint Solutions Co., LLC*, 817 F. Supp. 2d 642, 650 (W.D. Pa. 2011). The plaintiff is thus "required to reveal the specified information within his control"; however, Rule 9(b) is relaxed "when the plaintiff is not likely to have access to more specific information until after discovery because the information is exclusively within defendant's knowledge." *Id.* (internal quotations omitted).

Accordingly, in this Court's previous Memorandum Opinion on Defendants' Motion to Dismiss the First Amended Complaint, the Court noted that Plaintiff Daimler "[did] not specify dates, location(s), or the manner/medium (in person, by telephone, in writing, etc.) the representations were made," nor did "he provide any context to the allegation." (ECF No. 22, at 12). The Court asked, "Did Moehle have conversation with representatives of GE? Had GE responded to any outreach? Had GE ever expressed interest in the Companies or the Fund? *Or had Moehle simply lied about it all?*" *Id.* (emphasis added). In his Third Amended Complaint,

Plaintiff Daimler alleges the dates, locations, and manner/medium of at least twenty-one different instances in which the alleged misrepresentation was made. (ECF No. 33, at ¶¶ 20–26, 32). Plaintiff Daimler then alleges that after he was ousted, he "came to understand that, among other things, *Moehle had lied about GE's commitment.*" (ECF No. 33, at ¶ 114) (emphasis added). Consequently, Plaintiff Daimler has stated with specificity the information within his knowledge and control, and Defendants have been placed on sufficient notice regarding what Defendant Moehle is accused of saying, to whom he said it, where and when he said it, and that he is accused of lying about it all. Plaintiff Daimler has therefore satisfied the requirements of Rule 9(b), and the questions posed by the Court in its previous Memorandum Opinion, as to the scienter element of his fraud claims.

### *iii. Justifiable reliance*

Lastly, Defendants argue that Plaintiff Daimler has failed to plausibly allege that his reliance upon Defendant Moehle's representation was justifiable. (ECF No. 34, at 3; ECF No. 35, at 18). Under Pennsylvania law, for reliance upon another's representation to be justifiable, it must be reasonable. *Porreco v. Porreco*, 811 A.2d 566, 571 (Pa. 2002). A reviewing court thus will consider whether the recipient of the alleged misrepresentation "knew or should have known that the information supplied was false." *Fort Wash. Res., Inc. v. Tannen*, 858 F. Supp. 455, 460 (E.D. Pa. 1994) (citing *Scaife Co. v. Rockwell-Standard Corp.*, 446 A.2d 280, 286–88 (Pa. 1971)). However, the law does not impose "a duty to investigate the falsity of the misrepresentations," because "a party who engages in intentional fraud should be made to answer to the party he defrauded, even if the latter was less than diligent in protecting himself in the conduct of his affairs." *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 207 (Pa. 2007).

Additionally, courts consider factors such as the relationship of the parties, the degree of the parties' sophistication, the nature of the transaction, and the history of the parties' negotiations in determining whether the plaintiff's reliance was reasonable. *See Fort Wash. Res., Inc.*, 858 F. Supp. at 460; *Huu Nam Tran v. Metro. Life Ins. Co.*, 408 F.3d 130, 135 (3d Cir. 2005). In the same vein, where the parties have unequal access to information, a party may be justified in relying on the representations of the other if the other is "believed to possess superior information." *Fort Wash. Res., Inc.*, 858 F. Supp. at 460 (citing *Siskin v. Cohen*, 70 A.2d 293, 295 (Pa. 1950)).

Here, Plaintiff Daimler alleges that Defendant Moehle "repeatedly and continuously" represented that GE had committed to invest $20,000,000.00 in the Fund, and that this representation was made not just to Plaintiff Daimler, but also in meetings with investors and potential investors. (ECF No. 33, at ¶¶ 20–26, 32, 114). Plaintiff Daimler alleges, plausibly, that he "never imagined that Moehle would lie to potential investors (or to Daimler)." *Id.* at ¶ 34. Plaintiff Daimler also alleges that Defendant Moehle provided an explanation for why GE's money was not yet in hand, and that when Plaintiff Daimler asked for updates on the timing of GE's funding, Defendant Moehle's explanation "remained consistent." *Id.* at ¶¶ 22, 33. Accordingly, the circumstances under which Defendant Moehle represented the status of a significant investment do not appear to be the kind that raise red flags, such that Plaintiff Daimler "should have known" that Defendant Moehle was lying.

Furthermore, Plaintiff Daimler pleads facts surrounding the nature of his business relationship with Defendant Moehle, including that Defendant Moehle often expressed a "desire to maintain control of the relationships he cultivated," *id.* at ¶ 27, and that over time, Defendant Moehle "became increasingly controlling over access to information about the Fund's investors

and portfolio companies," *id.* at ¶ 79. In short, Plaintiff Daimler pleads facts showing that the nature of his relationship with Defendant Moehle was such that Defendant Moehle had greater access to relevant investment information. Defendants argue that Plaintiff Daimler, as "a self-claimed experienced venture capitalist," should have engaged in further inquiry to determine the veracity of Defendant Moehle's representations. (ECF No. 34, at 3). However, to require what Defendants ask would be tantamount to imposing a duty to investigate, contrary to current case law. It may well be that Plaintiff Daimler was "less than diligent," but that will not excuse intentional fraud.

In sum, Plaintiff Daimler has sufficiently pleaded that his reliance on Defendant Moehle's representations was justifiable.

Having determined that Plaintiff Daimler sufficiently pleaded the three challenged elements of his three fraud-in-the-inducement claims, found in Counts One, Two, and Five of the Third Amended Complaint, the Motion to Dismiss as to those Counts will be denied.

B. Breach of contract

Defendants also move to dismiss Counts Three and Four of the Third Amended Complaint, in which Plaintiff Daimler alleges two different breach of contract claims against Defendant Coal Hill. (ECF Nos. 33, 34). Defendants seek dismissal with prejudice of these claims as well, arguing that Plaintiff Daimler has had multiple opportunities to amend and has repeatedly failed to state a claim. (ECF No. 34, at 4).

In order to sufficiently plead a claim for breach of contract under Pennsylvania law, a plaintiff must allege facts showing "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *Haywood v. Univ. of*

*Pittsburgh*, 976 F. Supp. 2d 606, 625 (W.D. Pa. 2013). To establish the first element, the existence of an enforceable contract, the plaintiff must allege that (1) "both parties manifested an intention to be bound by the agreement," (2) "the terms of the agreement are sufficiently definite," and (3) there was consideration. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002). If the claim is based on an oral contract, the court must "assess the parties' conduct *in light of the surrounding circumstances* to determine the existence of an oral contract, including its terms." *CPG Int'l LLC v. Shelter Prods.*, 2017 U.S. Dist. LEXIS 15037, at *13 (M.D. Pa. Feb. 3, 2017).

As to the second element, the terms of the agreement "'are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.'" *Ecore Int'l, Inc. v. Downey*, 343 F. Supp. 3d 459, 489 (E.D. Pa. 2018) (quoting Restatement (Second) of Contracts § 33 (1981)). Accordingly, in order to pass muster under Rule 12(b)(6), "a complaint must identify the portions of the contract that were allegedly breached." *Churchill Downs, Inc. v. NLR Entm't, LLC*, 2015 U.S. Dist. LEXIS 135334, at *9 (D.N.J. Oct. 5, 2015). However, the plaintiff does not need to state every term of the contract in complete detail; the plaintiff only needs to specifically plead each of the aforementioned elements of the claim. *Quantum Communs., Ltd. v. Eagle Forum*, 2018 U.S. Dist. LEXIS 133647, at *21 (M.D. Pa. Aug. 8, 2018).

*i. Count Three—failure to issue additional common units*

In Count Three of the Third Amended Complaint, Plaintiff Daimler alleges that under the relevant Operating Agreement, Defendant Coal Hill "is required to issue units in connection with members' additional capital contributions." (ECF No. 33, at ¶ 129). Plaintiff Daimler alleges that he made financial contributions to Defendant Coal Hill totaling more than $200,000.00; that

he and Defendant Moehle, as the sole Board members, agreed that the contributions would be treated as capital contributions under the Operating Agreement; and that Plaintiff Daimler did not receive additional units in connection with the capital contributions. *Id.* at ¶¶ 89–91, 94. Plaintiff Daimler previously alleged this claim in his First Amended Complaint, (ECF No. 4, ¶¶ 169–75), and this Court held, in its Memorandum Opinion on Defendants' prior Motion to Dismiss, that although the claim was "thinly pled," it survived Defendants' Motion to Dismiss, (ECF No. 22, at 18).

Defendants argue here that new facts pleaded in the Third Amended Complaint render Count Three implausible and that the Court should revisit the sufficiency of this claim. (ECF No. 35, at 20). Namely, Defendants contend that Defendant Moehle's alleged agreement to issue additional units—which would give Plaintiff Daimler a majority share in Defendant Coal Hill— is incongruous with Defendant Moehle "taking steps to gain sole control" of the companies. *Id.* at 22. Plaintiff Daimler counters by noting that if Defendant Moehle is "the type to lie about a $20 million GE investment, it does not strain credulity to conclude that he is also the type to make agreements, and later breach them without concern." (ECF No. 40, at 18). The pleading standard under Rule 12(b)(6) is that a plaintiff's claims must be plausible, not probable. As noted above, a court need only "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014). Accordingly, the Court finds that Defendants' argument goes to the probability of Plaintiff Daimler's success on the merits of his claim, and does not affect the Court's analysis of Count Three at this juncture. Therefore, the Motion to Dismiss as to Count Three will be denied.

    *ii. Count Four—failure to pay accrued compensation*

As to Count Four, Plaintiff Daimler brings a new breach of contract claim, in which he alleges that Defendant Coal Hill failed to compensate him for services provided throughout 2015 and 2016. (ECF No. 33, at ¶¶ 133–38). Defendants argue that Plaintiff Daimler fails to state a claim because he does not plead facts regarding when the parties entered the agreement, what services were the subject of the agreement, the agreed-upon rate, and what services Plaintiff Daimler actually provided. (ECF No. 35, at 24).

As stated above, a plaintiff must specifically plead each element of a breach of contract claim, which includes pleading the essential terms of the contract that are alleged to have been breached. *Quantum Communs., Ltd.*, 2018 U.S. Dist. LEXIS 133647, at \*21; *Haywood*, 976 F. Supp. 2d at 625. In the employment contract context, the rate of compensation is an essential term of the contract. *See Param Techs., Inc. v. Intelligent Home Solutions, Inc.*, 2005 U.S. Dist. LEXIS 18097, at \*11 (E.D. Pa. Aug. 25, 2005). Here, Plaintiff Daimler alleges that he and Defendant Moehle, the sole Board members for Defendant Coal Hill, agreed that compensation for Plaintiff Daimler's part-time work for the companies would accrue and then be paid at a later date. (ECF No. 33, at ¶ 50). However, Plaintiff Daimler fails to allege the rate of compensation, or any facts regarding the mechanism by which the parties were to determine compensation, that he and Defendant Moehle agreed upon. Therefore, the Motion to Dismiss as to Count Four will be granted. However, because this is the first time Plaintiff Daimler has alleged this particular breach of contract claim, he is allowed leave to amend at to Count Four.

**IV. Conclusion**

THEREFORE, based on the foregoing, Defendants' Motion to Dismiss is hereby DENIED as to Counts One, Two, Three, and Five, and is GRANTED as to Count Four. Plaintiff

Daimler shall have twenty days from the date of this Order to amend the Third Amended Complaint as to Count Four.

IT IS SO ORDERED.

DATE June 10, 2019

Marilyn J. Horan
United States District Judge