## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC DAIMLER, | ) | |
| | ) | Civil Action No. 18-165-MJH |
| Plaintiff, | ) | The Honorable Marilyn J. Horan |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| CHRIS MOEHLE, ROBOTICS | ) | |
| HUB FUND 1 LLC, and COAL HILL | ) | Electronically Filed |
| VENTURES LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' ANSWER TO PLAINTIFF'S
## FIFTH AMENDED COMPLAINT AND COUNTERCLAIMS

Defendants Chris Moehle, Robotics Hub Fund 1 LLC ("Robotics Hub"), and Coal Hill

Ventures LLC ("Coal Hill") (collectively, "Defendants"), by and through their counsel, K&L

Gates LLP, hereby file this Answer to the Fifth Amended Complaint of Plaintiff Eric Daimler

and Counterclaims, and state as follows:

### INTRODUCTION

1.      The allegations of Paragraph 1 are conclusions of law that do not require a

response.  To the extent a response is required, Defendants deny the allegations.

2.      The allegations of Paragraph 2 do not require a response, as they relate

exclusively to claims that have been dismissed by the Court.  ECF No. 22.  To the extent a

response is deemed necessary, Defendants deny the allegations of Paragraph 2.

By way of further response, the Court has already held that Daimler's common units

were properly deemed forfeited by Robotics Hub and Coal Hill (collectively, the "Companies"),

and also that "regardless of whether the terms of Moehle's award mirrored that of Daimler's …

[Daimler] could not have satisfied the vesting requirements because he had not provided Full

1

Time Services to the Companies by March 23, 2017." ECF No. 22 at 13.

3.      The allegations of Paragraph 3 do not require a response, as they relate exclusively to claims that have been dismissed by the Court.  ECF No. 22.  To the extent a response is required, the allegations of Paragraph 3 are admitted in part and denied in part.

Defendants admit that Daimler's common units were properly deemed forfeited by the Companies due to Daimler's failure to satisfy the express vesting conditions applicable to his common units within the specified time period.  Defendants further admit that Daimler was not offered employment, and that he was removed from the Companies' Boards of Managers in accordance with the terms of the Companies' Amended and Restated Operating Agreements.

The remaining allegations of Paragraph 3 are denied.  Defendants specifically deny Daimler's characterization of his unit forfeiture as "wrongful." The Court has already held that Daimler's common units were properly deemed forfeited by the Companies.  ECF No. 22.

By way of further response, the Companies properly exercised their discretion not to offer Daimler full-time employment, and ultimately to terminate any relationship with Daimler, after he routinely failed to meet performance milestones and deliverable deadlines, devoted only minimal time and effort to the Companies' business, became increasingly difficult to work with, and proved unable to secure any significant investments (including investments he represented he could secure) or otherwise contribute to the growth Robotics Hub Fund 1, LP (the "Fund"), the vehicle through which the Companies would invest in early-stage robotics companies, at or near the level expected of a member of the Companies.

By way of further response, Moehle agreed to begin working with Daimler, and provided him with a potential path to vested units in the Companies that Moehle had founded, based on Daimler's representation that he was an experienced venture capitalist with an extensive

2

investment management track record (including claimed experience co-managing upwards of $1.5 billion in relevant venture capital funds) who could leverage that track record to help the Companies secure upwards of $20,000,000.00 in investments by early 2016.  The business relationship between Daimler and Defendants deteriorated over the course of 2016 for the simple reason that Daimler failed to deliver on his promises.  Defendants have since learned that Daimler's representations regarding his past track record were false.

## PARTIES

4.      The allegations of Paragraph 4 are admitted in part and denied in part. Defendants admit only that Daimler has no membership or ownership interest in the Companies. By way of further response, this Court previously held that Daimler's common units were properly deemed forfeit by the Companies after Daimler failed to satisfy the vesting conditions applicable to those units.  ECF No. 22.  After reasonable investigation, Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 4 and, therefore, deny those allegations.

5.      Defendants admit the allegations of Paragraph 5.  By way of further response, Moehle is the founder and sole officer of both Coal Hill and Robotics Hub.  Moehle and Coal Hill publicly announced plans to launch Robotics Hub in August of 2015, backed by a founding sponsorship from GE's venture capital and investment arm, GE Ventures LLC ("GE Ventures").

6.      Defendants admit the allegations of Paragraph 6.

7.      Defendants admit the allegations of Paragraph 7.

## JURISDICTION

8.      The allegations of Paragraph 8 are conclusions of law that do not require a response. Defendants deny that Daimler is entitled to any damages, let alone in an amount that exceeds

$75,000.   With respect to the allegations in Footnote 1 to Paragraph 8, after reasonable investigation, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Footnote 1 and, therefore, deny those allegations.

9.      The allegations of Paragraph 9 are conclusions of law that do not require a response.  To the extent a response is required, Defendants admit only that Robotics Hub and Coal Hill have a place of business in this district and that Moehle resides in this district.

## FACTUAL BACKGROUND

10.      Defendants admit only that Moehle invited Daimler to join the Companies to be a meaningfully contributing member after Daimler falsely represented his qualifications.  Daimler failed to contribute at or near the level expected of a member of the Companies.  Defendants deny that Daimler and Moehle formed a business "partnership."

11.      The allegations of Paragraph 11 are admitted in part and denied in part. Defendants admit that Moehle formed Coal Hill on April 28, 2015, without any involvement by Daimler, and prior to being introduced to Daimler for the first time in or around August 2015. After reasonable investigation, Defendants are without sufficient information to form a belief as to the truth of the remaining allegations of Paragraph 11 and, therefore, deny the allegations.

12.      The allegations of Paragraph 12 are admitted in part and denied in part. Defendants admit that Robotics Hub is the Fund's General Partner while Coal Hill is the Fund's Investment Manager.  The remaining allegations of Paragraph 12 are denied.  Defendants specifically deny that Daimler and Moehle "decided to move forward with an equal partnership." By way of further response, the nature of Daimler and Moehle's relationship was defined in writing by the terms of the Companies' Amended and Restated Operating Agreements and Common Unit Award Agreements.  Defendants respectfully refer the Court to the documents for

the full contents thereof.  The Companies further expounded on the expected roles, contributions and responsibilities of Daimler, Moehle and other individuals employed or retained by the Companies in company documents to which Daimler had access and/or possessed before he joined the Companies and while he was a member of the Companies.

13.     The allegations of Paragraph 13 are admitted in part and denied in part. Defendants admit that Moehle and Daimler co-edited various documents related to the transaction by which Daimler ultimately became a holder of unvested common units in the Companies.  The remaining allegations of Paragraph 13 are denied.  Defendants specifically deny that any such document reflected an intent to merge Skilled Science and Coal Hill or to form an equal "partnership."  By way of further response, the nature of Daimler and Moehle's relationship was defined in writing by the terms of the Companies' Amended and Restated Operating Agreements and Common Unit Award Agreements.  Defendants respectfully refer the Court to the documents for the full contents thereof.

14.     The allegations of Paragraph 14 are admitted in part and denied in part. Defendants admit that Coal Hill amended and restated its operating agreement.  Defendants respectfully refer the Court to the document for the full contents thereof.  Defendants further admit that Coal Hill engaged Jamie Fee. The remaining allegations of Paragraph 14 are denied.

15.     Defendants deny the allegations of Paragraph 15.

16.     Defendants deny the allegations of Paragraph 16. Defendants specifically deny that Moehle ever represented to Daimler that GE Ventures made any commitment to the Companies or the Fund, other than the founding sponsorship gift that GE Ventures awarded to Coal Hill pursuant to a Partner Agreement executed on May 20, 2015 and which was publicly announced in a press release authored by GE Ventures in August 2015.  By way of further

response, before meeting with Alex Tepper of GE Ventures in November 2015, Daimler was aware that the Companies were planning on a "pitch" to GE Ventures that was centered on *convincing* GE Ventures to agree to making an initial commitment of $500,000 of investment (as opposed to operational) capital.

17.     Defendants deny the allegation of Paragraph 17 that Moehle ever represented to Daimler that GE Ventures made any commitment to the Companies or the Fund, other than the founding sponsorship gift that GE Ventures awarded to Coal Hill pursuant to a Partner Agreement executed on May 20, 2015 and which was publicly announced in a press release authored by GE Ventures in August 2015.  After reasonable investigation, Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 17 and, therefore, deny those allegations.

18.     Defendants deny the allegation of Paragraph 18 that Moehle ever represented to Daimler that GE Ventures made any commitment to the Companies or the Fund, other than the founding sponsorship gift that GE Ventures awarded to Coal Hill pursuant to a Partner Agreement executed on May 20, 2015 and which was publicly announced in a press release authored by GE Ventures in August 2015.  After reasonable investigation, Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 18 and, therefore, deny those allegations.

19.     After reasonable investigation, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 19 and, therefore, deny those allegations.

20.     The allegations of Paragraph 20 are admitted in part and denied in part. Defendants admit only that Moehle may well have mentioned, during discussions of the Fund,

that GE Ventures was a sponsor of the Fund, which is true. The remaining allegations of Paragraph 20 are denied.

       21.     Defendants deny the allegations of Paragraph 21.

       22.     Defendants deny the allegations of Paragraph 22.

       23.     The allegations of Paragraph 23 are admitted in part and denied in part.

Defendants admit only that Moehle may well have mentioned, during discussions of the Fund, that GE Ventures was a sponsor of the Fund, which is true. The remaining allegations of Paragraph 23 are denied. Defendants specifically deny that Moehle ever represented, either to Daimler or to any "potential investors," that GE Ventures made any commitment to the Companies or the Fund, other than the founding sponsorship gift that GE Ventures awarded to Coal Hill pursuant to a Partner Agreement executed on May 20, 2015 and which was publicly announced in a press release authored by GE Ventures in August 2015.

       24.     Defendants deny the allegations of Paragraph 24.

       25.     The allegations of Paragraph 25 are admitted in part and denied in part.

Defendants admit only that Moehle may well have mentioned, during discussions of the Fund, that GE Ventures was a sponsor of the Fund, which is true. The remaining allegations of Paragraph 25 are denied.

       26.     The allegations of Paragraph 26 are admitted in part and denied in part.

Defendants admit only that Moehle and Daimler both attended a meeting with Alex Tepper, then the managing director of GE Ventures, on November 18, 2015 specifically to discuss the Fund and the possibility of GE Ventures making an initial commitment of $500,000 in investment (as opposed to operational) capital. The remaining allegations of Paragraph 26 are denied.

       27.     Defendants deny the allegations of Paragraph 27 that Moehle (1) "directed

Daimler to not discuss the investment"; (2) ever suggested to Daimler that Tepper "had not been involved in the decision process" regarding the purported $20,000,000.00 investment, or; (3) ever suggested to Daimler that he "wanted to remain GE's 'single point person' regarding the investment." To the contrary, Moehle introduced Daimler to many of the individuals on the GE Ventures team after the initial meeting with Mr. Tepper, where Daimler performed terribly. After reasonable investigation, Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 27 and, therefore, deny those allegations.

28.     Defendants specifically deny that Moehle made the representations alleged in Paragraph 28. After reasonable investigation, Defendants are without sufficient information to form a belief as to the truth of the allegations of Paragraph 28 regarding Daimler's subjective "understanding."

29.     Defendants deny the allegation of Paragraph 29 that Moehle ever represented to Daimler that GE Ventures made any commitment to the Companies or the Fund, other than the founding sponsorship gift that GE Ventures awarded to Coal Hill pursuant to a Partner Agreement executed on May 20, 2015 and which was publicly announced in a press release authored by GE Ventures in August 2015. After reasonable investigation, Defendants are without sufficient information to form a belief as to the truth of the remaining allegations of Paragraph 29.

30.     The allegations of Paragraph 30 do not require a response, as they relate exclusively to claims that have been dismissed by the Court. ECF No. 22. To the extent a response is deemed necessary, Defendants deny the allegations of Paragraph 30.

Defendants specifically deny the vague allegation that Moehle "misrepresented and

overstated the strength of his relationships with NREC and RI."  By way of further response,

prior to July 2015, Moehle was the Associate Director for New Ventures at the National

Robotics Engineering Center ("NREC"), an operating unit of the Robotics Institute ("RI") at

Carnegie Mellon University ("CMU").  All current Robotics Hub lead investments were either

the direct result of introductions from NREC/RI or CMU to Moehle or formed via NREC/RI

personnel Moehle met through preexisting relationships and contacts.

      31.     Defendants deny the allegations of Paragraph 31.

      32.     Defendants deny the allegations of Paragraph 32.  Defendants specifically deny

that Moehle ever represented, either to Daimler or to "potential investors," that GE Ventures

made any commitment to the Companies or the Fund, other than the founding sponsorship gift

that GE Ventures awarded to Coal Hill pursuant to a Partner Agreement executed on May 20,

2015 and which was publicly announced in a press release authored by GE Ventures in August

2015.

      Defendants also specifically deny that Daimler signed the Common Unit Award

Agreements on March 23, 2016.  By way of further response, while the Common Unit Award

Agreements are ***dated*** March 23, 2016 but Daimler did not sign them until later in April.

Daimler's delay in signing the awards damaged the Companies' attempts to attract investments

in the Companies and the Fund.

      33.     Defendants deny the allegations of Paragraph 33.

      34.     Defendants deny the allegation of Paragraph 34 that Moehle lied to potential

investors or to Daimler with respect the Fund's relationship with GE Ventures or that Moehle

represented that GE Ventures made any commitment to the Companies or the Fund, other than

the founding sponsorship gift that GE Ventures awarded to Coal Hill pursuant to a Partner

Agreement executed on May 20, 2015.  By way of further response, written presentations provided in advance of some or all of the meetings specifically identified by Daimler in the Complaint directly refute the four-year old, undocumented oral statements Daimler alleges.

After reasonable investigation, Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 34, which concern the subjective contents of Daimler's imagination.  Therefore, Defendants deny those allegations.

35.     Defendants deny the allegation of Paragraph 35 that Moehle ever represented, either to Daimler or to "potential investors," that GE Ventures made any commitment to the Companies or the Fund, other than the founding sponsorship gift that GE Ventures awarded to Coal Hill pursuant to a Partner Agreement executed on May 20, 2015 and which was publicly announced in a press release authored by GE Ventures in August 2015.  After reasonable investigation, Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 35 and, therefore, deny the allegations.

36.     Defendants deny the allegations of Paragraph 36.  By way of further response, although the Amended and Restated Operating Agreements and Common Unit Award Agreements were dated March 23, 2016, Daimler did not sign the Agreements until later in April.

37.     The allegations of Paragraph 37 are admitted in part and denied in part. Defendants admit that, upon execution of the Companies' Amended and Restated Operating Agreements and Common Unit Award Agreements, Daimler obtained an unvested membership interest in the Companies and corresponding position on the Companies' Boards of Managers. Defendants further admit that both Moehle and Daimler collectively constituted the Companies'

Boards of Managers after the dates on which they signed and executed the Amended and Restated Operating Agreements and Common Unit Award Agreements.

The remaining allegations of Paragraph 37 are denied. Defendants specifically deny that Daimler was a member of the Companies' "initial" Boards of Managers. By way of further response, pursuant to the Companies' original Operating Agreements, Daimler was not a member of the Companies' "initial" Board of Managers. Instead, Daimler became a member of the Companies' Board following his execution of the Amended and Restated Operating Agreements and Common Unit Award Agreements. He remained a member of the Companies' Board until March 27, 2017, when Daimler was properly removed from the Companies' Board of Managers.

38.    The allegations of Paragraph 38 are admitted in part and denied in part. Defendants deny only that Daimler entered into his Common Unit Award Agreements on March 23, 2016. By way of further response, Daimler did not sign the Common Unit Award Agreements until later in April. Defendants admit the remaining allegations of Paragraph 38.

39.    Defendants admit the allegations of Paragraph 39.

40.    The allegations of Paragraph 40 are conclusions of law that do not require a response. To the extent a response is required, Defendants deny the allegations of Paragraph 40, because they refer to, and purport to characterize or interpret, the Fund's Limited Partnership Agreement. Defendants respectfully refer the Court to the document for the full contents thereof.

41.    Defendants deny the allegations of Paragraph 41. Defendants further specifically deny the allegations of Paragraph 41 to the extent that they refer to, and purport to characterize or interpret, the Fund's Private Placement Memorandum and any "other presentation materials" allegedly provided to investors. Defendants respectfully refer the Court to those documents for

11

the full contents thereof.

42.     Defendants deny the allegations of Paragraph 42.  After reasonable investigation, Defendants are not aware of any instance in which "investors would expressly ask Daimler and Moehle if [they] were equal partners" and, therefore, Defendants deny the allegation.  By way of further response, the nature of Daimler and Moehle's relationship was defined in writing by the terms of the Companies' Amended and Restated Operating Agreements and Common Unit Award Agreements.  Defendants respectfully refer the Court to the documents for the full contents thereof.  The Companies further expounded on the expected roles, contributions and responsibilities of Daimler, Moehle and other individuals employed or retained in company documents to which Daimler had access and/or possessed before he joined the Companies and while he was a member of the Companies.

43.     The allegations of Paragraph 43 are admitted in part and denied in part. Defendants admit that, on August 23, 2016, Daimler provided a loan of $125,000.00 to Coal Hill, which was evidenced by a promissory note issued by Coal Hill to Daimler on the same date. The note was subsequently repaid in full with interest.  Defendants further admit that that Daimler provided money to cover corporate expenses, which included expenses Daimler incurred in connection with his minimal and unsuccessful fundraising attempts.  By way of further response, Moehle did not "merely" contribute $1,000 in initial capital but also advanced funds to cover corporate expenses by foregoing a salary for his full-time work and charging corporate expenses to his personal credit card.  At the same time, Daimler, upon information and belief, was receiving a salary in connection with his full-time work for the Office of Science and Technology Policy -- a subdivision of the executive branch located across the street from the White House.  Finally, Defendants further admit that Moehle provided an initial capital

contribution of $1,000.00 and that Daimler did not make any initial capital contribution.

By way of further response, the organizational resolutions of Coal Hill, executed approximately six months before Moehle was introduced to Daimler, approved an initial capital contribution by Moehle in the amount of $1,000.00 together with the founding sponsorship gift from GE Ventures prior to Daimler's involvement.

The remaining allegations of Paragraph 43 are denied. Defendants specifically deny that Daimler and Moehle had an "equal partnership."  Rather, the nature of Daimler and Moehle's relationship was defined in writing by the terms of the Companies' Amended and Restated Operating Agreements and Common Unit Award Agreements.  Defendants respectfully refer the Court to the documents for the full contents thereof.  The Companies further expounded on the expected roles, contributions and responsibilities of Daimler, Moehle and other individuals employed or retained in company documents to which Daimler had access and/or possessed before he joined the Companies and while he was a member of the Companies.

44.     The allegations of Paragraph 44 are admitted in part and denied in part. Defendants admit that Coal Hill repaid the promissory note issued to Daimler in full, together with interest, on or about November 2, 2017. Defendants further admit that Coal Hill reimbursed Daimler for $35,000.00 that Daimler agreed to pay to match the $35,000 Moehle advanced to Coal Hill by virtue of working without being paid a salary and covering corporate expenses.

The remaining allegations of Paragraph 44 are denied.  Defendants specifically deny that the $35,000.00 reimbursed to Daimler represented only a "portion" of funds Daimler provided to Coal Hill.  By way of further response, after reasonable investigation, Defendants are unaware of any money provided to Coal Hill by Daimler that have not been reimbursed in full.  Indeed, Daimler has repeatedly refused requests by Moehle to provide Defendants with documents that

reflect any amount of money Daimler paid and that has not been reimbursed.

45.     The allegations of Paragraph 45 are admitted in part and denied in part as stated. Defendants admit only that in January 2016, Daimler was appointed as a Presidential Innovation Fellow for the Office of Science and Technology Policy and otherwise deny the allegations of Paragraph 45.

46.     The allegations of Paragraph 46 are admitted in part and denied in part as stated. Defendants admit that Daimler informed Defendants that his fellowship would be a twelve-month program.  After reasonable investigation, Defendants are without knowledge or information sufficient to form a belief as to the truth of Daimler's assertion that it is "axiomatic" that such fellowships must end upon the transition to a new presidential administration and, therefore, Defendants deny the allegation as stated.  In fact, Daimler worked for the Trump administration for at least two months before his position was terminated.

47.     Defendants deny the allegations of Paragraph 47 as stated.  By way of further response, Defendants admit that Moehle agreed to support Daimler's pursuit of the fellowship based on Daimler's express assurances that he could continue devoting approximately thirty hours a week to the Companies and the Fund.  Defendants admit only that, based on Daimler's assurances, Moehle perceived some benefit to the Companies and the Fund in allowing Daimler to pursue to the fellowship, as it would provide Daimler with a salary until such time as Daimler had secured sufficient investments for the Fund to justify his full-time employment.

48.     The allegations of Paragraph 48 are admitted in part and denied in part. Defendants admit that Daimler's fellowship lasted from approximately January 2016 until early 2017.  Defendants further admit that Daimler's stated role as an "Innovation Fellow" was to "advise" the Office of Science and Technology Policy on various matters.  Defendants are

without information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 48 and, therefore, deny them.

49.     Defendants deny the allegation of Paragraph 49 that Moehle "promoted" Daimler's fellowship in connection with any marketing or fundraising efforts.  After reasonable investigation, Defendants are without knowledge or information sufficient to form a belief as to whether any other individual affiliated with the Companies, such as Daimler himself, might have "promoted Daimler's White House position" in connection with the Companies' marketing or fundraising efforts.  Therefore, the allegation is denied.  By way of further response, Daimler's fellowship was not mentioned anywhere in the Fund's Private Placement Memorandum, which was the primary marketing document for the Fund.

After reasonable investigation, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation that Robotics Hub received any "positive press coverage" related to Daimler's fellowship, and, therefore, the allegation is denied.  By way of further response, Defendants are unaware of any such coverage and specifically advised Daimler, as did other Robotics Hub affiliates, that attempting to self-aggrandize his public service would reflect poorly on him and the Companies.

50.     The allegations of Paragraph 50 do not require a response, as they relate exclusively to claims that have been dismissed by the Court.  ECF No. 47.  To the extent a response is deemed necessary, the allegations of Paragraph 50 are denied.  After reasonable investigation, Defendants are not aware of any "services" rendered to the Companies by Daimler for which Daimler was entitled to receive compensation.  Therefore, Defendants deny the allegation.  Any remaining allegations of Paragraph 50 are denied.

51.     The allegations of Paragraph 51 are admitted in part and denied in part.

Defendants admit only that, at some point in 2016, the relationship between Daimler and Moehle began to break down.  Defendants deny that the relationship broke down "because of Daimler's fellowship," except insofar as it broke down, in part, because Daimler devoted only minimal time to the Companies and Fund for the duration of his fellowship rather than the approximately thirty hours per week that Daimler had promised to devote notwithstanding that fellowship.

By way of further response, the deterioration of Moehle and Daimler's business relationship was attributable to Daimler's routine failure to meet performance milestones and deliverable deadlines, devotion of only minimal time and effort to the Companies' business, and inability to secure any significant investments or otherwise contribute to the Fund's growth at or near the level expected of a member of the Companies.

52.     Defendants admit the allegations of Paragraph 52.

53.     The allegations of Paragraph 53 do not require a response, as they relate exclusively to claims that have been dismissed by the Court.  ECF No. 22.  To the extent a response is deemed necessary, the allegations of Paragraph 53 are admitted in part and denied in part. Defendants admit only that Moehle served as the primary point of direct contact with Reed Smith but, as Daimler concedes in his Complaint, Daimler also interacted with Reed Smith.  Any remaining allegations of Paragraph 53 are denied.

54.     The allegations of Paragraph 54 do not require a response, as they relate exclusively to claims that have been dismissed by the Court.  ECF No. 22.  Further, the allegations of Paragraph 54 are conclusions of law that do not require a response.  To the extent a response is deemed necessary, the allegations are admitted in part and denied in part. Defendants admit that the Companies entered into Common Unit Award Agreements with Moehle on March 23, 2016.  By way of further response, the Companies also entered into

Common Unit Award Agreements with Jamie Fee, who worked for the Companies full-time. Mr. Fee's Common Unit Award Agreements had the same vesting terms as Moehle's awards. Defendants deny the allegations of Paragraph 54 insofar as they refer to and purport to characterize or interpret the Common Unit Award Agreements. Defendants respectfully refer the Court to the documents for the full contents thereof.

55.     The allegations of Paragraph 55 do not require a response, as they relate exclusively to claims that have been dismissed by the Court.  ECF No. 22.  Further, the allegations of Paragraph 55 are conclusions of law that do not require a response. To the extent a response is deemed necessary, the allegations of Paragraph 55 are admitted in part and denied in part.  Defendants admit only that the Companies entered into the Common Unit Award Agreements with Daimler.  Defendants specifically deny that Daimler's Common Unit Award Agreements were entered into on March 23, 2016.  By way of further response, Daimler did not sign the Common Unit Award Agreements until later in April.  Defendants deny the remaining allegations of Paragraph 55 insofar as they refer to and purport to characterize or interpret the Common Unit Award Agreements.  Defendants respectfully refer the Court to the documents for the full contents thereof.

56.     The allegations of Paragraph 56 do not require a response, as they relate exclusively to claims that have been dismissed by the Court.  ECF No. 22.  Further, the allegations of Paragraph 56 are conclusions of law that do not require a response.  To the extent a response is required, Defendants deny the allegations of Paragraph 56 insofar as they refer to and purport to characterize or interpret the Common Unit Award Agreements.  Defendants respectfully refer the Court to the documents for the full contents thereof.  Defendants further respond that the vesting schedule of the Common Unit Award Agreements for Daimler were the

same that were offered to other individuals who, like Daimler, were not engaged full-time in the Companies.

57.     The allegations of Paragraph 57 do not require a response, as they relate exclusively to claims that have been dismissed by the Court.  ECF No. 22.  Further, the allegations of Paragraph 57 are conclusions of law that do not require a response.  To the extent a response is required, Defendants deny the allegations of Paragraph 57 insofar as they refer to and purport to characterize or interpret the Common Unit Award Agreements.  Defendants respectfully refer the Court to the documents for the full contents thereof.

58.     The allegations of Paragraph 58 do not require a response, as they relate exclusively to claims that have been dismissed by the Court.  ECF No. 22.  Further, the allegations of Paragraph 58 are conclusions of law that do not require a response.  To the extent a response is required, Defendants deny the allegations of Paragraph 58 insofar as they refer to and purport to characterize or interpret the Common Unit Award Agreements.  Defendants respectfully refer the Court to the documents for the full contents thereof.

59.     The allegations of Paragraph 59 do not require a response, as they relate exclusively to claims that have been dismissed by the Court.  ECF No. 22.  To the extent a response is required, the allegations of Paragraph 59 are denied.  Defendants specifically deny that Moehle ever made any of the alleged representations.  Defendants further deny the allegations of Paragraph 59 insofar as they refer to and purport to characterize or interpret the Common Unit Award Agreements, which are written agreements that speak for themselves.  By way of further response, Moehle sent Daimler redline versions of the Daimler Awards that expressly identified the differences between the Moehle Awards and Daimler Awards.  Moehle also had a telephone call with Daimler about the redlines before Daimler signed Daimler

Awards.

60.     The allegations of Paragraph 60 do not require a response, as they relate exclusively to claims that have been dismissed by the Court.  ECF No. 22.  To the extent a response is required, the allegations of Paragraph 60 are denied.

61.     The allegations of Paragraph 61 do not require a response, as they relate exclusively to claims that have been dismissed by the Court.  ECF No. 22.  To the extent a response is required, the allegations of Paragraph 61 are denied.

62.     The allegations of Paragraph 62 do not require a response, as they relate exclusively to claims that have been dismissed by the Court.  ECF No. 22.  To the extent a response is required, the allegations of Paragraph 62 are denied.  By way of further response, Moehle sent Daimler redline versions of the Daimler Awards that expressly identified the differences between the Moehle Awards and Daimler Awards and Moehle had a telephone call with Daimler about the redlines before Daimler signed Daimler Awards.

63.     The allegations of Paragraph 63 do not require a response, as they relate exclusively to claims that have been dismissed by the Court.  ECF No. 22.  To the extent a response is required, the allegations of Paragraph 63 are denied.

64.     The allegations of Paragraph 64 do not require a response, as they relate exclusively to claims that have been dismissed by the Court.  ECF No. 22.  To the extent a response is required, Defendants deny the allegations of Paragraph 64 that Moehle or Reed Smith ever made the representations alleged.  After reasonable investigation, Defendants are without sufficient information to form a belief as to the truth of the allegations of Paragraph 64 regarding Daimler's subjective "understanding" of the terms of the Common Unit Award Agreements and, therefore, those allegations are denied.

19

65.     The allegations of Paragraph 65 do not require a response, as they relate exclusively to claims that have been dismissed by the Court.  ECF No. 22.  To the extent a response is required, Defendants are without sufficient information to form a belief as to the truth of the allegations of Paragraph 65 regarding Daimler's subjective knowledge of the express terms of the Common Unit Award Agreements, which Daimler signed, and, therefore, those allegations are denied.

66.     The allegations of Paragraph 66 are admitted in part and denied in part. Defendants admit that Robotics Hub, Coal Hill, and their prospective members entered into Amended and Restated Operating Agreements. Defendants deny that Daimler signed the Amended and Restated Operating Agreements on March 23, 2016.  By way of further response, Daimler did not sign the Amended and Restated Operating Agreements until later in April. Defendants further deny the allegations of Paragraph 66, insofar as they purport to characterize or interpret the Amended and Restated Operating Agreements. Defendants respectfully refer the Court to the documents for the full contents thereof.

67.     The allegations of Paragraph 67 are conclusions of law that do not require a response. To the extent a response is required, Defendants deny the allegations of Paragraph 67 insofar as they refer to, and purport to characterize or interpret the Amended and Restated Operating Agreements.  Defendants respectfully refer the Court to the documents for the full contents thereof.

68.     The allegations of Paragraph 68 are conclusions of law that do not require a response. To the extent a response is required, Defendants deny the allegations of Paragraph 68 insofar as they refer to, and purport to characterize or interpret the Amended and Restated Operating Agreements.  Defendants respectfully refer the Court to the documents for the full

20

contents thereof.

69.     The allegations of Paragraph 69 are conclusions of law that do not require a response.  To the extent a response is required, Defendants deny the allegations of Paragraph 69 insofar as they refer to, and purport to characterize or interpret the Amended and Restated Operating Agreements.  Defendants respectfully refer the Court to the documents for the full contents thereof.

70.     The allegations of Paragraph 70 are conclusions of law that do not require a response.  To the extent a response is required, Defendants deny the allegations of Paragraph 70 insofar as they refer to, and purport to characterize or interpret the Amended and Restated Operating Agreements.  Defendants respectfully refer the Court to the documents for the full contents thereof.

71.     Defendants deny the allegations of Paragraph 71. Defendants specifically deny that Moehle ever represented to Daimler that GE Ventures made any commitment to the Companies or the Fund, other than the founding sponsorship gift that GE Ventures awarded to Coal Hill pursuant to a Partner Agreement executed on May 20, 2015 and which was publicly announced in a press release authored by GE Ventures in August 2015.  By way of further response, at the time Daimler signed the Awards in April 2016, Daimler himself provided prospective investors with documents that fully disclosed the Companies' third party relationship with GE Ventures and, importantly, did not disclose a "commitment" by GE Ventures to invest $20,000,000.00 in the Fund.  As a member of the Companies, Daimler had duties and obligations to ensure those disclosures were accurate before sending them.

72.     The allegations of Paragraph 72 are admitted in part and denied in part. Defendants admit that when Daimler signed the Operating Agreements he had begun his full-

time employment with the Office of Science and Technology Policy.  Defendants deny the

remaining allegations in the Paragraph 72.  By way of further response, Daimler had access to all

company documents on the shared Google Drive which he unlawfully accessed and attempted to

manipulate after he was removed as a Board Member from the Companies.

73.     Defendants deny the allegations of Paragraph 73.  Defendants specifically deny

that Daimler and Moehle "began their partnership as equal partners."  The nature of Daimler and

Moehle's relationship was defined in writing by the terms of the Companies' Amended and

Restated Operating Agreements and Common Unit Award Agreements.  Defendants respectfully

refer the Court to the documents for the full contents thereof.  The Companies further expounded

on the expected roles, contributions and responsibilities of Daimler, Moehle and other

individuals employed or retained in company documents to which Daimler had access and/or

possessed before he joined the Companies and while he was a member of the Companies.

Defendants further deny that Daimler and Moehle "were promoted as such" by any of the

Defendants.  Daimler's participation in the Companies was limited to his minimal, unsuccessful

fundraising efforts.  Daimler had little to no involvement in the broad business aspects of the

Companies and the Fund.

74.     The allegations of Paragraph 74 are denied. Defendants specifically deny that

Daimler ever had a "full-time position" with the Companies to "return" to, as evidenced by the

Amended and Restated Operating Agreements and Common Unit Award Agreements that

Daimler signed.  Defendants further deny that Moehle "understood" that Daimler would be

offered a full-time position "when his fellowship ended."  By way of further response, prior to

starting his fellowship, Daimler had assured Moehle and the Companies that he would be able to

devote approximately thirty hours a week to the Companies ***during*** his fellowship, but

subsequently failed to do so.

In addition, as Moehle had communicated to Daimler at the beginning of their relationship, Defendants' only "understanding" regarding the possibility of full-time employment for Daimler was that the Companies would consider offering such a position *if* Daimler was able to make good on his promises to secure sufficient investments for the Fund to justify and support bringing him on full-time and that would show Daimler could make significant, positive impact on the Companies and the Fund.  The Companies ultimately elected not to offer Daimler full-time employment after he routinely failed to meet performance milestones and deliverable deadlines, devoted only minimal time and effort to the Companies' business, became increasingly difficult to work with, and proved unable to secure any significant investments (as he represented) or otherwise contribute to the Fund's growth at or near the level expected of a member of the Companies.

75.     Defendants deny the allegations of Paragraph 75.

76.     Defendants deny the allegations of Paragraph 76.  Defendants do not have sufficient information to interpret what Daimler means by "budgeted" but Defendants specifically deny that the Companies had agreed to pay any salary to Daimler, let alone a "full-time salary" or "matching salaries for Moehle and Daimler."  Defendants further respond that "individual" referenced in the allegations of Paragraph 76 did not join the Companies, in part, because Daimler failed to secure any significant investments as he represented he would.

77.     Defendants admit the allegations of Paragraph 77.  By way of further response, the business relationship between Daimler and Moehle began to deteriorate in early to mid 2016 after he routinely failed to meet performance milestones and deliverable deadlines, devoted only minimal time and effort to the Companies' business, became increasingly difficult to work with,

and proved unable to secure any significant investments (as he represented) or otherwise

contribute to the Fund's growth at or near the level expected of a member of the Companies.

78.     Defendants deny the allegations of Paragraph 78.  Defendants specifically deny

that "attention and publicity Daimler received" from his fellowship, if any, became a "point of

contention between Daimler and Moehle" or led Moehle to begin "criticizing Daimler as a

business partner."  There was a "point of contention" with regard to Daimler's attempts to self-

aggrandize his public service because it reflected poorly on the Companies.  In addition, there

was a "point of contention" or source of criticism between Daimler and Moehle because Daimler

routinely failed to meet performance milestones and deliverable deadlines, devoted only minimal

time and effort to the Companies' business, became increasingly difficult to work with, and

proved unable to secure any significant investments (as he represented) or otherwise contribute

to the Fund's growth at or near the level expected of a member of the Companies.

79.     Defendants deny the allegations of Paragraph 79.  Defendants specifically deny

that Moehle controlled or restricted Daimler's access to information about the Fund's investors

and portfolio companies in any way.  By way of further response, Daimler had unrestricted

access to the Fund's Google Drive, where documentation regarding the Fund's investors and

portfolio companies was stored.  In fact, Daimler unlawfully accessed this information

immediately following his removal from the Companies, and used it in an effort to solicit the

Fund's investors and portfolio companies for his own benefit.

80.     The allegations of Paragraph 80 are admitted in part and denied in part.

Defendants deny the allegation that Moehle restricted Daimler's access to information about the

Fund's portfolio companies in any way.  By way of further response, Daimler had unrestricted

access to the Fund's Google Drive, where documentation regarding the Fund's investors and

portfolio companies was stored.  Defendants admit that Moehle had to correct Daimler's inconsistent and inaccurate presentation of deal facts to potential investors and portfolio companies.  Defendants also admit that Moehle asked Daimler to revise his LinkedIn page so as to describe Robotics Hub in a manner consistent with Moehle's LinkedIn page because Moehle reasonably believed that to have drastically different texts describing Robotics Hub would be detrimental to attracting potential investors.

81.     Defendants deny the allegations of Paragraph 81.  By way of further response, Daimler wrote his own "deliverables" and presented them to Moehle.  Tellingly, Daimler failed to complete the non-ministerial deliverables he promised.

82.     Defendants deny the allegations of Paragraph 82.  By way of further response, Daimler was not "engaged" in the Companies other than his minimal, sporadic, and unsuccessful fundraising efforts and occasionally attending meetings in connection therewith.  In addition, because Moehle was foregoing a salary despite his full-time efforts and was covering corporate expenses, Daimler had already committed to paying his share of corporate expenses incurred by the Companies.  Daimler on multiple occasions attempted to renege on his express agreements to share in the corporate expenses.

83.     After reasonable investigation, Defendants are without information sufficient to form a belief as to the truth of the allegations of Paragraph 83 and, therefore, deny the allegations.

84.     Defendants deny the allegations of Paragraph 84.  By way of further response, both Moehle and Daimler contributed $30,000 (Moehle by way of, among other things, foregoing salary payments) to cover six months of Coal Hill's operating expenses.  Both also contributed an additional $5,000 for a seventh month of operation although Daimler attempted to

renege on his agreement.

85.    Defendants deny the allegations of Paragraph 85.

86.    Defendants deny the allegations of Paragraph 86.

87.    Defendants deny the allegations of Paragraph 87.

88.    Defendants deny the allegations of Paragraph 88.

89.    Defendants deny the allegations of Paragraph 89.

90.    Defendants deny the allegations of Paragraph 90.

91.    Defendants deny the allegations of Paragraph 91.  Defendants never agreed to treat any payments by Daimler as "capital contributions."

92.    Defendants deny the allegations of Paragraph 92.  By way of further response, to the best of Defendants' knowledge and belief, Daimler's alleged "financial contributions" were not related to essential operating expenses which were covered by the $35,000 Moehle advanced to Coal Hill by virtue of working without being paid a salary and covering corporate expenses and $35,000.00 that Daimler loaned to Coal Hill and for which he was repaid.  In fact, despite multiple requests from Defendants, Daimler has refused to document his alleged "financial contributions" and the expenses they allegedly covered.

93.    Defendants deny the allegations of Paragraph 93. The allegation that Daimler was entitled to additional common units in Coal Hill is a conclusion of law that does not require a response. To the extent a response is required, Defendants deny that Daimler was entitled to any additional common units in the Companies for any reason.

Defendants deny the allegation related to "equal partners" as it is unclear what Daimler means by that term.  Defendants further specifically deny that "Daimler and Moehle continued to be equally important to the venture," which is a subjective statement of opinion that does not

require a response and, therefore, is denied.  To the extent a response is required, throughout 2016, Daimler devoted minimal time to the Companies and the Fund, secured no significant investments for the Fund, and routinely failed to meet performance milestones and deliverable deadlines.  Therefore, Defendants deny that Daimler was "equally important to the venture."

94.     The allegations of Paragraph 94 are admitted in part and denied in part. Defendants admit only that Daimler did not receive any additional common units in Coal Hill. By way of further response, Daimler was not entitled to any such units.

The remaining allegations of Paragraph 94 are denied.  Defendants specifically deny that Daimler made any "additional financial contributions" to the Companies.  The allegations regarding the requirements of Section 7.2 of Coal Hill's Amended and Restated Operating Agreement are conclusions of law that do not require a response.  To the extent a response is required, Defendants deny the allegations insofar as they refer to, and purport to characterize or interpret the Amended and Restated Operating Agreement.  Defendants respectfully refer the Court to the document for the full contents thereof.

95.     Defendants deny the allegations of Paragraph 95.

96.     Defendants deny the allegations of Paragraph 96.  By way of further response, Daimler and Moehle did in fact meet in Pittsburgh in late 2016 where they discussed the necessity for Daimler to meet his fundraising milestone of $15,000,000 to which Daimler agreed. Rather than work to secure the investments, Daimler went on vacation for three weeks.

97.     Defendants deny the allegations of Paragraph 97.  By way of further response, Daimler actually scheduled and went on a three-week vacation during the Fund's first closing in December 2016.  On several prior occasions, Daimler also scheduled and went on vacations when the Fund was trying to close on investments.  On one such occasion, while the Fund was

attempting to arrange the close of the Fund's initial Special Purpose Vehicle ("SPV"), Daimler was on vacation and posting on his public social media profiles pictures from that vacation. The investors involved in that initial SPV negatively reacted to Daimler's behavior, a purported "partner," and his unavailability at such a critical time for the Fund.

98.     Defendants deny the allegations of Paragraph 98. Defendants specifically deny that Moehle "unilaterally assign[ed] Daimler 'deliverables.'" By way of further response, Daimler presented Moehle with his own proposed "Milestones" and subsequently failed to complete the required milestones and deliverables that he himself had proposed. The specific "deliverable" requiring Daimler to make introductions to internet travel companies, such as Google Travel, had been proposed to Moehle by Daimler more than six months prior and, by the time Daimler finally "completed" the deliverable, it was no longer needed or beneficial.

99.     Defendants deny the allegations of Paragraph 99.

100.    Defendants deny the allegations of Paragraph 100. Defendants specifically deny that Moehle refused to disclose or somehow prevented Daimler from obtaining contact information for any investor or portfolio company. By way of further response, contact information for the Fund's investors and portfolio companies was freely available to Daimler on the Fund's Google Drive.

Defendants further deny that Moehle refused to provide Daimler with contact information for TravelWits in particular. In fact, Daimler met with TravelWits in person in a meeting that Moehle set up. Moreover, TravelWits was located in the same office as Daimler and Moehle. Thus, Daimler could have contacted TravelWits at any time by simply taking the stairs.

101.    Defendants deny the allegations of Paragraph 101.

102.    Defendants deny the allegations of Paragraph 102.

103.     The allegations of Paragraph 103 are admitted in part and denied in part. Defendants admit that Daimler and Moehle met in-person on January 5-6, 2017 and that Moehle presented Daimler with written document setting forth a potential non-operating role for Daimler.  The remaining allegations of Paragraph 103 are denied.  Defendants specifically deny ever discussing "the notion" that a "full-time operating role for Daimler *would* occur at a later date."  Rather, Moehle consistently informed Daimler that a full-time operating role *could* still be a possibility *if* Daimler's performance improved and he managed to secure sufficient investments in the Fund to justify his hiring.  Daimler never secured any such investments but instead demanded a full-time salary independent of any performance milestones.

104.     The allegations of Paragraph 104 are admitted in part and denied in part. Defendants admit that, on or about January 5, 2017, Moehle recommended to the Companies' Boards, which consisted of Daimler and Moehle, that Daimler not be offered full-time employment by the Companies.  The remaining allegations of Paragraph 104 are denied. Defendants specifically deny that Daimler ever held a "full-time role with the Companies" to which he could "return."

105.     Defendants deny the allegations of Paragraph 105. Defendants specifically deny that Daimler ever held "full-time employment" with the Companies to which he could "return." Defendants further specifically deny that the Companies had "contemplated" that Daimler would necessarily be offered full-time employment at any point, irrespective of his performance or ability to secure sufficient investments in the Fund.  Defendants further specifically deny that the Companies had "budgeted a full-time salary for Daimler" or that Daimler ever had a salary that was "accru[ing]" or would be paid at a later date.

106.     The allegations of Paragraph 106 are admitted in part and denied in part.

Defendants specifically deny that Daimler ever held a "full-time role with the Companies" to which he could "return." Defendants otherwise admit the allegations of Paragraph 106.

107.    Defendants admit the allegations of Paragraph 107.

108.    Defendants admit the allegations of Paragraph 108.

109.    The allegations of Paragraph 109 are admitted in part and denied in part. Defendants admit that the Companies' neutral deadlock advisor, David Mahwinney, broke the deadlock by voting against offering Daimler a full-time role with the Companies. Defendants further admit that the Companies' financial status was one of the bases, but not the sole basis, for Mahwinney's decision. The remaining allegations of Paragraph 109 are denied. Defendants specifically deny that Mahwinney "understood when casting his vote that Daimler's full-time engagement with the Companies would occur at a later date."

110.    The allegations of Paragraph 110 are admitted in part and denied in part. Defendants deny that Daimler was not offered a non-operating role in the Companies. To the contrary, Daimler rejected that offer and insisted on being paid a full-time salary regardless of performance. Defendants admit that Daimler was not provided and was not entitled to compensation, and Defendants admit that Daimler was not offered a "full-time position" in the Companies. By way of further response, Defendants had no obligation to provide Daimler with compensation, or a role of any kind. Indeed, the Court has already held that Daimler "signed an agreement that clearly and unambiguously provided that he had no such right." ECF No. 22 at 16. The remaining allegations of Paragraph 110 are denied.

111.    The allegations of Paragraph 111 do not require a response, as they relate exclusively to claims that have been dismissed by the Court. ECF No. 22. To the extent a response is required, Defendants admit only that Daimler's common units in the Companies were

properly deemed forfeited after he failed to satisfy the express vesting conditions applicable to those units within the specified time period.

The remaining allegations of Paragraph 111 are conclusions of law to which no response is required. To the extent a response is required, the remaining allegations of Paragraph 111 are denied.  Defendants specifically deny that the Companies had any obligation to offer Daimler a full-time position "within a year after executing the Daimler Awards."  ECF No. 22 at 16.

112.    The allegations of Paragraph 112 do not require a response, as they relate exclusively to claims that have been dismissed by the Court.  ECF No. 22.  Further, the allegations of Paragraph 112 are conclusions of law that do not require a response.  To the extent a response is deemed necessary, Defendants admit that Daimler has no membership or ownership interest in the Companies, thereby making Moehle the Companies' majority member.

113.    Defendants deny the allegations of Paragraph 113.  By way of further response, the Companies, in an officially held meeting, voted to remove Daimler from their respective Boards.  In addition, the Fund's Limited Partnership Agreement was amended and restated to remove Daimler from the "Key Person" provision by affirmative vote of 100% of the limited partners, which includes individuals and entities other than Moehle.  In fact, one limited partner in December 2016 unilaterally approached Moehle to request that Daimler be removed from the "Key Person" provision.

114.    Defendants deny the allegations of Paragraph 114.

**COUNT ONE**
**FRAUD IN THE INDUCEMENT**
**(Against Moehle)**

115.    Defendants incorporate by reference Paragraphs 1 to 114 of this Answer.

116.    Defendants deny the allegations of Paragraph 116.

117.     The allegations of Paragraph 117 are conclusions of law that do not require a response.  To the extent a response is required, Defendants deny the allegations of Paragraph 117.

118.     The allegations of Paragraph 118 are conclusions of law that do not require a response.  To the extent a response is required, Defendants deny the allegations of Paragraph 118.

119.     The allegations of Paragraph 119 are conclusions of law that do not require a response.  To the extent a response is required, Defendants deny the allegations of Paragraph 119.

120.     The allegations of Paragraph 120 are conclusions of law that do not require a response.  To the extent a response is required, Defendants deny the allegations of Paragraph 120.

**COUNT TWO**
**FRAUD IN THE INDUCEMENT**
**(Against Robotics Hub)**

121.     Defendants incorporate by reference Paragraphs 1 to 120 of this Answer.

122.     Defendants deny the allegations of Paragraph 122.

123.     The allegations of Paragraph 123 are conclusions of law that do not require a response.  To the extent a response is required, Defendants deny the allegations of Paragraph 123.

124.     The allegations of Paragraph 124 are conclusions of law that do not require a response.  To the extent a response is required, Defendants deny the allegations of Paragraph 124.

125.     The allegations of Paragraph 125 are conclusions of law that do not require a

response.  To the extent a response is required, Defendants deny the allegations of Paragraph
125.

128.      The allegations of Paragraph 126 are conclusions of law that do not require a
response.  To the extent a response is required, Defendants deny the allegations of Paragraph
126.

## COUNT THREE
## BREACH OF CONTRACT -- COAL HILL OPERATING AGREEMENT
### (Against Coal Hill)

127.      Defendants incorporate by reference Paragraphs 1 to 126 of this Answer.

128.      The allegations of Paragraph 128 are admitted in part and denied in part.
Defendants admit that Daimler and Coal Hill entered into the Coal Hill Amended and Restated
Operating Agreement. Defendants deny that Daimler signed the Coal Hill Amended and
Restated Operating Agreement on March 23, 2016.  By way of further response, Daimler failed
to sign the Amended and Restated Operating Agreements until later in April.

129.      The allegations of Paragraph 129 are conclusions of law that do not require a
response.  To the extent a response is required, Defendants deny the allegations of Paragraph 129
insofar as they refer to and purport to characterize or interpret the Coal Hill Amended and
Restated Operating Agreement.  Defendants respectfully refer the Court to the document for the
full contents thereof.

130.      The allegations of Paragraph 130 are conclusions of law that do not require a
response.  To the extent a response is required, Defendants deny the allegations of Paragraph
130.

131.      The allegations of Paragraph 131 are conclusions of law that do not require a
response.  To the extent a response is required, Defendants admit in part and deny in part the

allegations of Paragraph 131.  Defendants admit only that Daimler was issued no additional units in Coal Hill.  The remaining allegations of Paragraph 131 are denied.  Defendants specifically deny that Coal Hill agreed to treat any expenditure by Daimler as an "additional capital contribution."

132.    The allegations of Paragraph 132 are conclusions of law that do not require a response.  To the extent a response is required, Defendants deny that Daimler extended any loan to Coal Hill for which he has not yet been repaid in full.

## COUNT FOUR
## FRAUD IN THE INDUCEMENT
### (Against Coal Hill)

133.    Defendants incorporate by reference Paragraphs 1 to 132 of this Answer.

134.    Defendants deny the allegations of Paragraph 134.

135.    The allegations of Paragraph 135 are conclusions of law that do not require a response.  To the extent a response is required, Defendants deny the allegations of Paragraph 135.

136.    The allegations of Paragraph 136 are conclusions of law that do not require a response.  To the extent a response is required, Defendants deny the allegations of Paragraph 136.

137.    The allegations of Paragraph 137 are conclusions of law that do not require a response.  To the extent a response is required, Defendants deny the allegations of Paragraph 137.

138.    The allegations of Paragraph 138 are conclusions of law that do not require a response.  To the extent a response is required, Defendants deny the allegations of Paragraph 138.

**PRAYER FOR RELIEF**

WHEREFORE, Defendants deny all liability to Daimler and demand judgment in their favor, and against Daimler, together with interest, costs, attorneys' fees and such further relief as the Court deems just and appropriate.

## <u>AFFIRMATIVE DEFENSES</u>

Pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, Defendants assert the following Affirmative Defenses to Daimler's Fifth Amended Complaint:

<u>FIRST DEFENSE</u>

Daimler's claims are barred, in whole or in part, for failure to state a claim against Defendants for which relief can be granted.

<u>SECOND DEFENSE</u>

Daimler's claims are barred, in whole or in part, by the applicable statute of limitations.

<u>THIRD DEFENSE</u>

Daimler's claims are barred, in whole or in part, by the equitable doctrines of laches, unclean hands, waiver, and/or estoppel.

<u>FOURTH DEFENSE</u>

Daimler's claims are barred, in whole or in part, by payment, setoff, settlement, release, and/or accord and satisfaction.

<u>FIFTH DEFENSE</u>

Daimler's claims are barred, in whole or in part, because Daimler has not suffered any damages as a result of any act or omission taken by Defendants.

SIXTH DEFENSE

Daimler's claims are barred, in whole or in part, because Daimler is not entitled, in whole or in part, to the damages sought in the Fifth Amended Complaint.

SEVENTH DEFENSE

Daimler's claims are barred, in whole or in part, by Daimler's failure to mitigate damages.

EIGHTH DEFENSE

Defendants reserve the right to assert any additional defenses based on information obtained throughout the course of this litigation.

WHEREFORE, Defendants deny all liability to Daimler and demand judgment in their favor, and against Daimler, together with interest, costs, attorneys' fees and such further relief as the Court deems just and appropriate.

**COUNTERCLAIMS**

Counterclaim-plaintiffs Robotics Hub Fund 1, LLC ("Robotics Hub") and Coal Hill Ventures LLC ("Coal Hill") (collectively hereafter the "Companies"), by and through their undersigned counsel, hereby files these Counterclaims against counterclaim-defendant Eric Daimler ("Daimler"), alleging as follows:

**NATURE OF THE CASE**

1.      The Companies hereby incorporate by reference the foregoing responses, and state the following counterclaims against Daimler for fraudulent misrepresentation, unfair competition and cybersquatting in violation of the Lanham Act as a result of Daimler's unauthorized and misleading use of Coal Hill's Robotics Hub trademark, and Daimler's unlawful, unauthorized access to Coal Hill's protected computer in violation of 18 U.S.C. §

1030.

## PARTIES

2.        Counterclaim-plaintiff Robotics Hub is a Delaware limited liability company with a principal place of business in Pittsburgh, Pennsylvania.

3.        Counterclaim-plaintiff Coal Hill is a Pennsylvania limited liability company with a principal place of business in Pittsburgh, Pennsylvania.

4.        Counterclaim-defendant Daimler states he is an individual who resides in New York.

5.        This Court has subject matter jurisdiction of the Companies' Counterclaims pursuant to 15 U.S.C. §1121 and 28 U.S.C. §§ 1331 and 1338.

6.        This Court has personal jurisdiction over Daimler for purposes of the Companies' Counterclaims because Daimler filed suit in this Court.

7.        Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

**A.  Daimler Misrepresents His Credentials**

8.        Chris Moehle ("Moehle") formed Coal Hill on April 28, 2015.

9.        In August of 2015, Moehle and Coal Hill announced plans to launch the Robotics Hub, a business accelerator focused on identifying, building, and guiding promising startup companies in the field of advanced robotics.  In connection therewith, Moehle formed the Robotics Hub Fund 1, LP (the "Fund") which was the vehicle to invest in early-stage robotics companies.

10.       The founding sponsor of the Fund was GE Ventures, General Electric's venture capital and investment arm, which provided Coal Hill with a one-time sponsorship gift to

subsidize the Fund's startup and initial activities. The sponsor gift was provided pursuant to the terms of a Partner Agreement executed between Coal Hill and GE Ventures on May 20, 2015.

11.     In or around August of 2015, approximately six months after starting Coal Hill and soon after beginning planning for the Fund, Moehle was introduced to Daimler.

12.     Following their initial introduction, Moehle and Daimler had several phone conversations, during which they discussed their work and, eventually, the possibility of working together on the Fund.

13.     During those conversations, Daimler portrayed himself as an experienced venture capitalist with the pedigree necessary to raise investments on a scale that would potentially make the relationship worthwhile.

14.     To bolster his false portrayal, and thereby convince the Companies of his value as a potential partner, Daimler represented to Moehle that he had previously served as a "Principal" for Comdisco Ventures, a venture capital firm focused on early/mid-stage technology firms, and, in that capacity, co-"managed" approximately $1.5 *billion* in investments in start-up technology companies with his "partners" at the firm. By representing that he "managed" those investments, Daimler was representing that he had deal attribution for those investments and that he would be able to deliver an audited track record of those investments to provide to potential investors in the Companies.

15.     Daimler first made this representation during his initial phone conversations with Moehle in late 2015, and repeated it in subsequent conversations over the course of their relationship, both before and after the Companies executed the Amended and Restated Operating Agreements and Common Unit Award Agreements.  This particular representation also appeared on Daimler's LinkedIn page, where it remains to this day.

16.     Daimler subsequently repeated his representations regarding his role at Comdisco Ventures in multiple conversations with Moehle over the course of their relationship including when Moehle asked for an audited track record to present to potential investors as a necessary predicate for those investors to commit to provide funds to the Companies.  Daimler never could provide the Companies with such an audited track record.

17.     In addition to his representations regarding his role at Comdisco, Daimler also represented to Moehle that investors had already committed $10,000,000.00 to Daimler's existing venture, Skilled Science, which would be carried over to the Companies if Daimler became a member of the Companies.  Indeed, Daimler stated that he was interested in joining the Companies in large part because they would provide him with the "operating model" he needed for those allegedly existing commitments.

18.     The Companies justifiably relied on Daimler's representations regarding his track record and existing investor commitments, and Daimler's representations were material to the Companies' decision to begin working with Daimler, as opposed to other potential members, with real track records, to whom the Companies were also talking at that time.

19.     Daimler's representations also were material to the Companies ultimately amending and restating their operating agreements to add Daimler as a member and to sign agreements by which Daimler was awarded common units in the Companies, subject to an express vesting schedule.

20.     Daimler's repeated representations to the Companies that he was a skilled venture capitalist with an impressive track record—based on his claimed past experience co-managing *$1.5 billion* in venture capital investments and *$10,000,000.00* in previously committed investments that could be transferred to the Fund—gave the Companies' confidence that Daimler

had the pedigree and track record necessary to raise funds that would justify bringing Daimler on as a member of the Companies.

21.     Daimler's representation regarding his investment management track record was particularly significant to the Companies' decision because the role intended for Daimler as explained by Moehle was to attract "institutional" type investors (e.g., companies with fiduciary duties to those whose money they manage and structured approval processes to invest) as opposed to the high worth individuals and less structured entities that Moehle was to target given his experience and connections.

22.     The Companies believed that having someone with the management track record Daimler represented he had would be a significant value add for the Companies by enhancing their ability to attract those institutional type investors.  Indeed, the Companies were considering others who actually had a real track record for the role Daimler ultimately wrongfully gained.

23.     Unbeknownst to Moehle at the time, Daimler had misrepresented—indeed, fabricated—both his claimed track record and the existence of any $10,000,000.00 investment commitment in Skilled Science.  Indeed, the supposed "investors" never even presented the opportunity to their investment committee.

24.     Daimler was never listed as a "Principal" and did not have any investment management or decision-making responsibility at Comdisco Ventures.  In particular, while Daimler had previously *worked* for Comdisco Ventures, his experience involved working as part of a multi-person diligence team that collectively gave recommendations to the principals.  Thus, Daimler's representations to the contrary were false and Daimler knew that his "diligence" work would not provide the track record necessary to convince institutional investors to invest in the Companies.

25.     Upon information and belief, Daimler never had a $10,000,000.00 commitment from investors in Skilled Science.  Over the course of relationship with the Companies, Daimler could not even secure a meeting with the investment committee that allegedly made this commitment to present or recommend investment in the Companies, let alone to obtain the funds that they had supposedly "committed" to provide.

26.     Indeed, during the course of his relationship with the Companies, Daimler proved unable to secure significant investment commitments *at all*, let alone investments on a scale consistent with his claimed track record.  In fact, the only investments that were directly attributable to the minimal work Daimler performed for the Companies were small dollar loans to the Fund (approximately $50,000.00/each) obtained from Daimler's elderly family members and friends, which the Companies repaid with interest when due.

27.     Daimler's failure to perform in this respect contributed heavily to the deterioration of Moehle and Daimler's business relationship over the course of 2016.

28.     The Companies would never have begun working with Daimler, or entered into the Amended and Restated Operating Agreements and Common Unit Award Agreements, if Daimler had not falsely represented to Moehle that he had an extensive venture capital management track record and a substantial committed investment that could be carried over to the Companies and the Fund.

29.     Indeed, much of the Companies' fundraising strategy—i.e. the types of investors they chose to target to the exclusion of others—was based upon their misguided belief that Daimler had an extensive, and thus presumably auditable, venture capital management track record that could be marketed to institutional-type investors.  If not for Daimler's misrepresentation of his track record, Defendants would have hired someone with the credentials

41

that Daimler misrepresented he had and/or would have focused more heavily on high net worth individuals and families and smaller investors, where Moehle succeeded in attracting investments into the Companies, without Daimler's assistance.

30.     Upon information and belief, Daimler's repeated misrepresentations were intentional, willful and calculated to induce the Companies to enter into a business relationship with Daimler, execute the Amended and Restated Operating Agreements and Common Unit Award Agreements with Daimler.

31.     Indeed, upon information and belief, Daimler was well-aware of his own track record and experience, and specifically made the above-discussed misrepresentations in order to persuade Defendants that Daimler had the pedigree to make the business relationship worthwhile.

**B.  Daimler Removed From the Board of Managers of the Companies**

32.     On January 5 and 6, 2017, Daimler and Moehle met in-person to discuss, among other things, Daimler's future role, if any, in the Companies and to hold the respective Board meetings for the Companies.

33.     During the Board meetings, Moehle voted against offering Daimler full-time employment with the Companies and Daimler voted in favor of the offer, resulting in a deadlock under the respective Operating Agreements.

34.     As part of the further discussions of Daimler's future role, if any, in the Companies, Moehle offered Daimler a part-time non-operating role that included an option for Daimler to earn some upside and/or move into a full-time operating role *if* Daimler's performance improved and he managed to secure sufficient investments in the Fund to justify that upside or full-time operating role.

35.     Daimler refused that offer and, instead, demanded the Companies agree to pay him a full-time salary independent of any performance milestones.

36.     In light of the deadlock, the issue of offering Daimler full-time employment was referred to the Companies' neutral deadlock advisor, David Mahwinney.  Mr. Mahwinney broke the deadlock on March 22, 2017 by voting against offering Daimler a full-time role with the Companies.

37.      On March 27, 2017, in the best interest of the Companies, Daimler was removed from the Board of Managers of the Companies.

**C.  The ROBOTICS HUB Mark**

38.     Since April 2015, Coal Hill has used the ROBOTICS HUB trademark (the "Mark") to advertise and promoted its business which is focused on identifying, building, and guiding promising startup companies in the field of advanced robotics.

39.     Coal Hill has spent significant resources in advertising and promoting its business using the Mark and has received numerous accolades for its business under the Mark.

40.     As a result of Coal Hill's use, marketing, branding and promotion, Coal Hill has established strong trademark rights in the Mark in indelible association with Coal Hill and its business.

41.     In connection with these activities, Coal Hill is the exclusive owner of common law rights in the Mark.  Coal Hill also all right, title, and interest in and to U.S. Trademark Registration No. 5,597,703 for the Mark (the "Registration").

42.     The Registration is valid and subsisting.

**D.  Daimler's Unauthorized Use of Coal Hill Property**

43.     After March 27, 2017, Daimler had no right to use the Companies' property,

which included, but is not limited to, the Companies' information, documents, data, computers and intellectual property.

44.     Yet, after March 27, 2017, without authorization from Coal Hill, Daimler transferred control of the roboticshub.io domain name (the "RH Domain Name") from Coal Hill to his private "GoDaddy" account, and caused all attempts to access the roboticsub.io website to be redirected to the website of Daimler's new ventures: c2.capital and, later, SpinGlass.

45.     By causing the roboticshub.io website to re-direct to Daimler's own venture, Daimler deliberately sought to trade on the goodwill associated with the Mark and create the false impression that Daimler's new services somehow originated from or were related to Coal Hill, thereby deceiving the relevant consumers and causing confusion or mistake as to the origin or affiliation of Daimler's and Coal Hill's services.

46.     Daimler further unlawfully exploited the Mark by using his Robotics Hub e-mail address, and, upon information and belief, the Robotics Hub name and logo found in his e-mail signature, to contact several of the Fund's portfolio companies and suggest that they leave the Fund and instead join c2.capital or SpinGlass.

47.     Despite requests from Coal Hill, Daimler refused to transfer the RH Domain Name and email addresses to Coal Hill.

48.     In addition, Daimler's unlawful use of the Mark as alleged herein caused the relevant consumers to be confused as to the relationship between Coal Hill and Moehle in light of the fact that the Robotics Hub website redirected to Daimler's companies, not Coal Hill, and Moehle's Robotics Hub email address was deactivated as a result of Daimler's actions.

49.     At no time did Coal Hill authorize Daimler or his agents to use the Mark in connection with advertising and promoting Daimler's c2.capital and SpinGlass businesses.

50.     Daimler has used and/or continues to use the Mark to advertise and promote his business so as to trade on the goodwill and recognition that Coal Hill has developed in the Mark.

51.     In addition to unlawfully using the Mark after he was removed as a Member, Daimler also unlawfully accessed and copied information from Coal Hill's Google Drive.

52.     Specifically, after March 27, 2017, Daimler used his credentials to access Coal Hill's protected computer and network systems—namely, the Google Drive which was used in and affected the Companies' interstate commerce, and attempted to remove Moehle's access to the same.

53.     After March 27, 2017, Daimler was not authorized to access Coal Hill's protected computer and network system, including related software, programs, and computers.

54.     Daimler used his unauthorized access to download and obtain confidential information from Coal Hill's protected computer and network system, including investor documents and confidential information about the portfolio.

55.     Daimler subsequently exploited the confidential information he had unlawfully obtained from the Companies' protected computer and network system for profit.  Specifically, Daimler used those materials in public speeches, public presentations and, upon information and belief, in support of forming c2.capital and SpinGlass businesses.

56.     Daimler did not request or receive permission to use the information on the Coal Hill Google Drive in any fashion.  Nor did Daimler pay or offer to pay Coal Hill any royalty before exploiting the information on the Coal Hill Google Drive for his own benefit.

## COUNT I
### (Fraudulent Misrepresentation)

57.     The Companies repeat and re-allege the allegations set forth of Paragraphs 1-56 above as if full set forth herein.

45

58.     Daimler intentionally misrepresented to the Companies his venture capital management track record.  Daimler also intentionally misrepresented that he had secured a commitment of $10,000,000.00 of investment to Daimler's Skilled Science company which would be carried over to the Companies if the Companies made Daimler a member.

59.     Daimler made such representations knowing they were false or with a reckless disregard as to whether they were true or false.  Such misrepresentations were material because the Companies would not have agreed to make Daimler a member of the Companies and grant him common units in the Companies if they had known Daimler never had any investment management or decision-making responsibility at Comdisco Ventures, could not produce an audited track record, and had no investment commitment in Skilled Science to bring over to the Companies.

60.     Daimler made those misrepresentations to the Companies with the intention of misleading the Companies to rely upon them and agree to make Daimler a member of the Companies and grant him units in the Companies.

61.     The Companies justifiably relied on Daimler's representations regarding his track record and existing investor commitments, and Daimler's representations were material to the Companies' decision to begin working with Daimler, as opposed to other potential members, with real track records, that the Companies were also talking to at that time.  Daimler's misrepresentations were also material to the Companies' decision to develop a fundraising strategy to target institutional-type investors likely to require an auditable track record of the kind Daimler falsely claimed to have rather than to target more heavily the high net worth individuals and families and smaller investors that Moehle succeeded in attracting to invest in the Companies, without any assistance from Daimler.

62.     As a direct and proximate result of the Companies' reliance on Daimler's misrepresentations regarding his venture capital management track record and supposed committed investors, Defendants suffered substantial damages directly attributable to Daimler's misrepresentations, including inability to close investments from interested investors at the time of the final close of the Fund and costs incurred to cover for Daimler being a non-contributing member of the Companies, in an amount to be determined at trial but that is greater than $1,000,000.

## COUNT II
**(Unfair Competition and False Designation of Origin in Violation of 15 U.S.C. § 1125(a))**

63.     Coal Hill repeats and re-allege the allegations set forth of Paragraphs 1-56 above as if full set forth herein.

64.     Coal Hill is the owner of federally-registered and common law rights in the Mark as described herein.

65.     Coal Hill has established substantial goodwill in the Mark through, among other things, its exclusive marketing, promotion and branding of the Mark for over four years in connection with its successful business of identifying, building, and guiding promising startup companies in the field of advanced robotics.

66.     As described herein, Daimler, without consent or authorization of Coal Hill and in violation of 15 U.S.C. § 1125(a)(1)(A), intentionally and willfully has made use of the Mark and/or other words, terms, names, symbols or devices, or any combination thereof, false designations of origin, and false or misleading representations of fact which are likely to cause confusion and mistake among the relevant consumers that (a) Daimler is still part of or runs Coal Hill and/or the Robotics Hub; and/or (b) there is some affiliation, connection or association between Daimler and Coal Hill and/or the Robotics Hub.

67.     As described herein, Daimler, without consent or authorization of Coal Hill and in violation of 15 U.S.C. § 1125(a)(1)(B), intentionally and willfully has made use of the Mark and/or other words, terms, names, symbols or devices, or any combination thereof, false designations of origin, and false or misleading representations of fact in commercial advertising and promotion which misrepresents the nature, characteristics and qualities of his services, namely giving the false impression that Daimler has some affiliation, connection or association with Coal Hill and/or the Robotics Hub

68.     As described herein, Daimler intentionally and willfully has made us of the Mark to unfairly and improperly trade on the goodwill Coal Hill has developed in the Mark to attract attention to his business efforts.

69.     As a direct and proximate result of Daimler's intentional and willful conduct and pursuant to 15 U.S.C. § 1117, Coal Hill is entitled to recover its actual damages, Daimler's ill-gotten profits, enhanced damages, costs and reasonable attorneys' fees in an amount to be proven at trial.

## COUNT III
### (Unauthorized Computer Access in Violation of 18 U.S.C. § 1030)

70.     Coal Hill repeats and re-allege the allegations set forth of Paragraphs 1-56 above as if full set forth herein.

71.     As alleged herein, after March 27, 2017 Daimler intentionally used his credentials to access Coal Hill's Google Drive.

72.     Coal Hill's Google Drive is a protected computer under 18 U.S.C. §1030.

73.     As alleged herein, after March 27, 2017, Daimler had no right to access Coal Hill's Google Drive or obtain information from that Google Drive.

74.     After accessing and obtaining information from Coal Hill's Google Drive,

Daimler exploited the unlawfully obtained information for his own personal gain to the detriment of Coal Hill.

75.     As a direct and proximate result of Daimler's unauthorized access of the Companies' computer system, Defendants suffered losses in excess of $5,000.00.  Coal Hill is, therefore, entitled to recover its actual damages, costs and reasonable attorneys' fees in an amount to be proven at trial.

## COUNT IV
### (Cybersquatting under 15 U.S.C. § 1125(d))

76.     Coal Hill repeats and re-allege the allegations set forth of Paragraphs 1-56 above as if full set forth herein.

77.     The Mark was distinctive at the time that Daimler registered the RH Domain Name for Coal Hill.

78.     The RH Domain Name is identical to or confusingly similar to the Mark.

79.     After March 27, 2017, Daimler transferred, used and continues to use the RH Domain Name without authorization from Coal Hill and with a bad faith intent to profit from the Mark by, among other things, redirecting the relevant consumers for his own commercial gain.

80.     As a result of Daimler's wrongful conduct, Daimler is liable to Coal Hill for violation of the Anticybersquatting Consumer Protection Act.

81.     Daimler's unlawful transfer and use of the RH Domain Name has caused and will continue to cause damage to Coal Hill, in an amount to be proven at trial.

82.     Coal Hill is entitled to recover its actual damages, Daimler's ill-gotten profits and costs in an amount to be proven at trial, or statutory damages of up to $100,000, as well as treble damages, attorneys' fees and transfer of the RH Domain Name to Coal Hill.

## JURY DEMAND

83.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Companies hereby demand a trial by jury on all issues triable of right by a jury.

## PRAYER FOR RELIEF

WHEREFORE, the Companies respectfully request that this Court enter judgment against Daimler on their Counterclaims, and respectfully requests that this Court award the following relief:

(a)     Actual damages suffered by the Companies as a result of Daimler's fraudulent conduct as alleged herein;

(b)     Actual damages suffered by Coal Hill as a result of Daimler's violation of 18 U.S.C. §1030;

(c)     Coal Hill's actual damages and Daimler's profits pursuant to 15 U.S.C. § 1117(a), trebled pursuant to 15 U.S.C. § 1117(b) and/or an award of statutory damages at the election of Coal Hill pursuant to 15 U.S.C. 1117(d);

(d)     Forfeiture of the RH Domain Name and transfer of the RH Domain Name to Coal Hill;

(e)     An order enjoining Daimler from using or exploiting the Mark, or any colorable imitation of the Mark, in connection with advertising and promoting his business;

(f)     Coal Hill's costs, expenses and reasonable attorneys' fees, pre- and post-judgment interest and punitive damages in an amount to be determined at trial; and

(g)     All such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

**K&L GATES, LLP**

/s/ *Christopher M. Verdini*
Patrick J. McElhinny, PA Bar No. 53510
Christopher M. Verdini, PA Bar No. 93245
Jessica L.G. Moran, PA Bar No. 325912
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222-2613
Tel:  412-355-6500
Fax:  412-355-6501
Email: patrick.mcelhinny@klgates.com
Email: christopher.verdini@klgates.com
Email: jessica.moran@klgates.com

*Counsel for Defendants Chris Moehle,*
*Robotics Hub Fund 1 LLC, and Coal Hill*
*Ventures LLC*

Dated: October 30, 2020

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2020 the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<u>/s/ Christopher M. Verdini</u>
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222-2613
412.355.6500