## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC DAIMLER, | ) | |
| | ) | Civil Action No. 18-165 |
| Plaintiff, | ) | Judge Marilyn J. Horan |
| | ) | |
| v. | ) | |
| | ) | |
| CHRIS MOEHLE, ROBOTICS | ) | |
| HUB FUND 1 LLC, and COAL HILL | ) | Electronically Filed |
| VENTURES LLC, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**K&L GATES LLP**
Patrick J. McElhinny (PA Bar No. 53510)
Christopher M. Verdini (PA Bar No. 93245)
Jessica L. G. Moran (PA Bar No. 325912)
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222-2613
T: 412.355.6500
F: 412.355.6501
patrick.mcelhinny@klgates.com
christopher.verdini@klgates.com
jessica.moran@klgates.com

*Counsel for Defendants Chris Moehle, Robotics Hub Fund 1 LLC, and Coal Hill Ventures LLC*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      **INTRODUCTION**........................................................................................1

II.     **ARGUMENT**...............................................................................................3

      A.     **Daimler Cannot Carry His Burden to Prove Fraud**...........................3

            *1.     Daimler's Sole Admissible Evidence of the Purported GEV Representation Remains Nothing More Than His Self-Serving Testimony* ..........................3

            *2.     Even If Defendants Had Made Any Purported Representation, Such a Representation Is Not An Actionable False Statement of Fact*....................7

            *3.     Daimler Has Not Proffered Any Evidence Showing Knowledge or Intent* ..9

            *4.     Daimler Has Not Demonstrated Justifiable Reliance*..............................10

            *5.     Daimler Has No Evidence of Cognizable Damage*....................................12

      B.     **Daimler Cannot Carry His Burden to Prove Breach of Contract**.................13

III.    **CONCLUSION** ........................................................................................15

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen-Noll v. Madison Area Technical College*,
969 F.3d 343 (7th Cir. 2020) ............................................................................................4

*Benevento v. Life USA Holding, Inc.*,
61 F. Supp. 2d 407 (E.D. Pa. 1999) .................................................................................11

*Boomer v. Lewis*,
No. 3:06-cv-0850, 2009 WL 2900778 (M.D. Pa. Sept. 9, 2009).....................................6

*Chandler v. L'Oreal USA, Inc.*,
340 F. Supp. 3d 551 (W.D. Pa. 2018)................................................................................4

*Coleman v. Sears, Roebuck & Co.*,
319 F. Supp. 2d 544 (W.D. Pa. 2003)............................................................................8, 9

*Doherty v. Allstate Ins. Co.*,
734 Fed. App'x 817 (3d Cir. 2018)....................................................................................5

*Ecore Int'l v. Downey*,
343 F. Supp. 3d 459 (E.D. Pa. 2018) ...............................................................................15

*Fleming Steel Co. v. Jacobs Engineering Grp., Inc.*,
373 F. Supp. 3d 567 (W.D. Pa. 2019)..............................................................................15

*Garden State Tanning, Inc. v. Mitchell Mfg. Grp., Inc.*,
55 F. Supp. 2d 337 (E.D. Pa. 1999) ..................................................................................9

*Hailey v. Wetzel*,
No. 3:20-cv-60, 2021 WL 6051446 (W.D. Pa. Dec. 20, 2021) ........................................6

*Hanna v. Giant Eagle*,
No. 15-1009, 2017 WL 1194676 (W.D. Pa. Mar. 9, 2017) ..........................................3, 4

*Harvey v. Cline*,
No. 3:18-cv-939, 2021 WL 1627766 (M.D. Pa. Apr. 27, 2021)........................................5

*Jiminez v. All Am. Rathskeller, Inc.*,
503 F.3d 247 (3d Cir. 2007)...............................................................................................5

*Johnson v. Met Life Bank, NA*,
883 F. Supp. 2d 542 (E.D. Pa. 2012) ............................................................................3, 4

*Jones v. United Parcel Serv.*,
   214 F.3d 402 (3d Cir. 2000) ................................................................................ 4

*Lookout Windpower Holding Co., LLC v. Edison Mission En.*,
   714 F. Supp. 2d 547 (W.D. Pa. 2010) .................................................................. 8

*Lupyan v. Corinthian Colleges, Inc.*,
   761 F.3d 314 (3d Cir. 2014) ................................................................................ 3

*Mobley v. Wetzel*,
   No. 1:14-cv-00035, 2017 WL 3404977 (M.D. Pa. Jun. 5, 2017) ....................... 5

*Morini v. Castle Cheese, Inc.*,
   No. 10-1739, 2013 WL 5436928 (W.D. Pa. Sept. 27, 2013) ............................... 9

*Ndubizu v. Drexel Univ.*,
   768 F. Supp. 2d 796 (E.D. Pa. 2001) ................................................................ 12

*Newsome v. Teagarden*,
   No. 18-cv-317, 2021 U.S. Dist. LEXIS (W.D. Pa. Mar. 9, 2021) ...................... 6

*Paramount Fin. Comm., Inc. v. Broadbridge Investor Comm. Sol., Inc.*,
   No. 15-405, 2019 WL 3022346 (E.D. Pa. May 23, 2019) ................................ 10

*Revock v. Cowpet Bay West Condo. Ass'n*,
   853 F.3d 96 (3d Cir. 2017) .................................................................................. 6

*Sames v. Gable*,
   100 F.R.D. 749 (E.D. Pa. 1983) ....................................................................... 6, 7

*Smith v. City of Allentown*,
   589 F.3d 684 (3d Cir. 2009) ................................................................................ 7

*Toy v. Metro Life Ins. Co.*,
   863 A.2d 1 (Pa. Super. Ct. 2004) ...................................................................... 10

*Tran v. Metro Life Ins. Co.*,
   408 F.3d 130 (3d Cir. 2005) .............................................................................. 11

*Velez v. QVC, Inc.*,
   227 F. Supp. 2d 384 (E.D. Pa. 2002) .................................................................. 9

*Weckler v. Smithkline Beckman*,
   746 F. Supp. 576 (E.D. Pa. 1990) ..................................................................... 14

**Other Authorities**

100 F.R.D at 751 ....................................................................................................... 7

Rule 12.................................................................................................................1, 8, 10

Rule 56..........................................................................................................................2

Rule 56(e)......................................................................................................................6

I.      **INTRODUCTION**

Put to the test of marshalling all evidence Daimler contends would carry his heavy burden to prove fraud and breach of an oral contract and a $10 million damages claim, Daimler notably relies almost exclusively on a conclusory affidavit that, in one paragraph, purports to incorporate every allegation of his 138-paragraph FAC.[1]  Daimler's own testimony and the documents of record, however, provide no support for those allegations and, in fact, contradict them.  Moreover, despite representing to this Court in opposing Defendants' Rule 12 Motion that he would "bolster" his fraud claim with the testimony of "numerous potential investors [who would] confirm [during discovery] that Moehle made" the GEV Representation (*see* ECF 40 at n.7, n.12), no such investor appeared.  Indeed, Daimler did not even bother to depose or introduce any evidence from any of those supposed "numerous" investors.  Nor did he submit a declaration from any of them.  Similarly, Daimler failed to adduce evidence from a single one of the supposed potential investors in Skilled Science to support his $10 million damages claim.  Finally, Daimler fails to identify a shred of evidence that there was an oral contract to grant him units in exchange for unidentified "financial contributions."

In the face of his evidentiary failings, Daimler was forced to admit 136 of Defendants' 147 Statements of Material Fact ("SMFs").  And in denying the other 11 SMFs, Daimler relies on evidence that fails to support his denials.  When viewed through the lens of Daimler's evidentiary burden, Daimler's admissions are fatal as he cannot prove any of the elements of his claims:

- **(Fraud) -- False Statement:** Daimler could not remember any substantive details about his alleged multiple conversations with Moehle and potential investors other than his conclusory claim that Moehle made the GEV Representation.  RSMF[2] at ¶¶ 59-63. He also could not identify any documents that evidence the GEV Representation; to the contrary, a March 14, 2016 Lead Investor Presentation (less than a month before Daimler signed the Operating Agreements and Unit Awards) does not identify GEV as a "Potential lead

---

[1] Defined terms herein have the same meaning as ascribed to them in Defendants' opening Brief.
[2] "RSMF" refers to Daimler's Response to Defendants' SMFs (ECF No. 116).

investor" or a "near-term potential deal." *Id.* at ¶¶ 64; 96-98. When juxtaposed with the other evidence of record, Daimler's testimony is insufficient for a rational factfinder to credit his assertion that Moehle made the GEV Representation.

- **(Fraud) -- Statement of Existing Fact:** Daimler admitted he knew that the purported GEV Representation was "not a legal obligation," that GEV could walk away from any supposed commitment to invest, and that the purported commitment was contingent upon a future event (i.e., a spinout) which "was definitely a risk that [he] was taking." *Id.* at ¶¶ 89-90.

- **(Fraud) -- Justifiable Reliance:** Daimler admitted he: (1) never saw any signed legal agreement with GEV obligating them to invest $20 million; (2) never took any steps to double-check the accuracy of the GEV Representation beyond reviewing in a "cursory way" publicly available information related to GE's operations to determine if a spinoff was reasonable; (3) never asked any questions about the nature, extent, or likelihood of any GEV commitment in multiple meetings with GEV representatives; and (4) read the Fund's PPM, which made no mention of a $20 million commitment from GEV, before providing it to investors. *Id.* at ¶¶ 100-108.

- **(Fraud) -- Damages:** Daimler admitted: (1) other than investing less than $500,000 of his own money, he failed to secure any other funding for his Skilled Science venture (*id.* at ¶ 29); (2) he never executed a memorandum of understanding, sponsorship agreement, or any other agreement for investment in Skilled Science or to acquire rights to innovations to commercialize (*id.* at ¶¶ 11-26, 31); and (3) he described the "current reality" of Skilled Science in August 2015 (right before being introduced to Moehle) as having no signed contracts to invest despite starting conversations about funding in ***fall 2013***. *Id.* at ¶ 41.

- **(Breach) -- Existence of an Oral Contract:** Daimler admitted he could not identify the material terms of the alleged oral contract including: (1) when the parties purportedly agreed to treat Daimler's "financial contributions" as capital contributions; (2) how many units Daimler was supposed to receive; (3) the type of units Daimler was to receive; (4) how those units were to vest; or (5) the amount of money he paid. *Id.* at ¶ 127.

- **(Breach) -- Damages:** Daimler admits he was reimbursed for the checks and a promissory note that he wrote to Coal Hill and he failed to submit any admissible evidence to establish Coal Hill failed to make payments for any other claimed expenses. *Id.* at ¶¶ 113-117.

Without evidence to carry his burden, Daimler tries in vain to manufacture disputes of material fact by submitting an affidavit that summarily incorporates the entirety of his FAC (138 paragraphs) without identifying any supporting evidence for those allegations. Daimler's deposition testimony (taken after he filed the FAC) also contradicts the incorporated allegations. Thus, Daimler's "affidavit" is improper and should not be considered under Rule 56.

Even if the Court considers his affidavit, it does not create a genuine dispute of material

fact.  The affidavit repeats Daimler's self-serving, conclusory testimony that Moehle made the GEV Representation but that testimony does not clear the hurdle of proving a fraudulent statement by clear and convincing evidence.  Additionally, Daimler's affidavit: (1) does not raise a dispute of material fact on his failure to prove justifiable reliance on the GEV Representation; (2) confirms he cannot prove cognizable damages; and (3) establishes that there was not even a discussion between Moehle and Daimler, let alone an oral agreement, to grant Daimler units in Coal Hill.

Because Daimler's response establishes as a matter of law that he cannot carry his *prima facie* burden to prove his fraud and breach of contract claims and that there are no genuine disputes of material fact that must be resolved by a jury, Daimler's claims should be dismissed.

## II.   ARGUMENT

### A.   Daimler Cannot Carry His Burden to Prove Fraud

#### 1.   Daimler's Sole Admissible Evidence of the Purported GEV Representation Remains Nothing More Than His Self-Serving Testimony

Daimler's Opposition confirms that his sole evidence that Moehle made the purported GEV Representation remains his self-serving testimony.  As the cases Daimler relies upon make clear, "[g]enerally, conclusory self-serving affidavits are **insufficient to withstand a motion for summary judgment**…This rule has been extended to self-serving deposition testimony." *Hanna v. Giant Eagle*, No. 15-1009, 2017 WL 1194676, at *12 (W.D. Pa. Mar. 9, 2017) (emphasis added) (internal citations and punctuation omitted); *Johnson v. Met Life Bank, NA*, 883 F. Supp. 2d 542, 549 (E.D. Pa. 2012) (same).[3] An exception to this general rule arises only "when considered in conjunction with other evidence, [the self-serving testimony is] sufficient for a rational factfinder to credit [the plaintiff's] testimony, **in spite of the testimony's self-serving nature.**" *Hanna*, 2017

---

[3] Daimler also cites *Lupyan v. Corinthian Colls., Inc.*, 761 F.3d 314 (3d Cir. 2014) (Opp. at 11), but in that decision the court merely held that self-serving testimony may be sufficient to overcome a "weak" evidentiary presumption in defendants' favor.  *Lupyan*, 761. F.3d at 320.

WL 1194676, at *12; *Johnson*, 883 F. Supp. 2d at 549.  Notably, Daimler does not cite a single case where self-serving testimony alone is sufficient to carry a clear and convincing burden, as Daimler must do to prove his fraud claim.  Moreover, the narrow exception does not apply here because there is no other evidence that would allow a jury to credit his testimony.

Daimler identifies the following as evidence that Moehle purportedly made the GEV Representation: (1) the unverified FAC; (2) Daimler's affidavit that incorporates by reference the entirety of his FAC; (3) a complaint filed in Delaware by non-parties; and (4) Jamie Fee's testimony.  *See* Opp. at 6-7; RSMF at ¶¶ 149, 172, 185-186.[4]  A rational fact-finder, however, could not use this evidence to credit Daimler's self-serving testimony for the following reasons.

*First*, it is black-letter law that a party cannot simply rest on the allegations of an unverified complaint to defeat summary judgment, even if incorporated into an affidavit.  *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000) ("At summary judgment, a plaintiff cannot rely on unsupported allegations, but must go beyond the pleadings and provide some evidence that would show that there exists a genuine issue for trial."); *Chandler v. L'Oreal USA, Inc.*, 340 F. Supp. 3d 551, 560 (W.D. Pa. 2018) (summary judgment appropriate "where the non-moving party merely reasserts factual allegations contained in the pleadings"); *Allen-Noll v. Madison Area Tech. Coll.*, 969 F.3d 343, 349 (7th Cir. 2020) (plaintiff's declaration cannot defeat summary judgment where it repeats conclusory allegations from complaint).  Thus, Daimler's allegations in his FAC regarding the GEV Representation, as incorporated in his affidavit, cannot defeat Defendants' Motion.  *See, e.g.,* RSMF at ¶¶ 149, 172, 185-186.

*Second*, Daimler's affidavit to the extent it incorporates the entirety of Daimler's FAC via

---

[4] Daimler buries in a footnote that Moehle "has yet to expressly deny under oath" that he made the GEV Representation.  Opp. at 7, n.1. Daimler omits that his counsel did not ask Moehle in his deposition whether he ever made the GEV Representation. That fact is itself striking and further underscores the absence of any support for Daimler's fraud claim.

a single paragraph is an inadmissible sham affidavit.  *See* ECF 117-2 Ex. A at ¶ 2.[5]  A sham

affidavit is one "offered solely for the purpose of defeating summary judgment" and which

contradicts the party's prior deposition testimony.  *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d

247, 253 (3d Cir. 2007).  When faced with a sham affidavit, "it is proper for the trial judge to

conclude that no reasonable jury could accord that affidavit evidentiary weight and that summary

judgment is appropriate."  *See id.*; *see also Harvey v. Cline*, No. 3:18-cv-939, 2021 WL 1627766,

at *10 (M.D. Pa. Apr. 27, 2021) (treating plaintiff's sworn complaint as a sham affidavit where it

was contradicted by his deposition testimony); *Doherty v. Allstate Ins. Co.*, 734 Fed. App'x 817,

823 (3d Cir. 2018) (treating verified complaint as a sham affidavit where "the record did not

substantiate th[e] allegation[s] in any respect.").  Here, Daimler's incorporation of the FAC in his

affidavit should be disregarded because it contradicts his testimony:

- Daimler claims that Moehle made the GEV Representation in an October 16, 2015 and November 3, 2015 meeting.  *See* ECF No. 86 at ¶ 25.  But, the record establishes – and Daimler admits –that he did not attend the October 16, 2015 meeting and Moehle was not in attendance at the November 3, 2015 meeting.  RSMF at ¶¶ 71-82.

- Daimler alleges that Moehle made the GEV Representation in dozens of phone calls and in front of multiple third parties.  *See* ECF No. 86 at ¶¶ 20-25, 32.  Yet, Daimler has admitted he did not know of a single investor who has asserted that Moehle made the GEV Representation, has proffered no evidence of any such assertion, and conveniently testified that he could not recall any of the specifics of these calls.  RSMF at ¶¶ 58-69; ECF No. 110-2, Ex. 5 at 150-153, 161-163, 179, 197-198, 212-213, 217-220, 225-229.

***Third***, the Court should give no weight to Daimler's assertion that his testimony is

"bolstered" by the purported allegations of non-parties in a verified complaint filed in separate

action pending in Delaware.  Opp. at 7. The non-party complaint is indisputably hearsay.  In

addition, the allegations cited by Daimler that purport to "bolster" his testimony are nothing more

---

[5] Daimler's general incorporation of his FAC is itself improper – especially given its length (138 paragraphs) and unwieldiness.  This Court is not obligated to "hunt through" the FAC in search of genuine issues of material fact as though "on a truffle hunt in a vast field."  *See Mobley v. Wetzel*, No. 1:14-cv-00035, 2017 WL 3404977, at *2 n.2 (M.D. Pa. Jun. 5, 2017).

than a regurgitation of the conclusory allegations from Daimler's own FAC.  ECF 120, Ex. G at

¶¶ 27-31.  Indeed, it is telling that, despite Daimler's allegations that Moehle made the GEV

Representation to dozens of potential investors (*see* Opp. at 6), his only "evidence" is a third-party

complaint that does not assert claims against Moehle for any purported fraudulent representation.

Daimler contends that the Court can treat the non-party verified complaint as an affidavit

(Opp. at 7), but Daimler does not cite to – and Defendants are not aware of – any court that has

considered a verified complaint from a non-party in a separate, unrelated litigation as competent

evidence to defeat summary judgment.  To the contrary, courts that have addressed this question

have done so exclusively in situations where a plaintiff has relied on ***his or her own verified***

***complaint from the same action*** during summary judgment.  *See, e.g., Newsome v. Teagarden*,

No. 18-cv-317, 2021 U.S. Dist. LEXIS, at *8-9 (W.D. Pa. Mar. 9, 2021); *Sames v. Gable*, 100

F.R.D. 749, 750-51 (E.D. Pa. 1983), *rev'd on other grounds* 732 F.2d 49 (3d Cir. 1984); *Hailey v.*

*Wetzel*, No. 3:20-cv-60, 2021 WL 6051446, at *1, n. 4 (W.D. Pa. Dec. 20, 2021).

Even if a non-party verified complaint could be relied upon, it could only be competent

evidence if it met the requirements of Rule 56(e), i.e., it is based on the complainant's personal

knowledge with allegations that are specific.   *See Revock v. Cowpet Bay W. Condo. Ass'n*, 853

F.3d 96, 100 n.1 (3d Cir. 2017) (plaintiffs' verified complaint could be considered to the extent

the allegations were based on "personal knowledge"); *Boomer v. Lewis*, No. 3:06-cv-0850, 2009

WL 2900778, at *14 (M.D. Pa. Sept. 9, 2009) (verified complaint may be considered on summary

judgment only "if the allegations are specific and based on personal knowledge").  The allegations

in the Delaware complaint demonstrate that those plaintiffs have no personal knowledge of the

supposed GEV Representation.  The Delaware plaintiffs verified only that their allegations "are

***believed*** to be true insofar as they relate to the acts or deeds of any other person."  *See, e.g.,* ECF

120. The Delaware plaintiffs never expressly allege that Moehle made the GEV Representation to them.  Instead, they parrot the language of Daimler's FAC (*compare* FAC ¶ 115 to ECF 120 Ex. G ¶ 27) relating to unnamed "investors" and to Daimler.  Confronted with similar facts, the court in *Sames v. Gable* refused to consider a verified complaint because it stated only that the allegations were true "to the best of plaintiffs' knowledge, information and belief."  100 F.R.D at 751.  The Court likewise should disregard this purported evidence.

**Finally**, Daimler's reliance on Fee's testimony regarding the GEV Representation cannot defeat Defendants' Motion.  Fee testified that he recalled Daimler telling him that GEV was ready to invest a significant amount in Coal Hill in the "neighborhood of $5 million" upon some sort of divestiture.   SMF at ¶¶ 91-92.  Fee's testimony contradicts Daimler's assertion that Moehle represented that GEV had made a $20 million **commitment**, and also constitutes hearsay that cannot be considered for purposes of summary judgment.  *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009) ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment.").

As Daimler's only evidence that Moehle made the GEV Representation is his self-serving, conclusory testimony and no rational fact-finder could credit that testimony in the face of the complete record, including his SMF admissions, the Court should grant Defendants' Motion.[6]

2.   *Even If Defendants Had Made Any Purported Representation, Such a Representation Is Not An Actionable False Statement of Fact*

Daimler also cannot carry his burden of proving actionable fraud because his admissions establish that the alleged GEV Representation is not a statement of a past or existing fact.  A statement that relates to a future event that may never come to fruition is not actionable.  *Lookout*

---

[6] Daimler's Opposition entirely fails to address the fact that he has not introduced any evidence to prove the falsity of the GEV Representation (i.e., that GEV never expressed an interest in possibly investing in the Fund in the future).  *Compare* Opening Brief at 12 *with* Opp. at 5-9.

*Windpower Holding Co., LLC v. Edison Mission En.*, 714 F. Supp. 2d 547, 556 (W.D. Pa. 2010). Daimler admitted that he understood GEV's so-called commitment was "not a legal obligation" and that it was "absolutely true" that GEV could have just walked away from any supposed commitment. RSMF at ¶ 89. Daimler further admitted that he understood the purported GEV investment was contingent upon a "spinout" and that contingency was "definitely a risk that I was taking." RSMF at ¶ 90. Accordingly, Daimler could not have a "belief in a specific and definite outcome" based on the GEV Representation. *See* Opp. at 10; *Coleman v. Sears, Roebuck & Co.*, 319 F. Supp. 2d 544, 551 (W.D. Pa. 2003).

In an effort to avoid the consequences of his admissions, Daimler asserts that this Court already concluded that the GEV Representation was an actionable statement in its June 2019 Opinion on Defendants' Motion to Dismiss. *See* Opp. at 10. Daimler's reliance on the Court's prior ruling is misplaced. There, the Court ruled on a Rule 12 motion that required the Court to accept Daimler's allegations as true. In discussing the GEV Representation, the Court expressly noted Daimler's allegations that "Moehle stated GE's commitment on at least twenty-one occasions, often in the presence of investors or potential investors, and that Defendant Moehle readily explained away apparent conditions precedent as 'merely something that affected the timing of funding' not the eventuality or likelihood of fund." 2019 WL 2422843, at *5. Now, however, the Court need not treat those allegations as true. To the contrary, the undisputed *evidence* establishes that Daimler understood the purported investment may never come to fruition and that he understood that he was taking a risk based on those future contingencies. As such, the purported GEV Representation cannot constitute a representation about an existing fact.

Daimler further undercuts his argument that the GEV Representation was a representation of past or existing fact by citing to three 2015 email exchanges between Moehle and third parties.

Each of those emails demonstrates that GEV's involvement with the Fund was unsettled: (1) the February 2015 email regarding GEV's founding sponsorship was based on a draft agreement for recurring $75,000 payments that ultimately became only a one-time $75,000 payment (*see* ECF 110-2, Ex. 1 at 112:20-114:12); (2) the July 2015 email refers to GEV's "big action" with regard to "PR" (public relations) which Moehle described in detail in his deposition (*id.* at 120:1-121:25); and (3) the August 2015 email expressly disavows a present commitment by GEV to invest $20 million in the Fund.[7]  Accordingly, those emails do not raise a genuine dispute of material fact.

       3.    *Daimler Has Not Proffered Any Evidence Showing Knowledge or Intent*

Contrary to Daimler's assertion that "[i]ssues of knowledge and intent are particularly inappropriate for resolution by summary judgment" (Opp. at 10), courts routinely grant summary judgment as to whether a plaintiff carried his *prima facie* burden of showing intent to defraud under circumstances similar to those at issue here.  *See Coleman*, 319 F. Supp. 2d at 552; *Garden State Tanning, Inc. v. Mitchell Mfg. Grp., Inc.*, 55 F. Supp. 2d 337, 344 (E.D. Pa. 1999) (dismissing common law fraud count where plaintiffs introduced no evidence that defendants had fraudulent intentions); *Velez v. QVC, Inc.*, 227 F. Supp. 2d 384, 423 (E.D. Pa. 2002) (granting summary judgment on fraud where plaintiff had no evidence of intent to deceive other than her own "presumptions" and "assumptions."); *Morini v. Castle Cheese, Inc.*, No. 10-1739, 2013 WL 5436928, at *11 (W.D. Pa. Sept. 27, 2013).  Daimler's self-serving testimony/affidavit relating to Moehle's intent is insufficient to carry his burden of proof for the reasons previously explained. *See* Opp. at 10-12.[8]  In addition, Daimler's testimony related to Skilled Science and his supposed

---

[7] And, in fact, Moehle clarified that the GEV sponsorship and the Fund's $20 million fundraising goals were "two separate things."  ECF No. 110-2, Ex. 1 at 124:23-125:12.

[8] *Paramount Fin. Comm., Inc. v. Broadbridge Investor Comm. Sol., Inc.*, No. 15-405, 2019 WL 3022346, at *17 (E.D. Pa. May 23, 2019) is inapplicable.  The plaintiff in *Paramount*, in addition to his own testimony, introduced statements from others as evidence of intent.

payment of expenses "to keep [the Companies] alive" does not raise a genuine dispute of material fact with respect to Moehle's intent.  Indeed, Daimler admitted that his Skilled Science endeavor was not relevant to the Companies because of purported different "theses" (ECF 110-2, Ex. 5 at 64, 110-111), and there is no evidence that the Companies would have failed without Daimler.

Finally, Daimler ignores his own admissions that undercut any assertion of intent. Specifically, Daimler fails to address these undisputed facts:

- He could not recall how, when, or why he came to learn that the alleged GEV Representation was untrue (facts which were essential to this Court's June 2019 opinion on Defendants' Rule 12 motion, 2019 WL 2422843, at *6).  RSMF at ¶ 108.

- Moehle invited and included Daimler in a pitch to GEV to make an escalating commitment to the Companies with an "initial commitment" of $500,000 scaling up to $25 million, which objectively contradicts any assertion that Moehle intended to defraud Daimler about GEV's involvement with the Companies.  RSMF at ¶ 85.

- GEV expressed an interest in supporting the Companies at least as late as the fall of 2016. RSMF at ¶ 87.

### 4.    Daimler Has Not Demonstrated Justifiable Reliance

While the law does not impose a "duty to investigate" to establish justifiable reliance, "[t]he recipient of a fraudulent misrepresentation is…required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he utilized his opportunity to make a cursory examination or investigation."  *Toy v. Metro Life Ins. Co.*, 863 A.2d 1, 12 (Pa. Super. Ct. 2004) (quoting RST 2d of Torts § 541).  Daimler asserts that Moehle first made the GEV Representation in August 2015 and that the purported investment was "imminent" and to conclude in a "matter of months, if not weeks."  RSMF at ¶ 56. Yet, Daimler admittedly did nothing from August 2015 through April 2016 when he signed the Operating Agreements to undertake even a cursory investigation into why GEV had not yet invested:

- He never saw a legal agreement that obligated GEV to invest $20 million.  RSMF at ¶ 100.

- He did not take any steps to investigate Moehle's purported GEV Representation beyond

10

reviewing in a "cursory way" publicly available information related to GE's operations to determine if a spinoff of its financial arm seemed reasonable.  RSMF at ¶ 102.

- During multiple meetings with GEV representatives, he did not ask any questions about the nature, extent, or likelihood of any GEV commitment.  RSMF at ¶ 103.[9]

- He read the Fund's PPM, which did not include any reference to a $20 million GEV commitment but did identify GEV's "one-time" $75,000 sponsorship.  RSMF at ¶ 105.

- Daimler did not speak with anyone other than a single mutual friend of the parties before entering in a business relationship with Moehle.  RSMF at ¶ 106.

- Daimler could not recall how, when, or why he came to learn that the GEV Representation was untrue.  RSMF at ¶ 108.

The unreasonableness of Daimler's decision to play ostrich is heightened by the fact that Daimler claims to have "over 20 years of experience in the field as an entrepreneur, investor, academic researcher, and policymaker" and claims to have "co-founded six technology companies."  RSMF at ¶ 9.  "Determining whether reliance on a misrepresentation is justified is generally dependent, at least in part, upon such factors as the respective intelligence and experience of the parties, the relationship between them *and the opportunities, if any, to ascertain the truth of the representation at issue*."  *Benevento v. Life USA Holding, Inc.*, 61 F. Supp. 2d 407, 416–17 (E.D.  Pa. 1999) (emphasis added); *Tran v. Metro Life Ins. Co.*, 408 F.3d 130, 135 (3d Cir. 2005).

Because there is no dispute that Daimler eschewed all opportunities to ascertain the truth of the purported GEV Representation and there is no legal basis to claim such conduct was justifiable in light of his self-touted experiences and successes, Daimler cannot carry his burden to prove justifiable reliance by clear and convincing evidence.[10]

---

[9] The Court should ignore Daimler's assertion that Moehle instructed him not to ask GEV any questions about the alleged GEV Representation as he has not pointed to any documents or emails that evidence the instruction and his self-serving deposition testimony and "affidavit" are inadmissible and unreliable for the reasons explained above.

[10] Daimler relies upon *Ndubizu v. Drexel Univ.*, 768 F. Supp. 2d 796, 804 (E.D. Pa. 2001) to argue that reliance is a question reserved for the jury.  Opp. at 12.  In *Ndubizu*, however, the court granted summary judgment in part because the plaintiff failed to prove justifiable reliance.

5.      *Daimler Has No Evidence of Cognizable Damage*

Daimler, ***again by his own admissions***, cannot show that he suffered any cognizable damages based on the Defendants' alleged fraud.  Daimler baldly asserts that he walked away from $10 million in investments in Skilled Science.  Daimler, however, has not – and cannot – dispute the evidence that demonstrates beyond dispute that his claim is pure speculation and what Daimler walked away from was, in reality, a failing business venture without any committed investments.

In September 2014 – approximately ***one year*** before Daimler and Moehle were even introduced – Daimler was seeking investment from Two Sigma, including sending Two Sigma a draft MOU for a potential $5 million investment.  RSMF at ¶¶ 16-18.  On September 29, 2014, Daimler asked Two Sigma if he could meet with their full investment committee "to get started with the 500K" investment.  RSMF at ¶ 20.  Daimler never met with Two Sigma's investment committee before meeting Moehle.  Two Sigma never executed a MOU or any other agreement with Skilled Science before Daimler met Moehle.  Two Sigma never invested so much as a dime in Skilled Science.  RSMF at ¶¶ 19-21.  And Daimler produced no documents that evidence he was discussing investment with Two Sigma at or around the time he met Moehle.

With respect to the Sackler family, Daimler admitted every material fact in Defendants' SMFs.  RSMF at ¶¶ 22-28.  Those admitted facts preclude Daimler from carrying his burden to show that he suffered non-speculative economic harm with regard to any discussions with the Sackler family.  Indeed, Daimler admitted that: (1) he did not know whether Fried verbally advocated for an investment to the Sackler family; (2) he had not met with the Sackler family; and (3) there were no documents evidencing a commitment to invest from the Sackler family even though such documents would be created if there were actual interest.  RSMF at ¶¶ 22-28.

Finally, Daimler now belatedly asserts Keith Furuya had confirmed a $100,000 investment in Skilled Science and claimed to have "another $250k."  Opp. at 17.  Once again, the timeline,

which Daimler ignores, disproves Daimler's claim of a commitment.  Mr. Furuya's email is dated April 22, 2015.  ECF 117-2, Ex. G.  Daimler has admitted that by August 2015, he had not received any third-party funding for Skilled Science, had not signed any agreements to such funding and had not acquired any intellectual property to commercialize as was Skilled Science's purported thesis.  RSMF at ¶¶ 13, 29, 31.  Thus, despite Mr. Furuya's email, the record conclusively establishes that four months later, Daimler was not walking away from anything.  Indeed, Furuya noted in his email that "investors are leary [sic] about this."  ECF 117-2, Ex. G.  Consistent with Daimler's total lack of evidence of commitments, Daimler created a document in ***August 2015*** describing the "current reality" of Skilled Science as (1) "hav[ing] no contract signed;" (2) "start[ing] conversations about this in fall '13;" and (3) "hav[ing] received at various times, commitments of as much as 3.5M" that never came to fruition.  RSMF at ¶ 41.

As Daimler's own purported damages expert testified, the investment sphere is a world of "should, coulda, woulda" and because of this uncertain nature, an investment "doesn't count unless it happens" or "until it's money in the bank."  RSMF at ¶¶ 38-39.  Daimler admits he had no "money in the bank" and the record is devoid of any contemporaneous evidence that could establish Daimler walked away from a single purported commitment to invest in Skilled Science (let alone $10 million).  Accordingly, Daimler cannot establish legally cognizable damages.[11]

### B.  Daimler Cannot Carry His Burden to Prove Breach of Contract

Daimler essentially concedes that he has not – and cannot – carry his burden to prove a breach of contract.  As demonstrated in Defendants' Brief, Daimler has no evidence to make the

---

[11] Despite Daimler's assertion to the contrary, Daimler is not entitled to punitive damages where, as here, he cannot show actual damages.  *Weckler v. Smithkline Beckman*, 746 F. Supp. 576, 581 (E.D. Pa. 1990) (holding that plaintiff could still claim punitive damages where she may be entitled to nominal damages).  Potential entitlement to punitive damages cannot be used as an escape hatch in the absence of real damage.

threshold showing a valid, enforceable contract between the parties. Daimler admits that he cannot identify (1) what amount of money was involved in the alleged agreement; (2) how many units the parties purportedly agreed that Daimler would receive; (3) the type of units Daimler would receive (i.e., "Common Units" or "Management Fee Units"); or (4) how those units would purportedly vest. RSMF at ¶ 127. Stated differently, Daimler has admitted that he cannot show any of the material terms of the oral agreement that he is seeking to enforce.

In his Opposition, Daimler simply asserts that he "contributed a great deal of money." Opp. at 19. Thus, Daimler argues "the only logical conclusion is that because the companies did not have the wherewithal to reimburse Daimler for payment of the expenses, the parties agreed that the payments would be treated as capital contributions." *Id.* Daimler, however, does not introduce any evidence to support this supposed "logical conclusion."[12] Daimler's conclusory statements are insufficient to carry his burden to show the parties agreed to the "materials terms" of an oral contract. *See Ecore Int'l v. Downey*, 343 F. Supp. 3d 459, 489 (E.D. Pa. 2018).[13] Moreover, Daimler's assertion that the company "did not have the wherewithal to reimburse Daimler" is false. In fact, both in his deposition and in his response to Defendants' SMFs, Daimler admits that **he was reimbursed**, with interest, for the money he loaned to Defendants. RSMF at ¶¶ 113-115.

Finally, Daimler's reliance on *Fleming Steel Co. v. Jacobs Eng'g Grp., Inc.* and his attempt

---

[12] While Daimler points to the testimony of Jamie Fee in support of his conclusory assertion that a contract existed, Fee admitted that he had no personal knowledge of the Companies' accounting, how much money Daimler allegedly contributed, the terms of any arrangement between Daimler and Moehle, whether Daimler was entitled to units, or the value of any units Daimler may have been entitled to. RSMF at ¶¶ 128-130.

[13] Daimler's attempts to distinguish *Ecore* are unavailing. Daimler claims that *Ecore* is unlike the situation here because in *Ecore* there was no evidence of an agreement or the essential terms of an alleged bargain. Opp. at 21. Here, however, Daimler admittedly has no evidence of an agreement or the essential terms of that bargain; thus, *Ecore* is exactly like the situation at issue here. Further, given that Daimler himself has admitted that he cannot show the materials terms of the agreement, the present situation does not present a situation where there are material facts in dispute that must be decided by a jury. *Compare id. with* RSMF at ¶ 127.

to use the terms of Section 7.2 of the Operating Agreement to fill in the missing material terms of the alleged oral agreement is misplaced. Opp. at 18. In *Fleming*, the Court noted that the existence of an oral contract may be evidenced by the parties' prior conduct and industry practice. 373 F. Supp. 3d 567, 590 (W.D. Pa. 2019). Here, the parties' conduct contradicts that that they came to any sort of oral contract. When the Companies actually granted Daimler units, they executed a formal agreement. In addition, Section 7.2 expressly provides that "Any future Capital Contributions made by any Member shall only be made with the consent of the Board…." RSMF at ¶ 219. Daimler does not point to any evidence of Board consent. *See id.*; Opp. at 18.

Even assuming *arguendo*, that Daimler could establish the existence of an oral contract, Daimler cannot demonstrate that he has been damaged by any purported breach. As noted above, Daimler admits that he has been reimbursed for the money that he contributed to Defendants. RSMF at ¶¶ 113-115. In support of the expenses Daimler allegedly incurred, Daimler claims in his "affidavit" that, despite his deposition testimony that he has no recollection of the creation of Exhibit 22, RSMF at ¶ 119, there is now "no question that it was prepared at my request by one of my assistants." *See* ECF 117-2, Ex. A at ¶11. Daimler's assertions in his affidavit, which entirely contradict his prior deposition testimony, are further evidence that the affidavit is a "sham affidavit" that cannot be relied upon to create a genuine dispute of material fact. Thus, Daimler's only evidence remains an unauthenticated itemization of costs (at least several of which Daimler admits have no relationship to Defendants) that Daimler never provided to Defendants at any point prior to this litigation. RSMF at ¶¶ 121-125.

## III.   <u>CONCLUSION</u>

For the foregoing reasons and those set forth in Defendants' Motion, Defendants respectfully request the Court grant Defendants' Motion.

Dated: January 21, 2022

Respectfully submitted,

**K&L GATES LLP**

/s/ *Christopher M. Verdini*
Patrick J. McElhinny, PA Bar No. 53510
Christopher M. Verdini, PA Bar No. 93245
Jessica L.G. Moran PA Bar No. 325912
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222-2613
Tel:  412-355-6500
Fax:  412-355-6501
Email: patrick.mcelhinny@klgates.com
Email: christopher.verdini@klgates.com
Email: jessica.moran@klgates.com

*Counsel for Defendants Chris Moehle,*
*Robotics Hub Fund 1 LLC, and Coal Hill*
*Ventures LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 21, 2022, the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

<u>/s/ Christopher M. Verdini</u>
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222-2613
412.355.6500
