IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC DAIMLER, | ) |
| | ) |
| Plaintiff/Counter-Defendant, | ) |
| v. | ) Civil No. 18-165 |
| | ) |
| CHRIS MOEHLE, ROBOTICS HUB FUND 1, LLC, and COAL HILL VENTURES LLC, | ) |
| | ) |
| Defendants/Counter-Plaintiffs. | ) |

## OPINION

Presently before the Court are two post-trial motions following a jury verdict rendered in favor of Counter-Plaintiffs, Robotics Hub Fund 1, LLC and Coal Hill Ventures LLC (Companies), and against Counter-Defendant, Eric Daimler, in the amount of $225,000 for claims under the Lanham Act for False Designation of Origin and False Advertising, the Computer Fraud and Abuse Act (CFAA), and the Anti-Cybersquatting Consumer Protection Act (Intellectual Property claims) related to Mr. Daimler's improper use of the Companies' domain name and email.[1]

Mr. Daimler has moved for a new trial on damages or, in the alternative, for remittitur pursuant to Fed. R. Civ. P. 59. (ECF No. 181). The Companies have moved for an award of attorneys' fees pursuant to Fed. R. Civ. P. 54(d)(2) and the Lanham Act (15 U.S.C. § 1117(a)). (ECF No. 177). Those matters are now ripe for consideration.

Upon Consideration of Mr. Daimler's Motion for New Trial on Damages or Remittitur (ECF No. 181), the respective briefs (ECF Nos. 182, 192, and 193), and for the following reasons, Mr. Daimler's Motion will be denied. Further, following consideration of the

---

[1] The jury did not find in favor of the Companies for their claim of Fraudulent Misrepresentation.

Companies' Motion for Attorneys' Fees (ECF No. 177), the respective briefs (ECF No. 178, 191, and 194), and for the following reasons, the Companies' Motion will be granted.

I. Motion for New Trial on Damages or Remittitur

A. Relevant Standard

In reviewing a motion under Fed. R. Civ. P. 59, a district court "must draw all reasonable inferences in favor of the verdict winner." *Houser v. Folino*, No. 2:10-cv-00416, 2016 U.S. Dist. LEXIS 25165, at *5 (W.D. Pa. Mar. 1, 2016). The court should "uphold the jury's award if there exists a reasonable basis to do so." *Id*. (quoting *Motter v. Everest & Jennings, Inc.*, 883 F.2d 1223, 1230 (3d Cir.1989)).

A new trial, however, cannot be granted merely because the court would have weighed the evidence differently or reached a different verdict. *Markovich v. Bell Helicopter Textron*, Inc., 805 F.Supp. 1231, 1235 (E.D.Pa.1992), *aff'd*, 977 F.2d 568 (3d Cir.1992). *See Also: Olefins Trading, Inc. v. Han Yang Chemical Corp.*, 9 F.3d 282, 290 (3d Cir.1993). A court should grant a new trial "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir.1991)(citing *EEOC v. Del. Dep't Health*, 865 F.2d 1408, 1413 (3d Cir.1989)). Thus, absent a showing of substantial injustice or prejudicial error, a new trial is not warranted, and it is the court's duty to respect a plausible jury verdict. *Montgomery Cnty. v. MicroVote Corp.*, 152 F. Supp. 2d 784, 795 (E.D. Pa. 2001) (citing *Goodwin v. Seven–Up Bottling Co. of Philadelphia*, No. 96–2301, 1998 WL 438488 at *3 (E.D.Pa. July 31, 1998)).

The Third Circuit has also explained that remittitur "is well established as a device employed when the trial judge finds that a decision of the jury is **clearly** unsupported and/or

2

excessive." *Spence v. Bd. of Educ. of Christina Sch. Dist.*, 806 F.2d 1198, 1201 (3d Cir. 1986); *Cortez v. Trans Union, LLC*, 617 F.3d 688, 715 (3d Cir. 2010) (emphasis added).

### B. Discussion

In his motion, Mr. Daimler argues that a new trial on damages is necessary because the jury's verdict, $225,000 on the Intellectual Property Claims, was against the weight of the evidence. Alternatively, Mr. Daimler contends that remittitur is warranted because there is no rational relationship between the injury sustained and the amount awarded. Specifically, Mr. Daimler maintains that the Companies only sought out-of-pocket costs on their Intellectual Property Claims, and the Companies' only introduced testimony and evidence totaling $51,467.

In response, the Companies argue that this Court should uphold the jury's damages determination as reflecting both "damage" and "loss" under the CFAA. In the alternative, the Companies assert, that if the jury award were reduced to $51,467, this Court should treble the damages because of Daimler's willful violations of the Lanham Act.[2]

With regard to damages under the Lanham Act, the Jury received the following instructions:

> Damages consist of the amount of money required to compensate the Companies for the injury caused by Eric Daimler's infringement and/or false advertising. The Companies must prove their damages by a preponderance of the evidence. You may consider the following types of damages:
>
> • Loss of goodwill. Goodwill is consumer recognition or drawing power of a trademark. In determining loss of goodwill, you should compare the value of Companies' goodwill before the infringement and/or false advertising with the value of the goodwill after the infringement and/or false advertising.
>
> • Cost of corrective advertising. This is the amount spent by Companies to counteract the effects of Eric Daimler's infringement and/or

---

[2] The Companies have not separately moved for treble damages. Thus, the Court will not address treble damages in its analysis of the jury's verdict.

3

> false advertising and dispel any public confusion that lingers after the infringement and/or false advertising.
>
> You may not determine damages by speculation or conjecture, but rather evidence sufficient for you to draw reasonable inferences and make a fair and reasonable assessment of the amount of damages.  **Damages may be awarded even though they cannot be calculated with mathematical certainty.**

(ECF No. 180 at pp. 111-112) (emphasis added).

> As regards damages and loss under the CFAA, the Court instructed as follows:
>
> For purposes of this cyberpiracy claim, the term "damage" is defined by the statute to mean "any impairment to the integrity or availability of data, a program, a system, or information[.]"
>
> Also for these purposes, "loss" is defined to mean "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or **other consequential damages** incurred because of interruption of service[.]"

*Id*. at p. 113 (emphasis added).  With regard to all Intellectual Property claims, the Court instructed:

> If you find that Eric Daimler violated the Lanham Act and thereby caused damages and/or Eric Daimler accessed the computer drive in bad faith and thereby caused damages or loss and/or Eric Daimler's violation of the Anti-Cybersquatting Consumer Protection Act caused damages, you should award an amount of money damages that will fairly and adequately compensate the companies for the harm caused by Eric Daimler.

*Id*. at p. 122.   The Court also instructed the jury, generally, as follows:

> You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

*Id*. at p. 100.

Here, the Companies offered evidence, and their counsel highlighted, that out-of-pocket costs on their Intellectual Property Claims included payments to Reed Smith, LLP ($6,059), bit-

x-bit ($3,408), and Reputation Defender through the end of 2022 ($42,000). These costs total $51,467. While Mr. Daimler has only highlighted these numerical damages, the jury instructions provided ample opportunity for an award greater than this amount. The jury was instructed regarding "goodwill" and "consequential" damages under the Lanham Act and CFAA. Both "goodwill" and "consequential" damages fall outside of the $51,467. In terms of additional concrete numbers that the jury may have considered, Mr. Moehle testified that, as a result of Mr. Daimler's conduct, he continued and will continue to pay Reputation Defender, $6,000 per year, for Search Engine Optimization (SEO). (ECF No. 192-1 at pp. 154-155).

Mr. Moehle further testified that after Mr. Daimler departed in early 2017, his post-employment conduct in April 2017 resulted in transferred data from the Companies' Google Drive, confusion, missed emails, securing an alternative domain name and email, emailing existing contacts who had been informed his email had been turned off, and addressing miscellaneous issues with website redirection. *Id*. at pp. 135, 150-151. In addition, Mr. Moehle testified that, the materials missing from the Robotics Hub account, included information that would aid in attracting investors and maintaining a competitive advantage. *Id*. at p. 136. Mr. Moehle also testified that, because of the hardships in early 2017, the Companies fell short of their fundraising goals by $8 million. (Sealed portions of Mr. Moehle's Testimony at pp. 18, 20).

In assessing the evidence against Mr. Daimler, as regards these claims, the jury specifically found that Mr. Daimler acted willfully and in bad faith. (ECF No. 175). Given the jury instructions on goodwill and consequential damages as well as using their "common sense," the jury could reasonably find and assess the awarded damages based upon the evidence and testimony. While higher than the aggregate damages of $51,467, a verdict of $225,000 was

neither against the weight of the evidence nor excessive to shock the Court's conscience. Given the out-of-pocket expenses, damage to the Companies' goodwill, and the shortfalls in fundraising efforts, the jury produced a plausible award of $225,000. *See Montgomery Cnty. v. MicroVote Corp., supra.* Therefore, a new trial on damages or remittitur is not warranted.

Accordingly, Mr. Daimler's Motion for New Trial on Damages or Remittitur will be denied.

II. Motion for Attorneys' Fees

In their motion for attorneys' fees, the Companies contend that, under the Lanham Act, Mr. Daimler's violations warrant the award of reasonable attorneys' fees. The Companies seek reasonable attorneys' fees and costs in the amount of $129,183.00. Mr. Daimler argues that attorneys' fees are not warranted because this not an "exceptional case." He also contends that attorneys' fees cannot be awarded because counsels' time entries cannot be attributed to the Intellectual Property Claims.

A. Exceptionality

Under the Lanham Act, a "court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Cases are exceptional for purposes of the Lanham Act when "(a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an 'unreasonable manner.'" *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 313 (3d Cir. 2014) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). The Third Circuit has further described a "two-step process" for determining that a case is "exceptional" under Lanham Act:

> First, the District Court must decide whether the defendant engaged in any culpable conduct. We have listed bad faith, fraud, malice, and knowing infringement as non-exclusive examples of the sort of culpable conduct that could support a fee award. Moreover, the culpable conduct may relate not only to the

>circumstances of the Lanham Act violation, but also to the way the losing party handled himself during the litigation. Second, if the District Court finds culpable conduct, it must decide whether the circumstances are "exceptional" enough to warrant a fee award.

*Id*. at 314 (citing *Green v. Fornario*, 486 F.3d 100, 103 (3d Cir. 2007). In *Octane Fitness*, the Supreme Court embraced an expansive definition of "exceptional" and explained that that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id*. at 1756. Thus, it is within a court's discretion to find a case "exceptional" based upon "the governing law and the facts of the case," irrespective of whether the losing party is culpable. For example, "a case presenting ... exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id*. at 1757. This is so even if the losing party's conduct did not suggest "bad faith, fraud, malice, [or] knowing infringement." *Green*, 486 F.3d at 103. Thus, it is within a court's discretion to find a case "exceptional" based upon "the governing law and the facts of the case," irrespective of whether the losing party is culpable.

    Here, the jury found that Mr. Daimler's conduct was willful and in bad faith. The jury's finding was supported by evidence that, after his departure from the Companies, Mr. Daimler took the Companies' marketing materials, redirected the roboticshub.io website to c2.capital, which was a business Mr. Daimler had started (ECF No. 192-1 at pp. 151-53). Mr. Moehle also testified that Mr. Daimler reached out to at least one CEO of a company in which Robotics Hub was investing and attempted to solicit business for his own future business pursuits. *Id*. at 158-59. After this Court's careful review of the testimony and evidence, it concurs with the jury's finding that Mr. Daimler's conduct was willful and in bad faith, and that the same supports

"exceptionality" under *Fair Winds* and *Octane Fitness* and an attorneys' fees award under the Lanham Act.

Further in examining Mr. Daimler's litigation position, Mr. Daimler denied any wrongdoing relative to the Intellectual Property Claims in his Answer to the Companies' Counterclaim (ECF No. 52).  Finally, on the eve of trial and after three and a half years, Mr. Daimler admitted culpability for the Intellectual Property Claims.  Such circumstances forced the Companies to initiate, litigate, and try their Intellectual Property Claims and bear the expenses of the same.  Such circumstances create the exceptionality that the Lanham Act intended in shifting fees to prevailing litigants especially where in Mr. Daimler's case, his conduct was brazenly in violation of the Companies' intellectual property rights.

Accordingly, the exceptionality requirement of the Lanham Act is met in this case that would warrant the award of reasonable attorneys' fees.

B. Reasonableness

Having concluded that attorneys' fees are warranted, "'[t]he most useful starting point for determining the amount of a reasonable fee' is the lodestar calculation," which multiplies a reasonable number of hours expended by a reasonable hourly rate. *United Auto. Workers Loc. 259 Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 290 (3d Cir. 2007) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "'[T]he relevant rate is the prevailing rate in the forum of the litigation' unless 'the special expertise of counsel from a distant district is shown' or 'local counsel are unwilling to handle the case.'" *A.B. by & through F.B. v. Pleasant Valley Sch. Dist.*, 839 Fed. Appx. 665, 668 (3d Cir. 2020) (quoting *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 704-05 (3d Cir. 2005)).

Here, Mr. Daimler does not challenge the hourly rates of the Companies' attorneys, but rather focuses on whether the claimed hours were attributable to the Lanham Act claims. The Companies have only claimed attorneys' fees for the work performed between March 1, 2023 through April 30, 2023. This work included preparing the Companies' pretrial statement; preparing and working with opposing counsel on proposed jury instructions, a proposed jury slip, and joint stipulations; participating in pretrial conferences; participating in jury selection; and preparing for and participating in trial. (ECF No. 177-2 ¶ 15). The Companies submitted that their attorneys' billing records for said work totaled $178,752.50 for 503.9 hours of work performed by the firm's attorneys and paralegals at their standard hourly rates. The Companies have adjusted this total downward to $129,183.00 to exclude fees for work unrelated to the Intellectual Property Claims. Following this Court's careful review of the briefing, affidavits, and billing records, the Companies' attorneys have presented a petition for reasonable fees sufficiently specific for the Intellectual Property Claims. Therefore, the Court finds that the hours worked and billing rates were reasonable in these circumstances.

Accordingly, the Companies' Motion for Attorneys' Fees will be granted. The Companies will be awarded $129,183.00 in attorneys' fees.

### III.     Conclusion

Following Consideration of Mr. Daimler's Motion for New Trial on Damages or Remittitur (ECF No. 181), the respective briefs (ECF Nos. 182, 192, and 193), and for the foregoing reasons, Mr. Daimler's Motion will be denied. Further, following consideration of the Companies' Motion for Attorneys' Fees (ECF No. 177), the respective briefs (ECF No. 178, 191, and 194), and for the foregoing reasons, the Companies' Motion will be granted.

A separate order will follow.

Dated:  August 2, 2023

                                                  _____
                                                  Marilyn J. Horan
                                                  United States District Court Judge